PATRICIA K. GILLETTE (STATE BAR NO. 74461)
ANDREW R. LIVINGSTON (STATE BAR NO. 148646)
GREG J. RICHARDSON (STATE BAR NO. 203788)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1-415-773-5700
Facsimile:    +1-415-773-5759
pgillette@orrick.com
alivingston@orrick.com
grichardson@orrick.com

JOSEPH C. LIBURT (STATE BAR NO. 155507)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1-650-614-7400
Facsimile:    +1-650-614-7401
jliburt@orrick.com

Attorneys for DEFENDANT
WELLS FARGO BANK, N.A. (sued as "Wells Fargo Bank")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICK PIERCE,<br><br>       Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, and Does 1-10, inclusive,<br><br>       Defendant. | Case No.  CV 08 1554 JF<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  June 6, 2008<br>Time:  9:00 a.m.<br>Courtroom: 3, Fifth Floor<br>The Honorable Jeremy Fogel |

1

**TABLE OF CONTENTS**

2

**Page**

3    NOTICE OF MOTION AND MOTION ....................................................................................1

4    MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

5    I.    INTRODUCTION ............................................................................................1

6    II.   ALLEGED FACTS ...........................................................................................3

7          A.    Plaintiff Alleges He Was A Participant In a Change In Control Plan That
                 Made Him Eligible To Receive Severance Benefits ...............................3

8          B.    Plaintiff Alleges Wells Fargo Made And Then Breached An Oral
                 Modification To The CIC Plan ...........................................................4

9          C.    Without Exhausting His Administrative Remedies, Plaintiff Files A
                 Complaint In California State Court Asserting Only State Law Claims ...........5

10   III.  ARGUMENT ....................................................................................................6

11         A.    Plaintiff's Claims Should Be Dismissed With Prejudice Under ERISA ...........6

12               1.    Each of Plaintiff's State Law Claims Is Preempted by ERISA .................6

13               2.    Plaintiff's Complaint Should Be Dismissed Because He Has Not
                       Alleged He Has Exhausted His Administrative Remedies Under
                       ERISA ....................................................................................8

14               3.    Plaintiff's Claims Should Be Dismissed With Prejudice Because
                       There Can Be No Oral Modification of an ERISA Plan ..........................9

15         B.    Plaintiff's Complaint Should Also Be Dismissed Because He Has Not
                 Named the Right Defendant ..............................................................10

16   IV.   CONCLUSION ................................................................................................12

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Aetna Life Ins. Co. v. Bayona*,
    223 F.3d 1030 (9th Cir. 2000) ............................................................. 7

*Amato v. Bernard*,
    618 F.2d 559 (9th Cir. 1980) .......................................................... 8, 9

*Arturet-Velez v. R.J. Reynolds Tobacco Co.*,
    429 F.3d 10 (1st Cir. 2005) ............................................................... 9

*Communications Workers of Am. v. AT&T*,
    40 F.3d 426 (D.C. Cir. 1994) ............................................................ 8

*Davenport v. Harry N. Abrams, Inc.*
    249 F.3d 130 (2nd Cir. 2001) ........................................................... 8

*Diaz v. United Agric. Employee Welfare Benefit Plan and Trust*,
    50 F.3d 1478 (9th Cir. 1995) ............................................................ 8

*Eide v. Grey Fox Tech. Servs. Corp.*,
    329 F.3d 600 (8th Cir. 2003) ............................................................ 7

*Farr v. U.S. W. Comms., Inc.*,
    151 F.3d 908 (9th Cir. 1998),
    *cert. denied* 528 U.S. 1116 (2000) ................................................. 7

*Gelardi v. Pertec*,
    761 F.2d 1323 (9th Cir. 1985) ......................................................... 11

*Gibson v. Prudential Ins. Co.*,
    915 F.2d 414 (9th Cir. 1990) .......................................................... 11

*Greany v. W. Farm Bureau Life Ins. Co.*,
    973 F.2d 812 (9th Cir. 1992) .......................................................... 10

*Madden v. ITT Long Term Disability Plan*,
    914 F.2d 1279 (9th Cir. 1990),
    *cert. denied* 498 U.S. 1087 (1991) ............................................... 11

*Metropolitan Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987) ...................................................................... 6, 7

*Natchwalter v. Christie*,
    805 F.2d 956 (11th Cir. 1986) ........................................................ 10

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998),
    *cert. denied* 525 U.S. 1001 (1998) ................................................. 3

1

### TABLE OF AUTHORITIES
(continued)

2

Page

3   *Pilot Life Ins. Co. v. Dedeaux,*
    481 U.S. 41 (1987).................................................................................................7

4

5   *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,*
    201 F.3d 1212 (9th Cir. 2000),
    *cert. denied* 531 U.S. 992 (2000)........................................................................7

6

7   *Sarraf v. Standard Ins. Co.,*
    102 F.3d 991 (9th Cir. 1996)................................................................................8

8   *Scott v. Gulf Oil Corp.,*
    754 F.2d 1499 (9th Cir. 1985).............................................................................7

9

10  *Thurman v. Pfizer, Inc.,*
    484 F.3d 855 (6th Cir. 2007)..............................................................................7

11

### FEDERAL STATUTES

12  29 U.S.C. § 1002(1)..............................................................................................7

13  29 U.S.C. § 1100 *et seq.* ..............................................................................passim

14  29 U.S.C. § 1102...................................................................................................9

15  29 U.S.C. § 1132(a)..............................................................................................6

16  29 U.S.C. § 1133...................................................................................................8

17  29 U.S.C. § 1144(a)..............................................................................................6

18  29 U.S.C. § 1144(c)(1)..........................................................................................6

19

### STATE STATUTES

20  Cal. Corp. Code § 1107(a).................................................................................12

21

22

23

24

25

26

27

28

iii

## NOTICE OF MOTION AND MOTION

TO:    PLAINTIFF PATRICK PIERCE AND HIS ATTORNEYS OF RECORD.

PLEASE TAKE NOTICE that on June 6, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jeremy Fogel in Courtroom 3 of the above-titled Court located at 280 South 1st Street, Fifth Floor, San Jose, California, Defendant Wells Fargo Bank, N.A. will move, and hereby does move, to dismiss the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, without leave to amend, pursuant to Federal Rule of Civil Procedure 12(b) on the grounds that Plaintiff has failed to state a claim on which relief can be granted, each of Plaintiff's claims is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Plaintiff has also failed to exhaust his administrative remedies under ERISA. Moreover, Plaintiff has failed to sue the correct defendant. This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file in this action, and such other evidence and arguments as may be presented at the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Patrick Pierce's Complaint suffers from a series of fatal flaws. First, each and every claim Plaintiff presents is mispled and needs to be recharacterized as a federal ERISA claim. But even if recharacterized, Plaintiff's claims are premature because he has not exhausted his administrative remedies under ERISA. However, even if the parties and the Court were to wait for Plaintiff to follow the proper procedures, his claims would still suffer from a substantive defect that Plaintiff cannot plead around. For any and all of these reasons, his lawsuit should be dismissed.

By way of explanation, Plaintiff has brought a slew of state law causes of action against Defendant Wells Fargo Bank, N.A.[1] ("Wells Fargo") all seeking the same remedy: $250,000 in severance benefits under an ERISA plan. Specifically, Plaintiff alleges that as a former employee

---

[1] While the caption of Plaintiff's Complaint lists only "Wells Fargo Bank," paragraph 3 clarifies that the entity being sued is "Wells Fargo Bank[,] N.A."

of Greater Bay Bancorp ("GBB"), he was covered by a Change In Control Pay Plan ("CIC Plan"), which was an "employee benefit plan" as defined by ERISA. Under the CIC Plan, Plaintiff was eligible to receive severance benefits if GBB was acquired by another company – *unless* the successor company offered Plaintiff a "Comparable Position," as defined by the CIC Plan. The CIC Plan expressly provided that the mere offer of the Comparable Position was enough to negate severance benefits *regardless* of whether Plaintiff accepted the offer. And as alleged in Plaintiff's Complaint, that is exactly what happened.

In October 2007, GBB was acquired by Wells Fargo,[2] and Wells Fargo offered Plaintiff a Comparable Position. Notwithstanding the plain language of the CIC Plan regarding the consequences of refusing such a Comparable Position, Plaintiff wished to turn down the position. Now, he sues, wanting to receive severance benefits to which he is clearly not entitled. His theory as to why he should have been able to do so is that prior to the merger, agents for GBB allegedly orally promised him (entirely inconsistently with the Plan language) that he could refuse any position with Wells Fargo (apparently even a Comparable Position) and still receive benefits. Based on these alleged oral representations, Plaintiff has pursued various state law causes of action to recoup severance benefits under the Plan. As a matter of law, all of these claims fail.

First, Plaintiff has pled state law claims that are all preempted by ERISA. Thus, every claim he has pled must be dismissed.[3] Second, even if Plaintiff were to amend his Complaint to assert a claim for benefits under ERISA, he has failed to exhaust his administrative remedies prior to filing this lawsuit, which bars his claim under ERISA. Third, the Complaint should also be dismissed as substantively unavailing because Plaintiff's theory of recovery, however he dresses it, is one not recognized by ERISA. Plaintiff seeks to enforce alleged oral representations that

---

[2] In actuality, Plaintiff's allegation is not accurate: it was not Wells Fargo Bank, N.A. that acquired GBB, but a parent company of Wells Fargo Bank, N.A. For purposes of this motion only, Wells Fargo is bound by Plaintiff's allegations and will respond accordingly.

[3] Several of Plaintiff's claims are mispled in a different way. Plaintiff's Complaint purports to sue only Wells Fargo, not GBB – going so far as to identify GBB as a "non-Party" in paragraph one of his Complaint – but then turns around and asserts more than half of the duplicative causes of action against GBB, not Wells Fargo. Such a pleading violates the basic procedural requirements that only parties to a lawsuit can be named as defendants to a cause of action. Moreover, the proper defendant under ERISA is the CIC Plan itself, not Wells Fargo. (*See* § III.B.)

contradict the express terms of the CIC Plan: namely, that he could turn down any position offered by Wells Fargo, even a Comparable Position, and still receive severance benefits under the Plan. It is well established, however, that such oral modifications to a written ERISA plan are not permitted, and thus Plaintiff can have no viable claim under ERISA. His entire Complaint should therefore be dismissed with prejudice.

## II.    ALLEGED FACTS

### A.    Plaintiff Alleges He Was A Participant In a Change In Control Plan That Made Him Eligible To Receive Severance Benefits.

Plaintiff was employed by Greater Bay Bancorp ("GBB").[4] (Compl., ¶ 1.) As an employee of GBB, Plaintiff was covered by a Change in Control Pay Plan ("the CIC Plan").[5] (*Id.*, ¶¶ 1, 6; Richardson Dec., Exh. 1.) The CIC Plan is an ERISA plan that provides severance benefits to eligible employees – known as "participants"[6] – upon a change of control. (Compl, ¶ 6; Richardson Dec., Exh. 1.) The CIC Plan defines "employees" to include "any full-time employee" of GBB, such as Plaintiff. (Richardson Dec., Exh. 1, §§ 3.10, 3.12, pp. 4-5.) The Plan defines a "change of control" to occur when, among other things, another company "becomes the beneficial owner, . . . directly or indirectly, of more than fifty percent (50%) of [GBB's] capital stock. . . ." (Richardson Dec., Exh. 1, § 3.5(a), p. 3.)

Upon a change in control, employees become eligible for severance benefits subject to various exceptions. One of these exceptions is whether the GBB employee is "provided a Comparable Position (as defined in Section 4.3 below) by the successor employer or by a Member Company, *regardless of whether the Employee accepts the offer . . . .*" (*Id.*, § 4.2(b), p. 6

---

[4] This allegation, too, is not correct. GBB was a parent company of Plaintiff's former employer, Greater Bay Bank, N.A. GBB itself did not employ Plaintiff. Again, for purposes of this motion to dismiss only, Wells Fargo is bound by Plaintiff's allegations.

[5] For the Court's convenience, Wells Fargo attaches the Change in Control Pay Plan referenced in Plaintiff's complaint. (Declaration of Greg J. Richardson ("Richardson Dec."), Exh. 1.) It is proper on a motion to dismiss to include the ERISA documents on which Plaintiff's complaint necessarily relies. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *cert. denied* 525 U.S. 1001 (1998) (finding it is permissible to attach the documents governing an ERISA plan to a Rule 12(b)(6) motion because they are essential to the plaintiff's claims and referenced in the complaint).

[6] A "Participant" is defined under the Plan as "an Employee who satisfies [certain] requirements," including that he has been terminated after a change in control and not offered a comparable position. (Richardson Dec., Exh. 1, §§ 3.13, 4.1, pp. 5-6.)

3

(italics added).)  Section 4.3 of the CIC Plan defines a "Comparable Position" as one that:

> (a) [p]rovides a regular base salary or hourly wage rate that is not less than one hundred percent (100%) of the regular base salary or hourly wage rate of the position held by the Employee immediately prior to the effective time of the Change in Control; [and]
>
> (b) [i]s based at a principal place of employment that would not require the Employee to increase his normal one-way commute from his home to the new primary work site by more than thirty-five (35) miles each way . . . .

(*Id.*, § 4.3, p. 7.)  Thus, the written terms of the CIC Plan establish that employees such as Plaintiff are not permitted to turn down all positions offered by a successor company and still receive severance benefits.

### B.    Plaintiff Alleges Wells Fargo Made And Then Breached An Oral Modification To The CIC Plan.

Plaintiff alleges that on October 1, 2007, a change in control occurred under the CIC Plan when Wells Fargo acquired GBB in a stock-for-stock merger.  (Compl., ¶ 5.)  Prior to this acquisition, Plaintiff alleges that "authorized agents of GBB and [Wells Fargo] promised and represented" that if he continued to work at GBB through the merger, "he would not be forced to take positions with [Wells Fargo] after the merger that [he] did not want" and that, contrary to Section 4.2(b) of the CIC Plan, he "would be entitled to elect benefits under the CIC Plan if [he] elected not take [a] full time position[] with [Wells Fargo]."  (Compl., ¶ 7; *see also* ¶ 9 ("[Plaintiff had an] expectation that if chose not to work with [Wells Fargo] he would receive the Severance Benefits under the CIC Plan.").)

According to Plaintiff, based on these representations, he continued his employment with GBB through the merger.  Following the merger, Plaintiff was offered a job by Wells Fargo that Wells Fargo maintained (and Plaintiff has not challenged in his Complaint) constituted a Comparable Position under the CIC Plan.  (Compl., ¶¶ 10-12.)  Though not clearly alleged in the Complaint, it is implicit in the allegations that this offered Comparable Position was a job with Wells Fargo that Plaintiff "did not want."  (Compl., ¶ 4.)  Plaintiff asked that he be given severance benefits in the amount of $250,000 despite the offer of this Comparable Position.

4

1  (Compl., ¶¶ 11, 12, 17, 23, 28, 35, 43, 51, 56, 61, Prayer ¶¶ 1-7.)  Plaintiff's request was denied.

2  (Compl., ¶¶ 11-12.)

3          **C.    Without Exhausting His Administrative Remedies, Plaintiff Files A**
4          **Complaint In California State Court Asserting Only State Law Claims.**

5          The CIC Plan, as required under ERISA, outlines a "Claims Procedure" for employees

6  seeking severance benefits under the Plan.  (Richardson Dec., Exh. 1, § 6.5, pp. 11-13.)  In

7  particular, this Procedure provides for an application for benefits to the Plan Committee, followed

8  by a written decision stating the reasons for any denial.  (*Id.*, § 6.5(a)-(b), pp. 11-12.)  In the case

9  of a denial, the applicant can seek a request for review before the Plan Committee; this review

10  will also result in a written decision setting forth any reasons for upholding the initial denial.  (*Id.*,

11  § 6.5 (c)-(d), pp. 12-13.)  The CIC Plan expressly requires these procedures be exhausted by a

12  claimant prior to bringing any legal action.[7]  (*Id.*, § 6.5(f) ("Exhaustion of Remedies").)

13          Notwithstanding these express requirements, Plaintiff does not allege that he exhausted

14  his remedies under the CIC Plan.[8]  Rather, Plaintiff filed a Complaint in the Superior Court of

15  California For the County of Santa Clara on February 4, 2008.  In this Complaint, Plaintiff asserts

16  only state law causes of action, each attempting to recover the severance benefits he alleges are

17  due to him.  Specifically, Plaintiff alleges claims for breach of contract, promissory estoppel,

18  fraud, and negligent misrepresentation.  Confusingly, even though he only names Wells Fargo as

19  a defendant, and goes so far as to call Greater Bay Bank a "non-party" (Compl., ¶ 1), he brings

20  _____

21  [7] Specifically, section 6.5(f) provides:
          Exhaustion of Remedies.  No legal action for benefits under the Plan may be brought
22          until the claimant (i) has submitted a written application for benefits in accordance with
          the procedures described by Section 6.5(a) above, (ii) has been notified by the Committee
23          that the application is denied, (iii) has filed a written request for a review of the
          application in accordance with the appeal procedure described in Section 6.5(c) above,
24          and (iv) has been notified that the Committee has denied the appeal.  Notwithstanding the
          foregoing, if the Committee does not respond to a Participant's claim or appeal within the
25          relevant time limits specified in this Section 6.5, the Participant may bring legal action
          for benefits under the Plan pursuant to Section 502(a) of ERISA.

26  [8] Nor can he.  While Wells Fargo understands it may not introduce extrinsic evidence on a motion to
    dismiss, it represents that Plaintiff did not exhaust his administrative remedies prior to filing this lawsuit.
27  To the contrary, on February 4, 2008 – after he filed his lawsuit on February 4, 2008 – Plaintiff submitted
    an application to the Plan Committee to begin the process.  For present purposes, however, it suffices to
28  note that Plaintiff has failed to allege exhaustion of remedies in his Complaint.

1   duplicative causes of action against both "GBB" (First, Third, Fifth, Seventh, Causes of Action)

2   and Wells Fargo.[9]

3        Because each of Plaintiff's state law claims seeks benefits provided by the ERISA CIC

4   Plan, Wells Fargo removed the case to this Court on March 20, 2008. *Metropolitan Life Ins. Co.*

5   *v. Taylor*, 481 U.S. 58, 63-64 (1987) (finding that state law claims that seek benefits available

6   under an ERISA plan are completely preempted under ERISA § 502(a), 29 U.S.C. § 1132(a), and

7   thus removable to federal court).

8   **III.    ARGUMENT**

9        Plaintiff's Complaint suffers from two defects, each warranting dismissal:  (1) he has no

10  viable claims under either state law or ERISA, and (2) the party he has named, "Wells Fargo

11  Bank" is not a proper defendant.

12       **A.    Plaintiff's Claims Should Be Dismissed With Prejudice Under ERISA.**

13       Plaintiff's Complaint should be dismissed with prejudice for several independent reasons,

14  including that all his claims are preempted under ERISA, Plaintiff has not exhausted his ERISA

15  remedies, and he cannot pursue any ERISA claim based on an alleged oral modification to a

16  written ERISA plan.

17       **1.    Each of Plaintiff's State Law Claims Is Preempted by ERISA.**

18       As state law claims, Plaintiff's causes of action are each preempted by ERISA.  ERISA's

19  preemption of state law claims is conspicuous for its breadth, and few federal statutes displace

20  state law claims to such an extent.  In fact, state law claims are preempted by two separate

21  sections of ERISA:  Sections 514(a) and 502(a).  29 U.S.C. §§ 1144(a), 1132(a).  Section 514(a)

22  expressly preempts any state laws that "relate to" employment benefit plans.[10]  29 U.S.C. §

23  1144(a).  This includes any state common law claims to the extent they "relate to" an employment

24  benefit plan.  29 U.S.C. § 1144(c)(1) ("[State law includes] all laws, decisions, rules, regulations,

25  or other State action having the effect of law, of any State.").

26  _____

27  [9] Additionally, both Plaintiff's Seventh and Eighth Causes of Action are titled "Negligent
    Misrepresentation – GBB."  Wells Fargo assumes this is a typographical error and that the Eighth Cause of
    Action was intended to be asserted against Wells Fargo.

28  [10]Section 514 excepts any state law regulating insurance. 29 U.S.C. § 1144(a).

Likewise, the United States Supreme Court has held that ERISA section 502(a), which provides the exclusive remedies for any claim brought against an employee benefit plan, impliedly and completely preempts all state law remedies and claims seeking such remedies. *Metropolitan Life Ins. Co.*, 481 U.S. at 63-64; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). Accordingly, both the U.S. Supreme Court and the Ninth Circuit (as well as numerous other federal and state courts) have held that state law causes of action for breach of contract, fraud, and misrepresentation – as Plaintiff has pursued here – are all preempted by ERISA. *Pilot Life Ins. Co.*, 481 U.S. at 57 (finding plaintiff's state law breach of contract preempted by ERISA); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000); *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1222 (9th Cir. 2000), *cert. denied* 531 U.S. 992 (2000); *Farr v. U.S. W. Comms., Inc.*, 151 F.3d 908, 913 (9th Cir. 1998), *cert. denied* 528 U.S. 1116 (2000) (finding ERISA preempts state law misrepresentation claims); *see also Thurman v. Pfizer, Inc.*, 484 F.3d 855, 862 (6th Cir. 2007) (finding state law claim premised on alleged misrepresentations made by employer about the amount of benefits plaintiff would receive if he accepted new employment – as Plaintiff alleges here – is preempted by ERISA).

The only question to be answered to trigger this complete preemption, therefore, is whether the benefits Plaintiff seeks are covered under an ERISA plan. Here, the answer to that question is yes. ERISA defines an "employee benefit plan" as including a plan established by an employer to provide severance benefits to participants. 29 U.S.C. § 1002(1); *see Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir. 1985) (holding that a plan that guaranteed severance payments was an ERISA plan). And, as Plaintiff alleges, that is exactly what the CIC Plan is: its sole purpose is to provide severance benefits to participants in the event of a change in control. (Compl., ¶ 6; Richardson Dec., Exh. 1 (*see* § 6.5(f), p. 13, referencing ERISA).)

As a result, each of Plaintiff's claims, whether he attempts to define them as arising under California contract or tort law, seeks as damages the same benefits provided by an ERISA plan. For this reason, all of Plaintiff's claims are preempted by ERISA. Plaintiff's state law claims must therefore be dismissed.

1    **2.    Plaintiff's Complaint Should Be Dismissed Because He Has Not
2    Alleged He Has Exhausted His Administrative Remedies Under
     ERISA.**

3    Even if Plaintiff were to replead his state law claims as arising under ERISA, his present

4    Complaint should still be dismissed with prejudice because Plaintiff has failed to allege (nor

5    could he) that he has exhausted his administrative remedies.  ERISA requires that every employee

6    benefit plan include administrative procedures for the resolution of disputes among the parties.

7    29 U.S.C. § 1133.  As set forth above, the CIC Plan here follows this statutory directive by

8    providing a claims and appeal procedure with the Plan Committee, and prescribes that such

9    exhaustion of remedies occur before bringing any court action.  (Richardson Dec., Exh. 1, § 6.5,

10   pp. 10-13.)

11   Because of the requirement that plans provide exhaustion procedures, ERISA requires that

12   participants first exhaust these procedures prior to filing a lawsuit in court.  *Diaz v. United Agric.*

13   *Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1484-85 (9th Cir. 1995); *Sarraf v.*

14   *Standard Ins. Co.*, 102 F.3d 991, 992 (9th Cir. 1996); *Amato v. Bernard*, 618 F.2d 559, 568 (9th

15   Cir. 1980).  This exhaustion requirement is not merely formalistic, but was "intended by Congress

16   to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment

17   of claims for benefits; to provide a non-adversarial method of claims settlement; and to minimize

18   the costs of claims settlement for all concerned."  *Amato*, 618 F.2d at 567 (citation omitted).

19   Moreover, "a primary reason for the exhaustion requirement, here as elsewhere, is that prior fully

20   considered actions by [ERISA plan administrators] interpreting their plans and perhaps further

21   refining and defining the problem in given cases, may well assist the courts when they are called

22   upon to resolve the controversies."  *Id.* at 568.  Because of these underlying goals, the Ninth

23   Circuit has concluded that not only do federal courts have the authority to enforce the exhaustion

24   requirements by dismissing cases, as a matter of sound public policy, they should do so.[11]  *Id.*

---

25   [11] Nor can Plaintiff argue that by defending this lawsuit, Wells Fargo has indicated that any exhaustion of
26   administrative remedies would now be futile.  If this were the case, then the requirement of administrative
     exhaustion would be rendered meaningless, for plaintiffs in every case could skip the internal review
27   procedures, proceed directly to court, and then say that the litigation posture taken by defendants cures
     their lack of exhaustion.  *See Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 134 (2nd Cir. 2001)
28   ("Defendants' position in this lawsuit does not establish futility."), *citing Communications Workers of Am.*
     *v. AT&T*, 40 F.3d 426, 433 n.1 (D.C. Cir. 1994) ("[A]ctions taken to defend lack of entitlement to benefits

8

Here, Plaintiff has not alleged he has exhausted his administrative remedies. As noted above, this defect is not merely a failure to plead, but an actual failure to exhaust administrative remedies that dooms Plaintiff's claims. Wells Fargo understands that on a pleading motion the Court is bound by Plaintiff's allegations, or lack thereof, of exhaustion. It merely notes that unless Plaintiff is able to represent he has exhausted his administrative remedies, his present lawsuit should be dismissed with prejudice. *Amato*, 618 F.2d at 567; *see also Arturet-Vélez v. R.J. Reynolds Tobacco Co.* 429 F.3d 10, 13 n.2 (1st Cir. 2005) (holding that factual concessions by plaintiff in papers opposing a motion to dismiss may also be considered in ruling on the motion).

Indeed, as Plaintiff's allegations show, his lawsuit is doubly premature because not only has he failed to allege he exhausted his administrative remedies, he cannot even meet the necessary preconditions to exhaust his administrative remedies under the Plan. That is because Plaintiff was not yet a "Participant" of the CIC Plan. A Plan "Participant" is "an Employee who satisfies the requirements of Section 4.1 of the Plan." (Richardson Dec., Exh. 1, § 3.13, p. 5.) The requirements of Section 4.1 include, *inter alia*, that Plaintiff was actually terminated after a Change in Control and *not* offered a "Comparable Position." (*Id.*, § 4.1, p. 6.) Plaintiff does not allege that he has been terminated – just the opposite, he states he was *not* terminated, but is currently employed. (Compl., ¶¶ 10-12.) He was therefore not a Plan Participant and any ERISA claim is necessarily premature and needs to be dismissed with prejudice.

### 3.    Plaintiff's Claims Should Be Dismissed With Prejudice Because There Can Be No Oral Modification of an ERISA Plan.

There is another, equally powerful reason to dismiss Plaintiff's entire Complaint with prejudice: it impermissibly seeks to uphold an oral representation in violation of ERISA. ERISA mandates that all plans be in writing. 29 U.S.C. § 1102 (requiring that every employee benefit plan be established and maintained pursuant to a written instrument). For this reason, the Ninth Circuit (along with other courts) has held that oral agreements or modifications cannot be used to

cannot establish futility because otherwise the exhaustion doctrine would be 'entirely undermined[d]' as plaintiffs could bypass administrative remedies, file suit and then hope for subsequent events to justify futility claims.'").

9

contradict or supersede the written terms of an ERISA plan. *Id.*; *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) (citing *Natchwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986) ("A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans. This goal would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements.") (citation omitted)). Here, however, that is exactly what Plaintiff is attempting to do.

Every cause of action pursued by Plaintiff is premised on his allegation that agents of Wells Fargo orally represented that Plaintiff, after the merger between Wells Fargo and GBB, could turn down any position offered by Wells Fargo and still receive severance benefits under the CIC Plan. (Compl., ¶¶ 7, 9.) However, to the extent that such a position offered by Wells Fargo was a "Comparable Position" as defined by Section 4.3 of the CIC Plan, the alleged oral representations by the agents contradicted the express written terms of the CIC Plan. As noted above, Section 4.2 clearly and unambiguously provided that Plaintiff could *not* turn down an offer of a Comparable Position and still receive severance benefits.[12] (Richardson Dec., Exh. 1, § 4.2(b) (stating that the offer of a Comparable Position precludes severance benefits "regardless of whether the Employee accepts the offer").) Thus, Plaintiff's allegation that agents told him he could disregard the Plan's written directives amounts to an alleged oral modification of Section 4.2(b) of the CIC Plan. Because such an oral modification is not permissible under ERISA, Plaintiff's entire theory of redress is legally infirm. *Greany*, 973 F.2d at 822.

For this reason, each of Plaintiff's claims should be dismissed with prejudice because there is no way he can now allege a viable ERISA violation without contradicting his allegation that his right to ERISA benefits is based on alleged oral representations. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (Leave to amend a complaint can be denied where the district

---

[12] Notably, Plaintiff does not allege the position he was offered by Wells Fargo was not a "Comparable Position" under the CIC Plan. Rather, he only appears to allege that, for whatever personal reasons, he did not wish to accept the position offered, and that the agents' oral representations permitted him to turn down the position and still receive severance benefits under the CIC Plan.

1   court "determines that the pleading could not possibly be cured by the allegation of other facts.")

2   That is, even if Plaintiff were to exhaust his administrative remedies and pursue only an ERISA

3   cause of action against Wells Fargo, this cause of action would necessarily be premised on a

4   theory of oral modification and would be inevitably doomed.  Dismissal with prejudice of

5   Plaintiff's entire Complaint is therefore warranted.

6       **B.      Plaintiff's Complaint Should Also Be Dismissed Because He Has Not Named
            the Right Defendant.**
7

8       Not only do Plaintiff's claims fail as a straightforward matter of ERISA law, they are not

9   pursued against the right party.  So, if  Plaintiff were permitted to amend his Complaint for any

10  reason, such amendment should be pursued against the proper entity.

11      First, Wells Fargo is not a proper party to any of the claims.  As set forth above in Section

12  III.A., each of Plaintiff's claims seeks benefits provided by an ERISA Plan.  Under well-settled

13  Ninth Circuit law, only the ERISA plan itself, not an employer, may be sued for a denial of

14  benefits.  *Gelardi v. Pertec*, 761 F.2d 1323, 1324 (9th Cir. 1985); *Madden v. ITT Long Term*

15  *Disability Plan*, 914 F.2d 1279, 1286-87 (9th Cir. 1990), *cert. denied* 498 U.S. 1087 (1991);

16  *Gibson v. Prudential Ins. Co.*, 915 F.2d 414, 417 (9th Cir. 1990).  Thus, to the extent Plaintiff is

17  asserting his claims for benefits against Wells Fargo, he fails to state a claim upon which relief

18  can be granted and each of his claims must be dismissed as to Wells Fargo.

19      The same holds true, by the way, for Plaintiff's former employer, GBB, which is also not

20  alleged to be the ERISA plan itself.  Wells Fargo mentions this because of another pleading

21  oddity contained in Plaintiff's Complaint.  Currently, Plaintiff has sued only "Wells Fargo Bank

22  N.A." (Compl., ¶ 3), and that is the party that responds to his Complaint.  However, while

23  Paragraph 1 of Plaintiff's Complaint makes an express representation that GBB is *not* also a

24  party, Plaintiff confusingly seems to address certain causes of action to GBB.  That is, Plaintiff

25  brings essentially four claims:  breach of contract, promissory estoppel, fraud, and negligent

26  misrepresentation.  Each of these claims is pled in duplicative causes of action, one asserted

27  against GBB and one against Wells Fargo.  For instance, Plaintiff's First Cause of Action is titled

28  "Breach of Contract – GBB" while the same exact cause of action and allegations are repeated in

his Second Cause of Action for "Breach of Contract – WFB." Likewise, Plaintiff's Third, Fifth, and Seventh Causes of Action for promissory estoppel, fraud, and negligent misrepresentation, respectively, are directed at "GBB." His Fourth and Sixth Causes of Action are, like his Second Cause of Action, identified as "WFB" claims. His Eighth Cause of Action is also identified as against "GBB," though given Plaintiff's pattern of alternating duplicative claims between GBB and Wells Fargo, Wells Fargo assumes Plaintiff intended to assert this cause of action against Wells Fargo. Regardless of intent, he failed to do so. Wells Fargo understands that Plaintiff has alleged in each cause of action against GBB that Wells Fargo is responsible as a successor in interest, but in the interest of providing necessary clarity as to which entity is being sued and as to what, Wells Fargo seeks to dismiss the First, Third, Fifth, Seventh, and Eighth Causes of Action as being pursued against a non-party GBB.[13]

In short, whichever the entity Plaintiff is attempting to sue, it cannot be Wells Fargo or GBB because neither is the Plan under which he seeks benefits.

## IV.   CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Court dismiss Plaintiff's entire Complaint with prejudice. Plaintiff's state law claims are ERISA claims in disguise and are therefore preempted. Moreover, even if properly pled as ERISA claims, they are subject to the ERISA requirements that the claims first be exhausted administratively and that they not contradict the written terms of a plan. Plaintiff has not alleged the former and cannot now allege the latter. His Complaint is also not pursued against the ERISA Plan at issue, as required by Ninth Circuit authority, but against Wells Fargo Bank. For all these reasons, Plaintiff's Complaint should be dismissed with prejudice.

---

[13] As the alleged successor in interest to GBB, Wells Fargo has standing to seek to dismiss these claims against GBB. *See* Cal. Corp. Code § 1107(a) ("Upon merger pursuant to this chapter the separate existence of the disappearing corporations ceases and the surviving corporation shall succeed, without other transfer, to all the rights and property of each of the disappearing corporations and shall be subject to all the debts and liabilities of each in the same manner as if the surviving corporation had itself incurred them.")

1   Dated: March 27, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PATRICIA K. GILLETTE
ANDREW R. LIVINGSTON
JOSEPH C. LIBURT
GREG J. RICHARDSON
Orrick, Herrington & Sutcliffe LLP


_____
GREG J. RICHARDSON
Attorneys for Defendant
WELLS FARGO BANK, N.A.

DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS
(CASE NO. CV 08 1554 JF)