STUART C. CLARK (SBN 124152)
clark@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:   (650) 812-3444

Attorneys for Plaintiff
PATRICK PIERCE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PATRICK PIERCE,<br><br>        Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK,<br>and DOES 1 through 20,<br><br>        Defendants. | CASE NO. C08-01554 JF (HRL)<br><br>**MOTION OF PATRICK PIERCE FOR REMAND TO THE SUPERIOR COURT FOR THE COUNTY OF SANTA CLARA**<br><br>Date:     June 6, 2008<br>Time:    9.00 a.m.<br>Place:    Courtroom 3, 5th Floor<br>Judge:   Hon. Jeremy Fogel |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     RELIEF SOUGHT ............................................................................................... 2

III.    STATEMENT OF FACTS .................................................................................... 2

     A.    After The Announcement Of GBB's Acquisition By WFB, GBB And
          WFB Promised Severance Benefits To Pierce And Others. ................................. 2

     B.    This Action Is Based On The Express, Independent Promises And
          Representations That Severance Benefits Could Be Elected By
          Pierce, And It Does Not Seek To Enforce The Change In Control
          Program. ........................................................................................................... 4

          1.    WFB Has Mischaracterized the Basis of Pierce's Claims. ...................... 4

          2.    Pierce's Claims Are Independent of the Change in Control
               Program. ................................................................................................ 5

     C.    Pierce Is Separately Exhausting His Remedies Under The Change in
          Control Program By Applying For Benefits. ...................................................... 6

IV.     ARGUMENT ...................................................................................................... 7

     A.    Pierce's State Law Claims Are Not Preempted By ERISA. ................................ 7

          1.    Pierce's Breach of Contract Claims Are Not Preempted By
               ERISA. .................................................................................................. 8

          2.    Pierce's Promissory Estoppel Claims Are Not Preempted By
               ERISA. ................................................................................................ 13

          3.    Pierce's Misrepresentation Claims Are Not Preempted By
               ERISA. ................................................................................................ 13

     B.    This Case Must Be Remanded Because The Court Lacks Jurisdiction. .............. 16

     C.    Pierce Is Entitled To Recover His Costs, Including Reasonable
          Attorney's Fees. .............................................................................................. 17

V.      CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*Ansley v. Ameriquest Mortgage, Co.,* 340 F.3d 858 (9th Cir. 2003)............................................17

*Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir. 1984) ........................................................15

*California Labor Stds. Enf. v. Dillingham Constr.,* 519 U.S. 316, 117 S.Ct. 832 (1997) ..........................................................................................................................9

*Circle Industries USA Inc. v. Parke Constr. Group, Inc.,* 183 F.3d 105 (2nd Cir. 1999)..........................................................................................................................17

*Davidian v. Southern California Meat Cutters Union,* 859 F.2d 134 (9th Cir. 1989) ...............14

*Emard v. Hughes Aircraft Co.,* 153 F.3d 949 (9th Cir. 1998)................................................9, 11

*Emrich v. Touche Ross & Co.,* 846 F.2d 1190 (9th Cir. 1988) ...................................................16

*Farr v. U.S. West, Inc.,* 58 F.3d 1361 (9th Cir. 1995)................................................................15

*Fort Halifax Packing Co. v. Coyne,* 482 US 1, 107 S.Ct. 2211 (1987) .......................................9

*Geweke Ford v. St. Joseph's Omni Pref. Care Inc.,* 130 F.3d 1355 (9th Cir. 1997) .................12

*Gugielmino v. McKee Foods Corp.,* 506 F.3d 696 (9th Cir. 2007)............................................16

*Harris v. Provident Life and Accident Co.,* 26 F.3d 930 (9th Cir. 1994)..................................16

*Johnson v. District 2 Marine Engineers Beneficial Ass'n,* 857 F.2d 514 (9th Cir. 1988)..........................................................................................................................15

*Marriage of Nasca v. Peoplesoft,* 87 F.Supp.2d 967 (N.D. Cal) .........................................12, 17

*Martori Bros. Distributors v. James-Massengale,* 781 F.2d 1349 (9th Cir. 1986)....................15

*Metropolitan Life Ins. Co. v. Taylor,* 481 US 58, 107 S.Ct. 1542 (1987)..........................7, 8, 11

*Miller v. Rite Aid Corp.,* 504 F.3d 1102 (9th Cir. 2007)................................................10, 11, 13

*Scott v. Gulf Oil,* 754 F.2d 1499 (9th Cir. 1985)...........................................................12, 14, 15

*Shaw v. Delta Airlines, Inc.,* 483 US 85, 103 S.Ct. 2890 (1983) ................................................9

*Sorosky v. Burroughs Corp.,* 826 F.2d 794 (9th Cir. 1987) .......................................................12

*Stiltner v. Beretta,* 74 F.3d 1473 (4th Cir. 1996) ......................................................................16

*Toumajian v. Frailey,* 135 F.3d 648 (9th Cir. 1998)...............................................................7, 8

1

**STATUTES**

2 | 28 USC § 1447(c) ...........................................................................................16, 17

3 | 29 USC § 1102(3) ..................................................................................................8

4 | 29 USC § 1132 .......................................................................................................9

5 | 29 USC § 1132(a) .............................................................................................8, 12

6 | 29 USC § 1144(a) ..................................................................................................8

7 | 29 USC § 1441(b) ..................................................................................................7

8 | Fed.R.Civ.P. 8(d)(2) ..............................................................................................7

9

10

**OTHER AUTHORITIES**

11 | Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, § 2:1095.5 ..............16

12 | Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, § 2:1109 .................17

13 | Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, § 2:1110 .................17

14 | Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, § 8:124 (TRG 2008) ...........................................................................................7

15

16 | Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, §§ 2:1084, 2:1099 (TRG 2008) .................................................................................16

17 | Weil & Brown, *Civil Procedure Before Trial*, § 6:242 (TRG 2007) ...........................................7

18

19

20

21

22

23

24

25

26

27

28

1    PLEASE TAKE NOTICE THAT on June 6, 2008, at 9.00 a.m. or as soon thereafter as the

2    matter may be heard, and in Courtroom 3 of this court, plaintiff Patrick Pierce ("Pierce") will move

3    under 28 USC § 1447(c) for an order remanding this action to the Superior Court for Santa Clara

4    County.

5    The grounds for the motion are that the state common law claims that are the only claims

6    asserted in the complaint are not preempted by ERISA. Accordingly, this Court lacks jurisdiction

7    to adjudicate the action.

8    The motion will be supported by the submissions which follow, the accompanying

9    declarations of Pierce and Stuart Clark, the documents on file, and by such other submissions,

10   evidence, and argument as may be permitted prior to or at the hearing of the motion.

11               **I.    <u>INTRODUCTION</u>**

12   Pierce seeks by this action to recover the damages attributable to the failure of WFB and its

13   predecessor in interest, Greater Bay Bancorp ("GBB"), to deliver "Change in Control" benefits that

14   were promised to Pierce in the event that GBB was acquired by any third party. WFB implemented

15   its acquisition of GBB in late 2007. Prior to that acquisition, GBB and WFB had promised Pierce

16   (among others) that after implementation of the acquisition he would not be forced to take a

17   position with WFB that he did not want, and that he would be entitled to elect benefits under

18   GBB's "Change in Control Plan" if he elected not to take a full-time position with WFB.

19   After the acquisition of GBB and its merger into WFB, however, WFB reneged on the

20   promises and representations by both GBB and WFB that Pierce would receive benefits under the

21   Change in Control Plan. This action seeks to enforce the broken promises and to recover

22   compensation for the damages inflicted as a result of the false representations.

23   What this action does not seek to do is to *enforce payment of benefits under the Change in*

24   *Control Plan.* Pierce is independently of this action pursuing an application for such benefits, and

25   WFB has promised to respond to that application no later than May 5, 2008. Thus, Pierce will

26   exhaust his remedies under the plan before engaging in enforcement proceedings through the

27   courts.

28   The action is directed to WFB in its personal capacity, and also to WFB in its capacity as

1   the successor-in-interest to GBB and the surviving entity following the merger.

2                           **II.    RELIEF SOUGHT**

3        Pierce seeks an order remanding this action to the Superior Court for the County of Santa

4   Clara, and an award of costs (including reasonable attorney fees) in the sum of $13,200, under 28

5   USC § 1447(c).

6                           **III.    STATEMENT OF FACTS**

7        Pierce is an individual who lives and works in Santa Clara County.  WFB is a national bank

8   which conducts business in, among other places, the County of Santa Clara.

9        In early 2007 Pierce was employed by GBB as a Senior Vice President and Director of

10  Special Assets.[1]  Pierce initially joined GBB in 1999 as a Vice President. On or about May 4, 2007,

11  GBB and WFB announced that they had "signed a definitive agreement for the acquisition of

12  Greater Bay Bancorp."[2]

13       At the time that this action was filed on February 4, 2008, Pierce was employed by WFB in

14  the temporary position of Loan Adjuster Manager.  This was not a position of comparable status to

15  his former position of Senior Vice President and Director of Special Assets.  Accordingly, after it

16  became apparent that WFB was unwilling to settle the dispute underlying this action on an

17  amicable basis, and because being required to continue working in a non-comparable position

18  constituted a repudiation by WFB of its promises and representations and contractual obligations,

19  Pierce resigned on March 24, 2008, with effect from April 4, 2008.

20           **A.    After The Announcement Of GBB's Acquisition By WFB, GBB
21                 And WFB Promised Severance Benefits To Pierce And Others.**

22       At various times subsequent to the announcement of GBB's acquisition by WFB, but before

23  the implementation of the merger on October 1, 2007, GBB and WFB promised and represented to

24  Pierce, and others similarly situated to him, that if Pierce and such others continued to work for

25  GBB through the implementation of the merger with WFB, then Pierce and such others:

26  _____

27  [1].  Declaration of Patrick Pierce dated April 7, 2008, ("Pierce Dec."), ¶ 2.  Unless otherwise
         indicated, the other facts set out in this Part III(A) are also supported by that declaration.
28  [2].  Pierce Dec., Exhibit "A".

(a)    would not be forced to take positions with WFB after the merger that they did not want; and,

(b)    would be entitled to elect severance benefits under GBB's Change in Control Plan if they elected not to take full time positions with WFB.

The promises and representations referred to in the preceding paragraph were made separately by representatives of GBB and WFB respectively, giving rise to independent obligations owed to Pierce by both GBB and WFB.  However, because GBB has ceased to exist as a separate legal entity following its merger with WFB, WFB as the surviving entity is named as the party liable in place of GBB on the claims on which GBB is alleged to be liable.

At the time of the merger announcement GBB had in place a "Change in Control Plan" that was amended and restated as of January 1, 2005 (the "2005 Program").  This program provided for payment of certain severance benefits to GBB employees whose employment was terminated as a result of a change in control, or who were not offered permanent comparable positions.  Subsequently, as of June 19, 2007, the 2005 Program was replaced by a modified program entitled the "Greater Bay Bancorp Change in Control Pay Plan 1" (the "2007 Program").  As is noted above, *Pierce does not by this action seek to enforce the payment of benefits under either of those programs, however*: rather, Pierce is separately pursuing his remedies under the 2005 Program and/or the 2007 Program (hereinafter jointly called the "Change in Control Program"), by pursuing an application for benefits.[3]  The Plan Administrator (i.e. WFB) has promised a response to this application for benefits by no later than May 5, 2008.[4]

The effect of GBB and WFB's promises and representations is that *irrespective of whether or not Pierce is entitled to benefits under the Change in Control Program, such benefits would nevertheless be forthcoming if elected by Pierce, because of the promises and representations.*  Thus, the promises and representations relied on were *in addition to*, and *supplemented*, whatever obligations existed under the Change in Control Programs.

---

[3].  Pierce Dec., Exhibit "B".

[4].  Pierce Dec, Exhibit "C".  This letter also informed Pierce that the Board of GBB (now WFB) had appointed WFB's Executive Vice President and Director of Human Resources to administer the plan as the "Plan Committee" of one.

{00302360v1}          -3-
Motion of Patrick Pierce for Remand to the Superior Court for the County of Santa Clara
(Case No. C08-01554 JF (HRL))

1    Acting in reliance on the promises and representations of GBB and WFB, Pierce continued

2    to work for GBB until the effective date of the merger, and did not pursue other employment

3    opportunities, in the expectation that if he elected not to work with WFB after the merger he would

4    receive the promised severance benefits *irrespective of whether or not he was technically entitled to*

5    *such benefits* under the applicable Change in Control Program.  After Pierce had fulfilled his part of

6    the bargain by working through to the merger, however, WFB took the position after the merger

7    that Pierce would not be entitled to benefits under the Change in Control Program if he elected not

8    to take a full time position with WFB.

9    **B.    This Action Is Based On The Express, Independent Promises And**
     **Representations That Severance Benefits Could Be Elected By Pierce,**
10   **And It Does Not Seek To Enforce The Change In Control Program.**

11   This action asserts eight causes of action, each of which is based on the oral promises and

12   representations described above, and none of which purports to enforce benefits under any Change

13   in Control Program.  Those eight causes of action are for: (1) breach by GBB of its oral agreement

14   to pay severance benefits under the Change in Control Program; (2) breach by WFB of its oral

15   agreement to pay severance benefits under the Change in Control Program; (3) promissory

16   estoppel, based on GBB's failure to pay promised severance benefits under the Change in Control

17   Program; (4) promissory estoppel, based on WFB's failure to pay promised severance benefits

18   under the Change in Control Program; (5) fraud, based on GBB's false representations that it would

19   pay promised severance benefits under the Change in Control Program; (6) fraud, based on WFB's

20   false representations that it would pay promised severance benefits under the Change in Control

21   Program; (7) negligent misrepresentation, based on GBB's false representations that it would pay

22   promised severance benefits under the Change in Control Program; and (8) negligent

23   misrepresentation, based on WFB's false representations that it would pay promised severance

24   benefits under the Change in Control Program.  The claims based on GBB's misconduct are

25   asserted against WFB as the surviving corporation following the merger.

26        1.    *WFB Has Mischaracterized the Basis of Pierce's Claims.*

27   WFB's Notice of Removal is based on a series of false premises and statements.  These

28   include the misstatement that Pierce "claims deprivation of severance benefits available under the

1    Greater Bay Bancorp 'Change in Control Program'."[5]  As is noted above, Pierce is not by this

2    action seeking to enforce remedies *under the Change in Control Program*, but rather under a

3    *separate and independent oral agreement*.  WFB repeats its mischaracterization in its subsequently-

4    filed motion to dismiss, misrepresenting that Pierce's claims are based on an allegation that Pierce

5    "was covered by a Change in Control Pay Plan."[6]  A cursory review of the complaint refutes

6    WFB's mischaracterizations, however, as we discuss further in Part III(B), below.

7        WFB is also guilty of a misstatement in asserting that the action "requires a court to

8    interpret the provisions of an employee benefit plan subject to ERISA and seeks to recover benefits

9    allegedly due under the Plan."[7]  All that is required of the court if it finds that GBB and/or WFB

10   made the promises and representations relied on by Pierce, and failed to honor those promises and

11   representations, is to award damages in the amount of the benefits that were not forthcoming from

12   the Change in Control Program.  Thus no *interpretation* of the Change in Control Program is

13   required – the withheld benefits simply need to be identified, and the amount thereof ordered paid

14   as damages for breach of an oral agreement, and/or according to the principles of promissory

15   estoppel, an/or based on misrepresentation.

16        2.    *Pierce's Claims Are Independent of the Change in Control Program.*

17       Each of Pierce's claims incorporate the allegations of paragraph 7 of the complaint, namely

18   that GBB and WFB made the representations described in Part III(A) above with regard to his right

19   to elect severance benefits if he elected not to take a full time position with WFB.  The breach of

20   contract causes of action are based on the allegations that:

21       The promises and representations referred to in paragraph 7, above,
22       constituted offers by GBB to pay Severance Benefits to Pierce and
         those similarly situated in the event that he or any of them elected not
23       to remain in the full-time employment of WFB after the merger,

24   and the further allegations that:

25

26   _____

27   [5]    Notice of Removal, 3:1-5.
     [6]    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(6) filed march 27, 2008
28          (the "Motion to Dismiss"), 1:26-2:2.
     [7]    Notice of Removal, 3:6-8.

1    Pierce accepted the offers referred to in the preceding paragraph, both
2    expressly and by his conduct in continuing to work at GBB through
     the effective date of the merger.[8]

3    Similarly, on the promissory estoppel causes of action, Pierce alleges that:

4    The promises and representations referred to in paragraph 7, above,
5    constituted promises by GBB to pay Severance Benefits to Pierce and
     those similarly situated in the event that he or any of them elected not
6    to remain in the full-time employment of WFB after the merger,

7    and then proceeds to further allege that

8    Pierce relied on the promises and representations referred to in the
9    preceding paragraph, both expressly and by his conduct, including but
     not limited to by continuing to work at GBB through the effective
10   date of the merger, and in not seeking alternative employment.[9]

11   In the same vein, the misrepresentation causes of action are all based on the allegations that

12   Pierce relied on GBB's and WFB's representations, that those representations were false because

13   GBB and WFB never intended to honor them, and that Piece relied on the representations and

14   thereby sustained damages.[10]

15   Thus, no cause of action is based on the allegation that Pierce is *entitled to benefits under a*

16   *Change in Control Program*, or that he is asserting a claim for such benefits *in this action.*

17   **C.    Pierce Is Separately Exhausting His Remedies Under The**
18   **Change in Control Program By Applying For Benefits.**

19   Notwithstanding WFB's position that Pierce was not entitled to such benefits because he

20   was offered a position that excused the Change in Control Program from paying severance

21   benefits,[11] on February 4, 2008 (i.e. the day the action was filed) Pierce formally applied to the Plan

22   Committee for benefits.[12]  WFB's designee as the Plan Committee informed Pierce that a response

23   to his application would not be forthcoming until the end of the maximum period within which a

24

25

26   [8].   Complaint, ¶¶ 14, 15, 20, and 21.
     [9].   Complaint, ¶¶ 25, 26, 32, and 33.
27   [10].  Complaint, ¶¶ 38-43, 46-51, 54-56, and 59-61.
     [11].  Complaint, ¶ 11; WFB letter to Pierce dated November 8, 2007: Exhibit "D" to Pierce Dec.
28   [12].  Pierce Dec., Exhibit "B".

1   response to the application would be required, i.e. May 5, 2008.[13]  (It will be interesting to ascertain

2   through discovery what excuse WFB offers for this apparent bad faith delay – given its already

3   adopted position that it will not pay severance – in responding to the application.)

4        If WFB's designee as the Plan Committee persists with WFB's November 8, 2007 and

5   subsequent position that no severance benefits are payable, then Pierce will probably commence a

6   separate action for the payment of benefits under the plan.  If so, that claim will be asserted in the

7   alternative to the state law claims asserted in this action, as permitted by both federal and state law.

8   Fed.R.Civ.P. 8(d)(2); Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial,* §

9   8:124 (TRG 2008); Weil & Brown, *Civil Procedure Before Trial,* § 6:242 (TRG 2007).  And if

10  WFB changes position, and pays benefits under the Change in Control Program, then it may have a

11  complete or partial defense to some or all of Pierce's claims.

12                              **IV.    ARGUMENT**

13       Pierce's claims in this action are not asserted under ERISA, nor are they preempted by

14  ERISA.  As a result, this Court lacks jurisdiction to adjudicate those claims.  Where a federal court

15  lacks jurisdiction, as here, the case must be remanded back to the superior court from which it

16  came.  Moreover, where such remand is granted, costs (including attorney fees) should be granted

17  if the case has been "improperly removed" to federal court.  Therefore, this case must be remanded

18  back to the Superior Court in which it was initially filed, and WFB should be ordered to pay the

19  expenses (including attorney's fees) incurred by Pierce as a result of the removal.

20       **A.    Pierce's State Law Claims Are Not Preempted By ERISA.**

21       In determining whether an action is removable under 29 USC § 1441(b) the court applies

22  the "well-pleaded complaint rule."  *Metropolitan Life Ins. Co. v. Taylor*, 481 US 58, 63, 107 S.Ct.

23  1542, 1546 (1987).  Under this rule, "a cause of action arises under federal law only when the

24  plaintiff's well-pleaded complaint raises issues of federal law."  *Id.*; *Toumajian v. Frailey*, 135 F.3d

25  648, 653 (9th Cir. 1998).  For removal to be appropriate, a federal question must appear on the face

26  of the complaint.  *Id.*

27  _____

28  [13].  Letter from WFB to Pierce dated March 6, 2008: Exhibit "C" to Pierce Dec.

1    The well-pleaded complaint rule is not the only criterion for adjudicating removal

2    jurisdiction, however.  A corollary to that rule is the *complete preemption doctrine*, under which

3    Congress may so completely preempt a particular area that any complaint raising a select group of

4    claims is necessarily federal in character.  *Id.*; *Metropolitan Life Ins. Co. v. Taylor*, *supra.,* 481 US

5    at 63-64.  In such a case, even if the only claim in the complaint is a state law claim, if that claim is

6    one that is completely preempted then federal jurisdiction exists and removal is appropriate.  *Id.*,

7    Pierce's common law claims for breach of contract, promissory estoppel, fraud, and

8    negligent misrepresentation do not seek to enforce benefits payable under an ERISA plan, or state

9    any other claim under federal law.  They simply seek to enforce and/or seek compensation for the

10    violation of promises and representations by GBB and WFB that created obligations arising

11    *independently of* the Change in Control Program.  Thus, as we explain in greater detail below, none

12    of Pierce's state law claims are preempted by ERISA either.

13    1.    *Pierce's Complaint Does Not Assert Claims Under ERISA.*

14    The complaint manifestly asserts only state common law claims, namely claims for breach

15    of contract, promissory estoppel, fraud, and negligent misrepresentation.  Accordingly, on the well-

16    pleaded complaint rule the complaint does not raise any issues of federal law.  It follows, therefore,

17    that removal was not permissible under the standards of the well-pleaded complaint rule.  Thus, we

18    now proceed to show that removal was not proper under the complete preemption doctrine either.

19    2.    *Pierce's Breach of Contract Claims Are Not Preempted By ERISA.*

20    For a state court claim to be preempted by ERISA under the complete preemption doctrine,

21    the state law on which such claim is based must "relate to any employee benefit plan described in §

22    1003(a) of this title and not [be] exempt under § 1003(a) of this title."  29 USC § 1144(a);

23    *Metropolitan Life Ins. Co. v. Taylor*, *supra.,* 481 US at 64, 66; *Toumajian v. Frailey*, *supra.,* 135

24    F.3d at 654.  An "employee benefit plan" may be either an "employee welfare benefit plan" or an

25    "employee pension benefit plan."  29 USC § 1102(3).

26    Under the standards of *Metropolitan Life,* preemption arises if the state law claim both

27    "relates to" an ERISA plan *and* falls within the scope of ERISA's civil enforcement provision, 29

28    USC § 1132(a).  *Toumajian v. Frailey*, *supra.,* 135 F.3d at 654.  If *both* conditions are not met,

1  however, the federal court does not have subject matter jurisdiction.  *Id.*

2       A state court claim "relates to" an employee benefit plan "if it has a connection with or

3  reference to such a plan."  *Shaw v. Delta Airlines, Inc.*, 483 US 85, 96-97, 103 S.Ct. 2890 (1983)

4  (cited with approval in *Fort Halifax Packing Co. v. Coyne*, 482 US 1, 8, 107 S.Ct. 2211 (1987)).  A

5  state law has a reference to ERISA plans where it "acts immediately and exclusively upon ERISA

6  plans . . . or where the existence of ERISA plans is essential to the [law's] operation."  *Emard v.*

7  *Hughes Aircraft Co.,* 153 F.3d 949, 954 (9th Cir. 1998).  The mere fact that a claim relates to

8  employee *benefits* is not enough, however – the claim must relate to a *plan* under which employee

9  benefits are paid.  *Id.*  And to be a *plan* under ERISA, a program for the payment of employee

10  benefits must "require[-] an ongoing administrative program to meet the employer's obligation."

11  *Fort Halifax Packing Co. v. Coyne, supra.,* 482 US 11.  Thus, a program merely requiring payment

12  of "a one-time, lump-sum payment triggered by a single event [which] requires no administrative

13  scheme whatsoever to meet the employer's obligation" is not a "plan."  *Id.*, at 12.

14       To determine whether a state court claim has a "forbidden connection" with an ERISA plan

15  the court looks both at the "objectives of the ERISA statute as a guide to the scope of the statute

16  that Congress understood would survive," as well as to the nature and effect of the state law on

17  ERISA plans.  *California Labor Stds. Enf. v. Dillingham Constr.*, 519 U.S. 316, 325, 117 S.Ct. 832

18  (1997).  In applying these criteria, the court assumes that the "historic police powers of the States

19  [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of

20  Congress."  *Id.*

21       ERISA's civil enforcement provisions are found in 29 USC § 1132.  Paragraph (a)(1) of that

22  section provides that a civil action may be brought by a participant or beneficiary for the relief

23  provided under paragraph (c)(i.e. information that the plan administrator is required to provide), or

24  to recover benefits or enforce rights, or to clarify rights, *under the terms of the plan.*  Paragraph

25  (a)(3) allows a beneficiary or participant to seek injunctive or other equitable relief, once again

26  relating to *the terms of a plan.*  Thus, section 1132 does not contemplate recovery, enforcement,

27  clarification, etc. of any remedy *other than under the terms of a plan*.

28       Pierce's breach of oral contract claims are based on the simple elements that: (1) GBB and

1    WFB promised that Pierce would be entitled to receive severance benefits under the Change in

2    Control Program if he elected not to remain in the full time employment of WFB after the merger

3    (Complaint, ¶¶ 7(a) and (b), 14, and 20); (2) GBB and WFB failed to honor their promises, by

4    denying those severance benefits (*Id.*, ¶¶ 16, 22); and (3) Pierce was damaged in the amount which

5    he would have received as severance benefits if GBB and WFB had honored their promises (*Id.*, ¶¶

6    18, 23).  Thus, Pierce's contract claims are *not* based on *an attempt to enforce any ERISA plan,*

7    even assuming for the sake of argument (but not admitting) that the Change in Control Program is

8    an ERISA plan.  Nor do they relate to a plan in any other way.

9         WFB's Notice of Removal is based on the false premise that Pierce's contract claims are

10   preempted by ERISA *merely because he seeks compensation calculated with reference to the value*

11   *of promised "Change in Control" benefits*.  Based on the criteria discussed above, however,

12   Pierce's contract claims are not subject to complete preemption.  First, those claims do not "relate

13   to" ERISA, because they do not have a connection with or reference to any ERISA plan.

14   Specifically, those state law contract claims do not "act[-] immediately and exclusively upon

15   ERISA plans," nor is "the existence of ERISA plans . . . essential to the [law's] operation."

16   Second, those claims do not fall within the scope of ERISA's enforcement procedure, namely

17   section 1132, because no claim seeks to enforce payment of benefits or rights *under the terms of an*

18   *ERISA plan.*  To the contrary, Pierce's claims are predicated on the allegation that benefits are *not*

19   *available* under any ERISA plan.  (Once again assuming for the sake of argument, without

20   admitting, that the Change in Control Program is such a plan.)

21        Looking at the actual facts alleged by Pierce, therefore, rather than the mischaracterizations

22   by WFB of those facts, it becomes apparent that the circumstances here are similar to those in the

23   case of *Miller v. Rite Aid Corp.*, 504 F.3d 1102 (9th Cir. 2007), in which the court found that there

24   was no ERISA preemption.  In that case Rite-Aid employee Miller had been promised $150,000 in

25   life insurance coverage as an employee benefit, but she was not actually eligible under Rite-Aid's

26   death benefit plan to receive that coverage.  After her death, among other claims, Miller's estate

27   asserted a claim against Rite Aid for breach of contract for failing to ensure that the insurance

28   benefit was paid.  (At 1105)  Like WFB here, Rite Aid removed the case to federal court, arguing

1    ERISA preemption.  The court rejected Rite-Aid's contention that Miller's breach of contract claim

2    was preempted, holding that "ERISA does not preempt the claims of parties who do not have the

3    right to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA

4    plan."  (At 1106)  The court explained that in order to be a participant a plaintiff needed to have a

5    "colorable claim that she will prevail in a suit for benefits," and plaintiff had no such claim.  *Id.*

6    This is because, as the court noted, "Unlike the Cheshire Cat, one cannot have the smile of

7    preemption without the stripes of participation."  *Id.*

8           Like Rite-Aid and the Cheshire Cat, WFB cannot take the position that Pierce is not entitled

9    to benefits under the Change in Control Program, and at the same time successfully take the

10   position that Pierce is precluded from asserting a state law breach of contract claim.  If WFB had

11   not already taken the position that Pierce is ineligible for benefits under the Change in Control

12   Program,[14] then the situation might be different.  However, as long as WFB persists in its position

13   that Pierce is not eligible for benefits under the Change in Control Program, then Pierce's breach of

14   contract claim cannot be preempted by ERISA, since he is (according to WFB) not a beneficiary or

15   participant under the program.

16          None of the cases cited by WFB in the Notice of Removal support its proposition that

17   Pierce's breach of contract claims are preempted by ERISA.  In *Metropolitan Life Ins. Co. v.*

18   *Taylor*, 481 US 58, 107 S.Ct. 1542 (1987) plaintiff sought damages on a breach of contract theory

19   for failure to pay him supplemental benefits *under an employee benefit plan*, and after he had

20   already received certain benefits as a participant under that plan.  (At 62)  The court held that his

21   claim was "a suit by a beneficiary to recover benefits from a covered plan," and was therefore

22   preempted.  (*Id.*, at 62-63).  Thus, the facts of *Metropolitan Life* are different from the facts in this

23   case, because in that case plaintiff was suing *under an ERISA plan.*

24          *Emard v. Hughes Aircraft Co.,* 153 F.3d 949 (9th Cir. 1998), also relied on by WFB, does

25   not support its preemption argument, because *Emard* held that the mere fact that a state law claim

26   

27   [14]   As we note in Part III(C), above, this is a decision that Pierce does not accept, and when his
28          remedies have been exhausted, a claim will probably be asserted in the alternative for benefits
             *directly under the Change in Control Program.*

1    to death benefits involved a policy under an ERISA plan did not give rise to preemption.  In the

2    same vein, *Marriage of Nasca v. Peoplesoft,* 87 F.Supp.2d 967 (N.D. Cal) – also relied on by

3    WFB[15] – does not support WFB's preemption argument either.  Rather, in *Nasca* the court

4    remanded a state court action that was improperly removed to federal court on grounds of purported

5    ERISA preemption, and ordered Peoplesoft to pay over $60,000 in expenses under 28 USC §

6    1447(c) for improper removal.  (At 975)  In the course of its ruling the court found that the mere

7    fact that the Nasca's divorce proceeding involved benefits in an ERISA plan did not preempt the

8    state court claims.  (At 974-975)  Thus, in principle *Nasca* supports Pierce's contention that the

9    mere fact that his damages are measured with regard to promised but undelivered benefits of what

10   may be an ERISA plan does not result in preemption.

11       *Geweke Ford v. St. Joseph's Omni Pref. Care Inc.,* 130 F.3d 1355 (9th Cir. 1997), further

12   relied on by WFB, also does not support its position on preemption.  In that case a plan

13   administrator sued two subcontractors for breach of contract in failing to reimburse expenses.  (At

14   1356)  The court held that the claim was not preempted because it was not brought under ERISA's

15   civil enforcement provision, 29 USC § 1132(a).  (At 1358)  Thus, since Pierce's contract claims are

16   not asserted under section 1132(a) either, *Geweke Ford* supports Pierce's position.  So does

17   *Sorosky v. Burroughs Corp.,* 826 F.2d 794 (9th Cir. 1987), also relied on by WFB, in which the

18   court held that while a claim for benefits under an ERISA plan was preempted, breach of contract

19   and other state law claims were not preempted because they asserted claims *independent of* the

20   ERISA plan.  (At 800)

21       WFB also invokes *Scott v. Gulf Oil,* 754 F.2d 1499 (9th Cir. 1985) for the proposition that

22   "ERISA preempts [a] . . . contract claim alleging denial of benefits due."  However, the facts of

23   *Scott* are also quite different from those existing here.  In *Scott* the court found that plaintiffs'

24   contract claim "asserts no more nor less than that plaintiffs were denied benefits due to them under

25   the terms of an employee welfare benefit plan.  The claim is therefore preempted by ERISA."  (At

26   1505)  As is explained above, Pierce does not seek by his breach of oral contract claims to enforce

27   _____

28   [15].    Cited by WFB as 1999 WL 64947 (N.D. Cal. 1999).

1   benefits under the Change in Control Program – he seeks compensation for the failure of GBB and

2   WFB to fulfill the contractual promise to make those benefits available.  Thus, *Scott* does not apply

3   to Pierce's breach of contract claim, and therefore does not support WFB's position either.

4          Under the circumstances, Pierce's contract claims are not preempted by ERISA.

5          3.      *Pierce's Promissory Estoppel Claims Are Not Preempted By ERISA.*

6          Similarly to the breach of contract claims, Pierce's promissory estoppel claims are also

7   based on a few simple elements, namely that: (1) GBB and WFB promised and represented that

8   Pierce would be entitled to receive severance benefits under the Change in Control Program if he

9   elected not to remain in the full time employment of WFB after the merger (Complaint, ¶¶ 7(a) and

10  (b), 25, and 32); (2) Pierce relied on those promises and representations (*Id.,* ¶¶ 26, 33); (3) GBB

11  and WFB failed to honor their promises and representations, by denying those severance benefits

12  (*Id.,* ¶¶ 27, 34); and (4) Pierce was damaged in the amount which he would have received as

13  severance benefits if GBB and WFB had honored their promise (*Id.*, ¶¶ 35, 35).  Once again,

14  therefore, these causes of action do not seek to enforce the payment of benefits *under the Change in*

15  *Control Program*, as WFB contends.

16         As with contract causes of action, the mere fact that a promise relates to the subject of what

17  may arguably be an ERISA plan does not render the claim preempted.  Once again like the plaintiff

18  in *Miller*, here Pierce simply seeks to enforce – using the equitable remedy of promissory estoppel

19  rather than the legal remedy of breach of contract – the promises and representations of GBB and

20  WFB.  Consequently, and for the same reasons as are set out in Part IV(A)(2), above, Pierce's

21  promissory estoppel claims are not preempted either.

22         4.      *Pierce's Misrepresentation Claims Are Not Preempted By ERISA.*

23         As with the breach of contract and promissory estoppel claims, Pierce's fraud and negligent

24  misrepresentation claims are also based on a few simple elements, namely that: (1) GBB and WFB

25  promised and represented that Pierce would be entitled to receive severance benefits under the

26  Change in Control Program if he elected not to remain in the full time employment of WFB after

27  the merger (Complaint, ¶¶ 7(a) and (b), 38, 46, 54, and 59); (2) the promises and representations

28  were false (*Id.,* ¶¶ 39, 47, 54, and 59); (3) the promises and representations were made knowing of

their falsity or without reasonable grounds for believing them to be true (*Id.*, ¶¶ 40, 48, 54, and 59); (4) Pierce relied on those promises and representations (*Id.*, ¶¶ 42, 50, 55, and 60); and (5) Pierce was damaged in the amount which he would have received as severance benefits if GBB and WFB had honored their promise (*Id.*, ¶¶ 43, 51, 56, and 61). Once again, therefore, these causes of action do not seek to enforce the payment of benefits *under the Change in Control Program.*

In its Notice of Removal WFB invokes *Davidian v. Southern California Meat Cutters Union*, 859 F.2d 134 (9th Cir. 1989), apparently as purported support for its position that Pierce's misrepresentation claims are preempted (WFB does not explain why it relies on *Davidian*). *Davidian* does not provide that support. In *Davidian* plaintiff sued the plan for fraud because a representative of the plan had misrepresented the amount of benefits that would be payable for heart surgery. (At 135) Thus, *Davidian* was also a claim for benefits *under a plan* which involved the *administration of the plan*. Thus, *Davidian* is inapplicable here.

WFB also invokes *Scott v. Gulf Oil,* 754 F.2d 1499 (9th Cir. 1985) for the proposition that "ERISA preempts fraud claims relating to loss of benefits." However, *Scott* actually contradicts WFB's position, and instead supports Pierce's position that his fraud claims are not preempted. In *Scott* the plaintiffs claimed that their former employer (Gulf) had misrepresented the extent of the benefits that they would receive on joining the new employer (Thrifty). Thus, as happened to Pierce here, there was a misrepresentation with regard to the benefits that would be forthcoming after joining the new employer. In finding that the fraud claim was not preempted, the court applied its earlier reasoning with regard to certain non-fraud claims. (At 1506) Such reasoning was that:

> The claim for prospective benefits does not allege the denial of benefits under a benefit plan; rather, it alleges that Gulf's tortious actions prevented the existence of such a plan in plaintiffs' employment with Thrifty. It does not allege the violation of duties created by any welfare plan; rather it alleges the violation of Gulf's duties as a past employer. . . . *The claim does not raise any issues concerning the matters regulated by ERISA, namely, the administration, reporting, disclosure, funding, vesting, and enforcement of benefit plans.* The issues raised by the claim are no different than those that would be raised by a claim that Gulf had conspired with Thrifty to force the plaintiffs to accept, for example, lower wages, a claim that would clearly not be preempted by ERISA. (At 1505 – emphasis added)

1    As in *Scott*, the misrepresentation made to Pierce concerns a matter unconnected with the

2    administration of a plan.  It concerns a promise and representation with regard to what benefits

3    Pierce would receive if he worked through until the merger was implemented, the receipt of which

4    benefits GBB and WFB "prevented the existence of" by taking the position that Pierce was not

5    entitled to the promised benefits.  Thus, based on the holding in the *Scott* case, Pierce's fraud

6    claims are not preempted here.

7    *Farr v. U.S. West, Inc.,* 58 F.3d 1361 (9th Cir. 1995), also cited by WFB, is another case

8    that supports Pierce, not WFB.  In *Farr* the court held that a fraud claim based on false tax advice

9    was not preempted.  In reaching that conclusion the court noted that four types of state laws are

10    preempted by ERISA, namely: (1) laws that regulate the type of benefits or terms of ERISA plans;

11    (2) laws that create reporting, disclosure, funding, or vesting requirements; (3) laws that provide

12    rules for calculation of the amount of benefits to be paid under ERISA plans; and (4) laws that

13    provide remedies for misconduct growing out of the administration of ERISA plans.  (At 1365 –

14    citing *Martori Bros. Distributors v. James-Massengale*, 781 F.2d 1349, 1356-57 (9th Cir. 1986).)

15    Finding that the fraud claim was based on "misrepresentations . . . independent of the plan," the

16    court held that the fraud claim was not preempted – which is what Pierce asks this Court to find

17    here.

18    *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984) is yet another case relied on by

19    WFB in its Notice of Removal that does not support the proposition for which it is cited, i.e.

20    purportedly that "fraud and breach claims [are] preempted" under the circumstances existing in this

21    case.  Indeed *Blau* does not discuss fraud and breach of contract claims, and the state law claims

22    asserted by the plaintiff in that case are not even identified in the opinion.  (At 1351)  Nor does the

23    opinion discuss preemption of breach of contract and fraud claims – it merely holds that plaintiffs'

24    unspecified state law claims are preempted because – unlike here – a cause of action was expressly

25    asserted under ERISA.  (At 1351, 1356)  Instead the focus of the discussion is whether an ERISA

26    plan administrator engaged in a proper exercise of discretion in refusing to pay benefits.  (At 1352)

27    Also relied on by WFB in the Notice of Removal is *Johnson v. District 2 Marine Engineers*

28    *Beneficial Ass'n,* 857 F.2d 514 (9th Cir. 1988), which WFB cites for the proposition that "ERISA

1    generally preempts claims for intentional infliction of emotional distress."  As the case name

2    indicates, unlike this action by Pierce *Johnson* was also an action *against an ERISA plan*.  Plaintiff

3    asserted claims for "fraud and intentional infliction of emotional distress in the denial of benefits by

4    the Plan," because the administrators modified the plan to eliminate benefits to which plaintiff was

5    formerly entitled.  (At 515, 517)  Finding that these claims "clearly state common-law claims for

6    enforcement of plan benefits," the court held that they were preempted.  Thus, once again the facts

7    bear no comparison to those existing here, since Pierce is not suing a *plan* for "*plan benefits*."

8         Finally, WFB also relies on *Stiltner v. Beretta,* 74 F.3d 1473 (4th Cir. 1996)[16] for the

9    proposition that it "cit[es] cases holding that ERISA preempts intentional infliction claims."  That

10   case was one in which plaintiff expressly asserted claims under ERISA against a *plan*, so again the

11   facts bear no comparison to the facts of this case, and the cited reference is wholly irrelevant.

12        Under the circumstances, Pierce's misrepresentation claims are not preempted by ERISA.

13   **B.    This Case Must Be Remanded Because The Court Lacks Jurisdiction.**

14        Where a federal court lacks jurisdiction, as here, the case must be remanded to the superior

15   court with jurisdiction.  28 USC § 1447(c); Schwarzer, Tashima & Wagstaffe, *Federal Civil*

16   *Procedure Before Trial*, §§ 2:1084, 2:1099 (TRG 2008).  When faced with a removal motion, the

17   removing defendant is required to prove by a preponderance of the evidence that federal

18   jurisdiction exists.  *Id.,* § 2:1093; *Harris v. Provident Life and Accident Co.,* 26 F.3d 930, 932 (9th

19   Cir. 1994).  In this adjudication the allegations of the complaint must be taken as true, because the

20   plaintiff is "the master of her complaint."  *Gugielmino v. McKee Foods Corp.*, 506 F.3d 696, 700

21   (9th Cir. 2007); Schwarzer, et al., *supra.,* § 2:1095.5.  And in the Ninth Circuit, courts apply a

22   strong presumption against removal jurisdiction.  *Emrich v. Touche Ross & Co.,* 846 F.2d 1190,

23   1195 (9th Cir. 1988).

24        Since there is no federal jurisdiction with respect to Pierce's claims, for the reasons

25   discussed above, this action must be remanded to state court.  Moreover, costs (including attorney

26   fees) should be granted to Pierce based on the fact that this case was "improperly removed" to

27   _____

28   [16].  Cited by WFB as *Stiltner v. Berretta,* 1996 WL 42225 (4th Cir. 1996).

1  federal court.  28 USC § 1447(c).

2          **C.      Pierce Is Entitled To Recover His Costs, Including Reasonable Attorney's Fees.**

3          On granting a motion to remand, the Court may order WFB to pay Pierce's "just costs and

4  actual expenses, including attorney fees, incurred as a result of the removal."  28 USC § 1447(c).

5  The statutory purpose of such an expense award is to deter the possibility of abuse, unnecessary

6  expense and harassment if a defendant removes improperly.  Schwarzer, Tashima & Wagstaffe,

7  *supra*., § 2:1109 (citing *Circle Industries USA Inc. v. Parke Constr. Group, Inc.,* 183 F.3d 105, 109

8  (2nd Cir. 1999).)  In deciding whether an award is "just" under section 1447(c), the key factor is the

9  *propriety* of the removal.  Schwarzer et al, *supra*, § 2:1110.  Thus, an award is proper where

10  removal was simply wrong as a matter of law – bad faith in initially removing the case is not

11  required.  *Ansley v. Ameriquest Mortgage, Co.,* 340 F.3d 858, 864 (9th Cir. 2003).  And

12  unnecessarily forcing a plaintiff to "navigate[-] a judicial obstacle course," and have his claims

13  "held hostage in federal court" are factors that favor the making of an award.  *Marriage of Nasca v.*

14  *Peoplesoft,* 87 F.Supp.2d 967, *supra*, at 975.

15          Here WFB has improperly removed this action as a key component of a "scorched earth"

16  litigation strategy in which WFB hopes that its strength and financial muscle and access to high-

17  powered lawyers (four of whom, in two offices, have been assigned to this case) will by

18  intimidation or financial burden force Pierce to abandon his action.  WFB knows that there are

19  others similarly situated to Pierce who are likely to pursue claims if he prevails,[17] and it is pulling

20  out all the stops to force Pierce to capitulate, and thereby discourage him and other claimants.

21          This action has indeed been improperly removed, in that WFB never had any basis for

22  believing in good faith that Pierce was asserting a cause of action i*n this action* for breach of the

23  Change in Control Program.  Moreover, in attempting to present Pierce's claims as something that

24  they are not, WFB has relied on mischaracterizations of the facts and the law in an effort – far

25  exceeding the bounds of permissible advocacy – to misrepresent to the Court that Pierce is seeking

26  to pursue a claim under the Change in Control Program.

27  _____

28  [17].  Pierce Dec., ¶ 5.

1    A fair reading of the complaint plainly shows that the causes of action pleaded by Pierce

2    assert only state common law claims.  Even if one assumes for the sake of argument that WFB was

3    in any doubt – after reading the complaint – about whether Pierce was intent on asserting a claim

4    under the Change in Control Program, any such doubt was eliminated by other facts known to

5    WFB.  For example, WFB knew at the time of removal that it was in the process of *actually*

6    *considering* an application by Pierce for *benefits under the Change in Control Program* – a

7    circumstance totally inconsistent with any good faith belief that the complaint was intended to

8    include a claim under that program (as is noted above, WFB has promised a response to Pierce's

9    application by May 5, 2008).  Indeed, Pierce's application for benefits dated February 4, 2008 (i.e.

10   the very day on which this action was filed) expressly informed WFB (as designated Plan

11   Committee) that WFB should: [18]

> Please note that this claim is being made under reservation of all
> rights to assert all of the claims that are asserted in the Action.  In
> particular, *it remains my position that independently of my claim*
> *under the Plan I am also entitled to enforce the promises and*
> *representations made to me that even if I elected not to take a*
> *comparable position with WFB I would be entitled to receive benefits*
> *under the Plan*.  (Emphasis added)

In order to ensure that there should be no uncertainty on WFB's part with regard to the

sequence in which Pierce was pursuing his various claims, his application for benefits under the

Change in Control Program also stated, as its very first paragraph, that:

> This letter constitutes my claim for benefits under the Greater Bay
> Bancorp Change in Control Pay Plan. ***This claim is made in addition***
> ***to the claims that I have made in the action entitled*** <u>***Pierce v. Wells***</u>
> <u>***Fargo Bank,***</u> which was filed in the Santa Clara County Superior Court
> under Case No. 108CV104870 (the "Action"). (Emphasis added)

23   Moreover, Pierce had earlier through his counsel also expressly told WFB that the claims

24   asserted in this action were *in addition to* and *separate from* any claim for enforcement of benefits

25   under the Change in Control Program:[19]

26   _____

27   [18].  Pierce Dec., Exhibit "B".

28   [19].  Letter from Stuart Clark to WFB dated January 30, 2008: Declaration of Stuart Clark dated
     April 7, 2008 ("Clark Dec."), Exhibit "A".

> Mr. Pierce believes that he is entitled to receive benefits under the Change in Control Plan. In the alternative Mr. Pierce believes that he is entitled to receive compensation equivalent to the benefits under the plan, based on the bank's breach of an oral agreement that such benefits would be made available, and also on the grounds of promissory estoppel and misrepresentation (among other causes of action).

Further, WFB knew and *acknowledged* that Pierce was asserting claims both under the Change in Control Program *and* based on independent state common law claims, because the bank addressed each of those claims separately and in turn in the letter rejecting Pierce's claims.[20] Indeed, the letter from which the quote in the preceding paragraph is taken was written in response to an inquiry from WFB whether Pierce was intent on pursuing claims *other than* under the Change in Control Program.[21]

For WFB to remove this action against the background of the foregoing facts, and to misrepresent to the Court that Pierce was seeking by this action to enforce benefits *under the Change in Control Program,* was inexcusable as an exercise in a scorched earth litigation strategy, and wrong as a matter of law, and therefore improper under the standards of section 1447(c). And WFB's immediate filing of a motion under Rule 12(b) merely served to emphasize that litigation strategy. Under the circumstances, WFB should be ordered to pay Pierce's expenses, including attorney's fees, incurred as a result of the removal.

The expenses and fees "incurred as a result of the removal" are not limited to those relating to this motion. But for the removal, Pierce would not have to face the expense of defending against WFB's motion to dismiss under Rule 12(b) either. Thus, the expenses recoverable under section 1447(c) should include both the expenses of bringing this motion for remand, and the expenses of opposing the motion to dismiss.

The expenses of bringing this motion are expected to be of the order of $8.800, and the expenses of opposing the motion to dismiss are expected to be of the order of $4,400.[22] Accordingly, Pierce respectfully requests that WFB should be ordered to pay expenses and

---

[20]. Clark Dec., Exhibit "B".
[21]. Letter from WFB to Stuart Clark dated January 28, 2008: Clark Dec., Exhibit "C".
[22]. Clark Dec., ¶¶ 3-5.

1    attorney's fees in the amount of $13,200.

2    **V.    CONCLUSION**

3        By virtue of the foregoing, this Court lacks federal question subject matter jurisdiction, and

4    this case was improperly removed by WFB to this Court.  Accordingly, this action should be

5    remanded to the Superior Court of the County of Santa Clara.  Pierce respectfully requests that the

6    Court should so order, and that such order should include an order requiring WFB to pay expenses

7    to Pierce under 28 USC § 1447(c) in the amount of $13,200.

8

9    Dated:  April 8, 2008                                    CARR & FERRELL *LLP*

10

11                                                  By:  /s/ Stuart C. Clark
12                                                       STUART C. CLARK
                                                         CHRISTINE S. WATSON
13                                                       Attorneys for Plaintiff
                                                         PATRICK PIERCE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STUART C. CLARK (SBN 124152)
clark@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:  (650) 812-3444

Attorneys for Plaintiff
PATRICK PIERCE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PATRICK PIERCE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>WELLS FARGO BANK,<br>and DOES 1 through 20,<br><br>　　　　　　Defendants. | CASE NO. C08-01554 JF (HRL)<br><br>**[PROPOSED] ORDER REMANDING CASE TO THE SANTA CLARA COUNTY SUPERIOR COURT** |

The motion of plaintiff Patrick Pierce ("Pierce") for an order remanding this action to the Santa Clara County Superior Court came on for hearing on June 6, 2008.  Stuart Clark appeared for Pierce, and -------------------------------- appeared for defendant Wells Fargo Bank.

After consideration of the papers filed, and the arguments of counsel, and for good cause shown, the Court finds that it lacks jurisdiction over the state law causes of action asserted in the complaint, and also that those claims are not preempted by ERISA.  Accordingly:

IT IS HEREBY ORDERED THAT:

1. The case is remanded to the Santa Clara County Superior Court; and,

2. Wells Fargo Bank is ordered to pay expenses in the sum of $13,200 to Pierce, within ten (10) days of this order, under 28 USC § 1447(c).

1

2

3    Dated:  June      , 2008

_____
4                                                                JEREMY FOGEL
                                              UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28