STUART C. CLARK (SBN 124152)
clark@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile: (650) 812-3444

Attorneys for Plaintiff
PATRICK PIERCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PATRICK PIERCE,

Plaintiff,

v.

WELLS FARGO BANK, and DOES 1 through 20,

Defendants.

CASE NO. C08-01554 JF (HRL)

**DECLARATION OF PATRICK PIERCE IN SUPPORT OF MOTION OF PATRICK PIERCE FOR REMAND TO THE SUPERIOR COURT FOR THE COUNTY OF SANTA CLARA**

Date: June 6, 2008
Time: 9.00 a.m.
Place: Courtroom 3, 5th Floor
Judge: Hon. Jeremy Fogel

I, PATRICK PIERCE, declare as follows:

1. I am the plaintiff in this action. The facts set forth herein are within my personal knowledge, and if called upon to do so I could and would testify to the truth thereof.

2. I live and work in Santa Clara County. In early 2007 I was employed by Greater Bay Bancorp ("GBB") as a Senior Vice President and Director of Special Assets. I joined GBB in April, 1999 as a Vice President.

3. On or about May 4, 2007, GBB and WFB announced that they had "signed a definitive agreement for the acquisition of Greater Bay Bancorp." Attached as Exhibit "A" is a true copy of the announcement of that merger.

4. At the time that this action was filed on February 4, 2008, I was employed by

defendant Wells Fargo Bank ("WFB") in the temporary position of Loan Adjuster Manager. This was not a position of comparable status to my former position of Senior Vice President and Director of Special Assets. Accordingly, after it became apparent that WFB was unwilling to settle the dispute underlying this action on an amicable basis, and because being required to continue working in a non-comparable position constituted a repudiation by WFB of its promises and representations and contractual obligations, I resigned from WFB on March 24, 2008, with effect from April 4, 2008.

5. At various times subsequent to the announcement of GBB's acquisition by WFB, but before the implementation of the merger on October 1, 2007, GBB and WFB promised and represented to me, and others similarly situated to me, that if I and such others continued to work for GBB through the implementation of the merger with WFB, then I and such others:

(a) would not be forced to take positions with WFB after the merger that they did not want; and,

(b) would be entitled to elect severance benefits under GBB's Change in Control Plan if we elected not to take full time positions with WFB.

6. The promises and representations referred to in the preceding paragraph were made separately by representatives of GBB and WFB respectively, and to my belief gave rise to independent obligations owed to me by both GBB and WFB. However, because GBB has ceased to exist as a separate legal entity following its merger with WFB, WFB as the surviving entity is named as the party liable in place of GBB on the claims on which GBB is alleged to be liable.

7. At the time of the merger announcement GBB had in place a "Change in Control Plan" that was amended and restated as of January 1, 2005 (the "2005 Program"). This program provided for payment of certain severance benefits to GBB employees whose employment was terminated as a result of a change in control, or who were not offered permanent comparable positions. Subsequently, as of June 19, 2007, the 2005 Program was replaced by a modified program entitled the "Greater Bay Bancorp Change in Control Pay Plan 1" (the "2007 Program"). I do not by this action seek to enforce the payment of benefits under either of those programs, however: rather, I am separately pursuing my remedies under the 2005 Program and/or the 2007

Program (hereinafter jointly called the "Change in Control Program"), by pursuing an application for benefits. A copy of my application for benefits is attached as Exhibit "B".

8. The Plan Administrator (i.e. WFB) has promised a response to my application for benefits by no later than May 5, 2008. A copy of the letter containing that promise is attached as Exhibit "C".

9. Acting in reliance on the promises and representations of GBB and WFB, I continued to work for GBB until the effective date of the merger, and did not pursue other employment opportunities, in the expectation that if I elected not to work with WFB after the merger I would receive the promised severance benefits irrespective of whether or not I was technically entitled to such benefits under the applicable Change in Control Program. After I had fulfilled my part of the bargain, however, WFB took the position after the merger that I would not be entitled to benefits under the Change in Control Program if I elected not to take a full time position with WFB. A copy of the letter dated November 8, 2007 from WFB advising me of the bank's position in this regard is attached as Exhibit "D".

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Palo Alto, California, this 7th day of April, 2008.

PATRICK PIERCE




## News Release

**Wells Fargo, Greater Bay Bancorp Agree To Merge**

SAN FRANCISCO — May 4, 2007

Wells Fargo & Company (NYSE: WFC) and Greater Bay Bancorp (NASDAQ: GBBK) have signed a definitive agreement for the acquisition of Greater Bay Bancorp by Wells Fargo in a stock-for-stock merger. The transaction, pending approvals by regulators and Greater Bay Bancorp shareholders, is expected to be completed in the fourth quarter of this year.

Greater Bay Bancorp, based in East Palo Alto, Calif., has $7.4 billion in assets, more than 1,800 employees, and serves consumers and businesses from 41 banking locations in and around the San Francisco Bay Area under names such as Mid-Peninsula Bank, Bank of Petaluma, Golden Gate Bank, Coast Commercial Bank, Peninsula Bank of Commerce, Mount Diablo National Bank, and Santa Clara Valley National Bank. Greater Bay Bancorp also owns ABD Insurance and Financial Services, the nation's 15th largest retail insurance broker with locations throughout the west coast, and Matsco Financial Corporation, a national specialty lender primarily to veterinarians and dentists.

Under terms of the merger agreement, Greater Bay Bancorp's shareholders will receive shares of Wells Fargo common stock for their shares of Greater Bay Bancorp common stock based on a Wells Fargo measurement price. The Wells Fargo measurement price will equal the daily volume weighted average price of a share of Wells Fargo common stock for each of the ten (10) consecutive trading days ending on the trading day immediately prior to the Greater Bay Bancorp shareholder meeting to approve the transaction.

If the Wells Fargo measurement price is greater than $32.175 and less than $39.325, the exchange ratio will be determined by dividing $28.50 by the measurement price. If the Wells Fargo measurement price is equal to or less than $32.175, then the exchange ratio will be 0.8858. If the Wells Fargo measurement price is greater than or equal to $39.325, then the exchange ratio will be 0.7247. Assuming a Wells Fargo measurement price between $32.175 and $39.325, the total value of the transaction would be approximately $1.5 billion, based on Greater Bay Bancorp's shares on a fully diluted basis.

In connection with the merger agreement, Greater Bay Bancorp has granted Wells Fargo a customary 19.9 percent stock option.

"We are genuinely pleased and proud to be joining the Wells Fargo organization – one that is very much in alignment with our culture and values. Having fulfilled the immediate strategic and operating objectives that we have been pursuing in each of our major business activities over the past three years, we undertook a thoughtful review of our potential options for the future and determined with conviction that this path is clearly in the best long-term interest of our shareholders, our clients, our employees, and the communities that we serve," said President and CEO of Greater Bay Bancorp Byron A. Scordelis. "Wells Fargo believes in all four of our operating businesses – regional community banking, commercial insurance brokerage, specialty finance, and trust – and is fully committed to growth and investment in each of these areas."

"Greater Bay Bancorp is an exceptional organization that shares our belief in the benefits of having a diversified business model to satisfy all the financial needs of our customers and the commitment to support our communities with human, social and financial capital," said Wells Fargo President and COO John Stumpf. "Together with a combined market share of 20.6% in the Greater San Francisco Bay Area Region, an enhanced distribution network and a broader array of products to offer Greater Bay Bancorp customers, we look forward to partnering with Greater Bay Bancorp's team members to continue to strive to be the premier provider of financial services in every community in which we do business."

"The customers and cultures of our two companies are remarkably similar. Greater Bay Bancorp and Wells Fargo



share a commitment to people as a competitive advantage. We look forward to combining our resources and tapping into the talent at Greater Bay Bancorp to fulfill employment opportunities at Wells Fargo," said Bob Worth, executive vice president and head of California Business Banking for Wells Fargo.

"We look forward to welcoming ABD's more than 700 team members to Wells Fargo Insurance Services, Inc. (WFIS)," said Dave Zuercher, Chairman & CEO of WFIS. "ABD's specialized products and exceptional service will increase our presence in the West and add important offerings to our nationwide business." Wells Fargo Insurance Services is now the nation's 5th largest insurance broker and the largest bank owned insurance brokerage.

Wells Fargo & Company is a diversified financial services company with $486 billion in assets, providing banking, insurance, investments, mortgage and consumer finance through more than 6,000 stores and the internet (wellsfargo.com) across North America and internationally. Wells Fargo Bank, N.A. is the only bank in the U.S., and one of only two banks worldwide, to have the highest credit rating from both Moody's Investors Service, "Aaa," and Standard & Poor's Ratings Services, "AAA."

**FORWARD-LOOKING STATEMENTS**

This news release has forward-looking statements about the proposed transaction between Wells Fargo and Greater Bay Bancorp. There are several factors – many beyond Wells Fargo's and Greater Bay Bancorp's control – that could cause actual results to differ significantly from expectations described in the forward-looking statements. For a discussion of some of these factors, refer to Wells Fargo's and Greater Bay Bancorp's reports filed with the SEC. The transaction is subject to regulatory approval, and Wells Fargo and Greater Bay Bancorp cannot be certain when or if or on what terms and conditions required regulatory approvals will be granted. Divestitures may be required for regulatory approval. This news release is not an offer of any securities for sale.

**MORE INFORMATION ABOUT THE MERGER AND WHERE TO FIND IT**

The proposed merger will be submitted to Greater Bay Bancorp's shareholders for their consideration. Wells Fargo will file a registration statement with the Securities and Exchange Commission (SEC), which will include a proxy statement-prospectus describing the merger. Wells Fargo and Greater Bay Bancorp may file other relevant materials concerning the merger with the SEC. Shareholders of Greater Bay Bancorp and other investors are urged to read the registration statement and proxy statement-prospectus (and any amendments or supplements to those documents) when they become available, as well as other relevant documents filed with the SEC, because they will contain important information. When filed with the SEC, the registration statement and proxy statement-prospectus will be available free on the SEC's website (http://www.sec.gov). In addition, Wells Fargo and Greater Bay Bancorp will provide free copies of the proxy statement-prospectus, and any SEC filings incorporated by reference into that document, upon request as follows:

Wells Fargo & Company, Attention Corporate Secretary, MAC N9305-173, Sixth and Marquette, Minneapolis, Minnesota 55479, (612) 667-8655. Greater Bay Bancorp, Attention Corporate Secretary, 1900 University Ave., Sixth Floor, East Palo Alto, California 94303. (650) 838-6109.

Wells Fargo and Greater Bay Bancorp and their respective directors and executive officers may be deemed to be participants in the solicitation of proxies from Greater Bay Bancorp shareholders in connection with the proposed merger. Information about Wells Fargo's directors and executive officers and their ownership of Wells Fargo common stock is set forth in the definitive proxy statement for Wells Fargo's 2007 annual meeting of stockholders, as filed by Wells Fargo with the SEC on Schedule 14A on March 17, 2007. Information about Greater Bay Bancorp's directors and executive officers and their ownership of Greater Bay Bancorp common stock is set forth in the definitive proxy statement for Greater Bay Bancorp's 2007 annual meeting of shareholders, as filed by Greater Bay Bancorp with the SEC on Schedule 14A on April 20, 2007. The proxy statement-prospectus for the proposed merger will provide more information about participants in the solicitation of proxies from Greater Bay Bancorp shareholders.

###

© 1999 - 2008 Wells Fargo. All rights reserved.

February 4, 2008

Plan Committee
Greater Bay Bancorp
1900 University Avenue, Suite 600
East Palo Alto, CA 94303

Claim under Greater Bay Bancorp Change in Control Pay Plan

Dear Plan Committee Members:

This letter constitutes my claim for benefits under the Greater Bay Bancorp Change in Control Pay Plan. This claim is made in addition to the claims that I have made in the action entitled Pierce v. Wells Fargo Bank, which was filed in the Santa Clara County Superior Court under Case No. 108CV104870 (the "Action").

This claim is made under the Greater Bay Bancorp Change in Control Pay Plan II (the "Plan") as it existed prior to June 19, 2007 (the "Original Plan"), or alternatively under the Greater Bay Bancorp Change in Control Pay Plan II as amended on that date (the "Amended Plan"). In this regard it is my position that by amending the Plan Greater Bay Bancorp ("GBB") breached a covenant of good faith and fair dealing implied in the Plan, namely that the amendment right would not be exercised in such a way as to limit or eliminate benefits under the Plan merely for the purposes of benefiting a third party, in this instance Wells Fargo Bank ("WFB"). Accordingly, to the extent that the effect of the amendment was to deprive me and others similarly situated of vested benefits, compensation equivalent to any such deprivation is payable under the Original Plan for breach of the covenant of good faith and fair dealing.

The Original Plan provides that I am entitled to a "Base Benefit" if terminated as a result of a Change in Control and, among other things, I am not "offered employment by the successor employer in the same position or in another position of comparable pay and status to the position [I] held immediately prior to the effective date of the Change in Control." A "position of comparable pay and status" is defined to include, among other things, one that has a similar scope of duties and responsibilities and does not require an increase in commute distance to more than 35 miles each way.

The Amended Plan greatly reduced the requirements for a position being considered a comparable position. As noted above, I believe that this change breached the implied covenant of good faith and fair dealing. Nevertheless, I also believe that even based on the Amended Plan I am still entitled to benefits.

{00284486v1}

EXHIBIT B

Prior to the effective date of the Change in Control, I held the position of Senior Vice President and Director of Special Assets in GBB's Cowper Street branch in Palo Alto. This position is one in which I had an expectation of being employed indefinitely, subject to possible future promotions. My employment in that position was terminated with effect from the effective date of the Change in Control. I was offered a temporary position at WFB through February 28, 2008 as a Loan Adjustment Manager 3.

I do not believe that my temporary position as a Loan Adjustment Manager 3 is a "position of comparable pay and status" to my former position as Senior Vice President and Director of Special Assets at GBB. Nor is it a "comparable position" under the other criteria of the definitions of that term. Therefore, I am entitled to benefits under the Original and/or the Amended Plan. The purpose of this letter is to apply for such benefits.

If any application form or other documentation is required in addition to this letter for purposes of making application for benefits, please let me know, and I will supplement my application.

Please note that this claim is being made under reservation of all rights to assert all of the claims that are asserted in the Action. In particular, it remains my position that independently of my claim under the Plan I am also entitled to enforce the promises and representations made to me that even if I elected not to take a comparable position with WFB I would be entitled to receive benefits under the Plan.

I look forward to receiving your confirmation that I will receive benefits under the Plan, and I also look forward to hearing your suggestions with regard to the timing and mechanics of paying those benefits.

Sincerely,

Patrick Pierce

cc. Cara A Sheean, Esq., Senior Counsel, Wells Fargo Bank
Stuart C. Clark, Esq.




March 6, 2008

Patrick Pierce
5182 Emiline Drive
San Jose, CA 95124

RE: Greater Bay Bancorp Change in Control Pay Plan II Claim – Receipt Acknowledgment

Dear Patrick:

The purpose of this letter is to acknowledge receipt on February 5, 2008 of your claim for benefits under the Greater Bay Bancorp Change in Control Pay Plan II ("CIC Plan II"). The Board of Directors of Greater Bay Bancorp delegated the "Committee's" (as defined in CIC Plan II) plan administrative responsibilities to Wells Fargo & Company's Executive Vice President and Director of Human Resources (the "Plan Administrator") and authorized the Executive Vice President and Director of Human Resources to further delegate any of the responsibilities of the Committee to such other persons as he/she considers appropriate. The Executive Vice President and Director of Human Resources has delegated the claims review responsibility to Wells Fargo's Corporate Employee Relations Department. The Board of Directors of Greater Bay Bancorp made a similar delegation for purposes of the Greater Bay Bancorp Change in Control Pay Plan I ("CIC Plan I").

An Employee Relations Consultant will review your claim and respond to your claim in writing no later than May 5, 2008.

Sincerely,

Corporate Employee Relations, for the Plan Administrator

EXHIBIT C



California Business Banking Group
MAC A0103-056
Post Office Box 7675
San Francisco, CA 94120-9378

November 8, 2007

Patrick Pierce
430 Cowper Street
Palo Alto, CA 94301

Dear Pat:

I understand that you received a letter from Jeanette Mebane dated November 1, 2007 confirming your position of Loan Adjustment Manager 3 with Wells Fargo. It is my understanding that you do not want to continue your employment with Wells Fargo beyond a transition period. I want to take an opportunity to explain the impact of this decision so that you understand the situation as you consider your options.

The Greater Bay Bancorp Change in Control Pay Plan I (the "Change in Control Plan") provides severance benefits if, during the one year period following a Change in Control, your employment is terminated by Wells Fargo or Wells Fargo does not provide you a Comparable Position. The Change in Control Plan defines Comparable Position but it is my understanding that it generally means a position that provides you the same base salary rate as you had prior to the Change in Control and is based in a location that does not require to increase your commute by more than 35 miles each way. The Loan Adjuster 4 position described in my November 1st letter meets these criteria, and the Change in Control Plan does not give you the flexibility to decide whether you want to continue your employment performing the job duties of a Comparable Position or terminate your employment and receive Change in Control Plan severance pay and benefits.

The November 1st letter stated that, based on your decision not to accept the Loan Adjustment Manager 3 position, you would be working through February 28, 2008 and then you would be in a non-working status through March 31, 2008. I want to clarify that if you choose to voluntarily resign, we would appreciate the opportunity to work out a mutually agreeable departure date, but you are not required to work through a specific date and you will not be in a non-working status. And although the letter doesn't specifically mention severance benefits, I want to make sure you fully understand the situation.



Pat, I sincerely hope you will consider continued employment with Wells Fargo. Wells Fargo considers you and all of our new Greater Bay team members to be key contributors to our success. If you have any further questions, please feel free to contact me at (702) 952-7613 or Kathy Spes at (650) 838-6158.

Sincerely,

Kathy Kroll
Human Resources Manager