STUART C. CLARK (SBN 124152)
clark@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:  (650) 812-3444

Attorneys for Plaintiff
PATRICK PIERCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICK PIERCE,<br><br>        Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK,<br>and DOES 1 through 20,<br><br>        Defendants. | CASE NO. C08-01554 JF (HRL)<br><br>**DECLARATION OF STUART CLARK IN SUPPORT OF MOTION OF PATRICK PIERCE FOR REMAND TO THE SUPERIOR COURT FOR THE COUNTY OF SANTA CLARA**<br><br>Date:    June 6, 2008<br>Time:   9.00 a.m.<br>Place:   Courtroom 3, 5th Floor<br>Judge:  Hon. Jeremy Fogel |

I, STUART CLARK, declare as follows:

1. I am an attorney admitted to all the courts of the State of California, and to this Court. I am a partner in the firm of Carr & Ferrell LLP, the attorneys of record for plaintiff Patrick Pierce. I am one of the attorneys with principal responsibility for the conduct of this case on behalf of plaintiff. The facts set forth herein are within my personal knowledge, and if called upon to do so I could and would testify to the truth thereof.

2. Attached, bearing the indicated exhibit letters, are true copies of the following documents that I have in my possession as part of my regularly maintained files in this matter:

{00301953v1}     -1-
Declaration of Stuart Clark in Support of Motion of Patrick Pierce for Remand to the
Superior Court for the County of Santa Clara (Case No. C08-01554 JF (HRL))

| Exhibit | Description |
|---|---|
| A. | Letter from Stuart Clark to Carla Sheean dated January 30, 2008. |
| B. | Letter from Carla Sheean to Stuart Clark dated January 10, 2008. |
| C. | Letter from Carla Sheean to Stuart Clark dated January 28, 2008. |
| D. | Letter from Stuart Clark to Carla Sheean dated January 18, 2008. |

3. I was admitted to the California Bar in 1986, and prior to that I engaged in the practice of an attorney outside of the United States for 14 years. My billing rate for this matter is $400 an hour, which I believe to be reasonable based on the nature of my civil litigation practice and the billing rates generally in the greater San Francisco Bay Area for the kind of work I do.

4. I spent in excess of twelve hours in reviewing the Notice of Removal and the cases relied on by Wells Fargo Bank ("WFB") as set out in that notice, and in drafting the motion for removal and supporting declarations, and in doing related legal research. I expect to spend at least another six hours in reviewing WFB's expected opposition to the motion, and in drafting a reply brief. In addition, I expect to spend a further four hours in preparing argument for the hearing on June 6, 2008, in attending the hearing, and in traveling to and from the hearing. This amounts to 22 hours in aggregate, which translates to attorney fees of $8,800.

5. I spent approximately two hours in reviewing WFB's motion to dismiss, in communicating with my client about the motion, and in preliminary legal research into issues presented by the motion. I expect to spend at least another eight hours in drafting the opposition to the motion, plus a further hour in preparing argument for the hearing on June 6, 2008. This amounts to 11 hours in aggregate, which translates to attorney fees of $4,400.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Palo Alto, California, this 7th day of April, 2008.

/s/ Stuart Clark
STUART CLARK

# CARR & FERRELL LLP
### ATTORNEYS AT LAW

WRITER'S DIRECT DIAL NUMBER
(650) 812-3415

January 30, 2008

**By Email and U. S. Mail**

Cara A. Sheean, Esq.
Senior Counsel
Law Department
MAC A0194-271
Wells Fargo Bank
45 Fremont Street, 27th Floor
San Francisco, CA  94105-2213
Email: sheean@wellsfargo.com

<u>Patrick Pierce v. Wells Fargo Bank</u>

Dear Ms. Sheean:

    Thank you for your letter of January 28, 2008.

    I am somewhat puzzled by your letter, because it was not my impression that Wells Fargo Bank had rejected a claim for benefits under the Change in Control Plan but might be willing to settle for similar or equivalent benefits under some other theory of liability. However, since your letter seems to contemplate such a possibility, I am happy to provide this further clarification.

    Mr. Pierce believes that he is entitled to receive benefits under the Change in Control Plan. In the alternative Mr. Pierce believes that he is entitled to receive compensation equivalent to the benefits under the plan, based on the bank's breach of an oral agreement that such benefits would be made available, and also on the grounds of promissory estoppel and misrepresentation (among other causes of action). As I noted in my letter of December 19, 2007 to Mr. Strother:

> it appears that WFB may be taking the position that Mr. Pierce is not technically entitled to receive a Change in Control Package. Whether or not that is the case is not a matter that we need to address at this time, however, because WFB and GBB made representations and promises that Mr. Pierce would be entitled to receive a package, and he detrimentally relied on those representations and promises to change his position to his prejudice. Under those circumstances, WFB is liable for any damages that Mr. Pierce may suffer, namely a loss of benefits equivalent to those that accrue to a person entitled to benefits under the Change in Control Package.


EXHIBIT A

Cara A. Sheean, Esq.
January 30, 2008
Page Two

      Under the circumstances, if Wells Fargo Bank is willing to settle with Mr. Pierce based on *any theory of liability*, I respectfully suggest that the bank should present its proposal before the possibility of a prompt, amicable settlement is put at risk by the need to file a lawsuit.

Sincerely,

Stuart C. Clark

cc.    Mr. Patrick Pierce
       R. Michael Momboisse, Esq.

{00285997v1}

**WELLS FARGO**

**Cara A. Sheean**
Senior Counsel

**Law Department**
MAC A0194-271
45 Fremont Street, 27th Floor
San Francisco, CA 94105
415 396-4529
415 977-9351 Fax
sheean@wellsfargo.com

Wells Fargo Bank, N.A.

January 10, 2008

Stuart C. Clark, Esq
R. Michael Momboisse, Esq.
Carr & Ferrell LLP
2200 Geng Road
Palo Alto, California 94303

    Re:    Patrick Pierce

Dear Messrs. Clark and Momboisse:

    Your letters dated December 19, 2007 and November 30, 2007 respectively have been forwarded to me. I have had an opportunity to review the situation involving your client, Patrick Pierce, and your conclusions that (1) Mr. Pierce was "offered" a "Change in Control Package" and (2) Mr. Pierce is entitled to the "Change in Control Package." Wells Fargo disagrees with your conclusions.

    The "Change in Control Package" at the heart of our dispute is the package of benefits provided by the *Greater Bay Bancorp Change in Control Pay Plan I (Amended and Restated Effective September 28, 2007)* (the "Change in Control Plan")[1]. To be eligible for benefits under the Change in Control Plan, an Employee must (1) experience a termination of employment as a result of a Change in Control (or constructively terminated by not being provided a Comparable Position within one year following the Change in Control), (2) the Employee's termination is not for Cause, and (3) the Employee executes a waiver and release. A Comparable Position is a position that provides the Employee a regular base salary that is not less than the Employee's base salary immediately prior to the Change in Control and is based at a work location that would not require the Employee to increase his one-way commute by more than thirty-five miles.

    Wells Fargo has not terminated Mr. Pierce's employment as a result of the Change in Control. Rather, Wells Fargo's letter to Mr. Pierce dated November 1, 2007 confirmed that he has a Comparable Position with Wells Fargo in the Credit Management Group. Mr. Pierce's Wells Fargo job title will be Loan Adjustment Manager 3. His annual base salary will be [Redacted] and his work location will remain in Palo Alto (i.e., the same annual base salary and work location as Mr. Pierce's base salary and work location at Greater Bay Bank on the day immediately prior to the Change in Control). Mr. Pierce does not qualify for benefits under the Change in Control Plan.

    Wells Fargo has not made representations and promises to Mr. Pierce regarding his entitlement to benefits under the Change in Control Plan. You identify a number of points to

---

[1] For purposes of this response, capitalized terms not otherwise defined in this letter shall have the meanings as set forth in the Change in Control Plan.

Page 1 of 4

EXHIBIT B

support your allegations that Wells Fargo "promised" Mr. Pierce benefits under the Change in Control Plan. I will address each of the points in the order presented in Mr. Momboisse's November 30, 2007 letter.

- *Ken Shannon, Executive Vice President of Greater Bay Bancorp, assured Mr. Pierce on June 22, 2007 and on multiple occasions thereafter that Wells Fargo would not force employees to take new positions that they did not want as a result of the change in control.*

  If Mr. Shannon made such assurances, he did not have the authority to do so on behalf of Wells Fargo and he certainly did not do so as a representative of Wells Fargo. Wells Fargo has never made any representations or promises to Mr. Pierce regarding his employment other than to confirm for him that he has a job at Wells Fargo similar to his existing job at Greater Bay Bank. Wells Fargo can't force Mr. Pierce to continue working at Wells Fargo but a voluntary termination of employment would not qualify Mr. Pierce for severance benefits under the Change in Control Plan.

- *On September 10, 2007, Jeanette Mebane met with Mr. Pierce and reiterated Mr. Shannon's statements that Wells Fargo would make Change in Control Packages available to all employees that did not accept new positions, and that Wells Fargo would not keep anyone from receiving the Change in Control Package.*

  Your allegation above implies that Ms. Mebane reiterated Mr. Shannon's statements to Mr. Pierce. Is it possible that Mr. Pierce made these statements? Ms. Mebane did not make such statements to Mr. Pierce during this meeting.

  From the first time Mr. Pierce met with his potential Wells Fargo manager, Ms. Mebane, and other members of the Wells Fargo CMG management team (i.e., Mr. Creed and Mr. Copeland) in July 2007, Mr. Pierce was clear in his desire not to want to work for Wells Fargo. In the September 10, 2007 meeting, Ms. Mebane informed Mr. Pierce that Wells Fargo's CMG team was very interested in Mr. Pierce's Specialty Asset team. Mr. Pierce again stated that he was not interested in working for Wells Fargo but added that he had had discussions with Mr. Shannon and would probably stay until at least Christmas and possibly through the bank conversion (scheduled for March 2008). Mr. Pierce also expressly told Ms. Mebane that he was looking for a package. Ms. Mebane told Mr. Pierce that she was not privy to details surrounding severance packages and that Mr. Pierce would have to discuss with Human Resources.

- *On November 1, 2007, Ms. Mebane delivered letters to some Greater Bay Bancorp employees, including Mr. Pierce, regarding potential employment with Wells Fargo. Ms. Mebane assured Mr. Pierce that the letters would not deny anyone the option to elect the Change in Control Package.*

  As referenced above, Ms. Mebane delivered a letter dated November 1, 2007 to Mr. Pierce (and others) confirming the terms of his position with Wells Fargo. Mr. Pierce raised concerns about Wells Fargo not honoring their purported agreement to provide the Change in Control Package. Ms. Mebane immediately reiterated to Mr. Pierce that she

Page 2 of 4

had no knowledge of the package. Ms. Mebane told Mr. Pierce that the letter was confirmation that he and his colleagues had jobs with Wells Fargo.

- *Based on the repeated assurances given Mr. Pierce regarding the nature of his continued employment with the bank and his rights relative to the promised Change in Control Package, Mr. Pierce did not seek alternative employment and in fact consciously elected not to pursue several attractive employment opportunities which became available to him.*

    There were no "repeated assurances" given to Mr. Pierce as suggested above. Since the first meeting between Mr. Pierce and the Wells Fargo CMG management team, the message consistently delivered to Mr. Pierce has been that he has a position at Wells Fargo and they (the CMG management team) have no knowledge of the severance package. Wells Fargo never "promised" the Change in Control Package to Mr. Pierce. If Mr. Pierce chose to forego other employment opportunities, he did so knowing that he had an ongoing position at Wells Fargo.

- *At no time did Mr. Pierce receive a formal offer of continued employment consistent with the bank's change of control plan; having been informally offered a temporary position on terms clearly designed to attempt to avoid the bank's obligations under this program.*

    The specific terms of Mr. Pierce's Wells Fargo position was confirmed in the letter dated November 1, 2007. However, as noted above, Mr. Pierce was clear in his desire to not work for Wells Fargo from his first meeting with the CMG management team but he subsequently agreed that he would work through the bank conversion. Trying to be sensitive to the fact that she and Mr. Pierce had previously discussed his decision to leave Wells Fargo following the bank conversion, Ms. Mebane clearly outlined the timeline in her November 1, 2007 letter. It was not Wells Fargo's intent or desire that Mr. Pierce's employment be temporary. This was – and always has been - Mr. Pierce's clear intent and express desire.

Mr. Clark's letter dated December 10, 2007 indicates Mr. Pierce's belief that others similarly situated to him received Change in Control Packages consistent with the alleged promises made by Wells Fargo. Mr. Clark's letter does not provide names so I can only assume that Mr. Pierce is jumping to the conclusion that these individuals had Comparable Positions at Wells Fargo. There may have been individuals who were as vociferous as Mr. Pierce in their desire not to work for Wells Fargo but these individuals were probably offered benefits under the Change in Control Plan because Wells Fargo did not have an ongoing position for them. Wells Fargo's CMG team has positions for Mr. Pierce and his entire team. However, not every Wells Fargo business group has been able to accommodate all of the Greater Bay employees in their business units. In evaluating which Greater Bay employees they needed going forward, some Wells Fargo managers may have considered the preferences of the Greater Bay employees along with other factors such as skills and experience. However, without knowing who Mr. Pierce is referring to, I cannot give any more explanation at this time.

        Wells Fargo did not promise Mr. Pierce severance benefits under the Change in Control Plan. Since August of 2007, the message from Wells Fargo to Mr. Pierce and his team has been that they have ongoing positions at Wells Fargo. This was confirmed for Mr. Pierce in the letter dated November 2007 from his Wells Fargo manager, Ms. Mebane. Mr. Pierce's Wells Fargo position is a Comparable Positions as defined by the Change in Control Plan so he is not entitled to severance benefits under the Change in Control Plan.

                                                        Sincerely,

                                                        Cara A. Sheean

cc:      Jeanette Mebane
          Robert Creed
          Sid Copeland

**WELLS FARGO**

Cara A. Sheean
Senior Counsel

Law Department
MAC A0194-271
45 Fremont Street, 27th Floor
San Francisco, CA 94105
415 396-4529
415 977-9351 Fax
sheean@wellsfargo.com

Wells Fargo Bank, N.A.

January 28, 2008

**Via Email and U.S. Mail**

Stuart C. Clark
Carr & Ferrell LLP
Attorneys at Law
2200 Geng Road
Palo Alto, CA 94303

Re:   Patrick Pierce

Dear Mr. Clark:

In your letter dated January 18, 2008, you asked me to advise you whether Wells Fargo is willing to settle the dispute with Mr. Pierce. Your initial demand was for severance benefits under the *Greater Bay Bancorp Change in Control Pay Plan I (Amended and Restated Effective September 28, 2007)* (the "Plan"). If this continues to be your demand, then I must advise you that Wells Fargo's position as set forth in my letter to you dated January 10, 2008 has not changed. If, however, you have a new demand, please communicate it to me so that I may discuss with my clients.

Sincerely,

Cara A. Sheean

cc:   Jeanette Mebane
      Robert Creed
      Sid Copeland

EXHIBIT C

# CARR & FERRELL LLP
## ATTORNEYS AT LAW

January 18, 2008

WRITER'S DIRECT DIAL NUMBER
(650) 812-3415

<u>By Email and U. S. Mail</u>

Cara A. Sheehan, Esq.
Senior Counsel
Law Department
MAC A0194-271
Wells Fargo Bank
45 Fremont Street
San Francisco, CA 94105

<u>Patrick Pierce v. Wells Fargo Bank</u>

Dear Ms. Sheehan:

Thank you for your letter of January 10, 2008.

Unfortunately it appears that we have a fundamental disagreement with regard to the promises and representations that were made to Mr. Pierce and others similarly situated to him.

While Mr. Pierce would rather settle this dispute without the need for litigation, given the bank's adamant position that no liability arose as a result of any promise or representation made to Mr. Pierce, it appears that there is no point in further exploring the possibility of settlement. If you disagree with my conclusion, and the bank is willing to negotiate a settlement, then please let me know as soon as possible.

Unless you advise me that the bank is willing to settle, I will assume that Mr. Pierce will need to seek a resolution through the courts, and he will proceed accordingly.

Sincerely,

Stuart C. Clark

cc:   Mr. Patrick Pierce
      R. Michael Momboisse, Esq.

---

{00283529v1}

2200 GENG ROAD, PALO ALTO, CALIFORNIA 94303
TELEPHONE (650) 812-3400, FACSIMILE (650) 812-3444



EXHIBIT __D__