1  STUART C. CLARK (SBN 124152)
   clark@carrferrell.com
2  CHRISTINE S. WATSON (SBN 218006)
   cwatson@carrferrell.com
3  CARR & FERRELL *LLP*
   2200 Geng Road
4  Palo Alto, California 94303
   Telephone: (650) 812-3400
5  Facsimile: (650) 812-3444

6  Attorneys for Plaintiff
   PATRICK PIERCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICK PIERCE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WELLS FARGO BANK,<br>and DOES 1 through 20,<br><br>　　　　　Defendants. | CASE NO. C08-01554 JF (HRL)<br><br>**OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:　　June 27, 2008<br>Time:　　9.00 a.m.<br>Place:　　Courtroom 3, 5th Floor<br>Judge:　　Hon. Jeremy Fogel |

{00316204v1}

Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Pursuant to FRCP 12(B)(6)
(Case No. C08-01554 JF (HRL))

# TABLE OF CONTENTS

I. **INTRODUCTION** ..................................................................................................... 1

II. **OBJECTIONS TO EVIDENCE** ............................................................................... 1

III. **FACTS** .......................................................................................................................... 2

    A. **Pierce Does Not By This Action Seek To Enforce A Change In Control Plan.** ................................................................................................. 2

    B. **This Action Is Based On Express, Independent Promises And Representations That Severance Benefits Could Be Elected By Pierce.** ............................................................................................................ 3

    C. **WFB Has Mischaracterized The Basis Of Pierce's Claims.** ...................... 4

IV. **ARGUMENT** ............................................................................................................... 5

    A. **Pierce's Claims Are Properly Pleaded And Not Preempted By ERISA.** ............................................................................................................ 5

        1. *Pierce's Claims Properly Plead State Law Causes Of Action.* ................... 6

        2. *Pierce's Claims Are Not Preempted Because The Change In Control Plan Is Not An ERISA Plan.* ............................................................ 8

        3. *Pierce's Claims Are Not Preempted Because They Do Not Relate To An ERISA Plan.* ...................................................................... 10

        4. *None Of The Authorities Relied On My WFB Support Dismissal.* ........ 13

    B. **WFB's Exhaustion of Remedies, Oral Amendment, And Other Arguments Are Baseless.** ............................................................................ 15

V. **CONCLUSION** ........................................................................................................ 15

{00316204v1}

-i-

Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Pursuant to FRCP 12(B)(6)
(Case No. C08-01554 JF (HRL))

# TABLE OF AUTHORITIES

**CASES**

*Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030 (9th Cir. 2000)...................................................13

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) ................................6

*Belanger v. Wyman-Gordon Co.,* 71 F.3d 451 (1st Cir. 1995) ..................................................8, 9

*Conley v. Gibson* (1957) 355 US 41, 78 S.Ct. 99 ..........................................................................6

*DeLaCruz v. Tormey,* 582 F.2d 45 (9th Cir. 1978) ........................................................................6

*Farr v. U.S. W. Comms., Inc.*, 151 F.3d 908 (9th Cir. 1998) .......................................................14

*Fort Halifax Packing Co. v. Coyne*, 482 US 1, 107 S.Ct. 2211 (1987) ...............................8, 9, 10

*Metropolitan Life Ins. Co. v. Taylor* (1987) 481 US 58, 107 S.Ct. 1542...............................10, 13

*Miller v. Rite Aid Corp.,* 504 F.3d 1102 (9th Cir. 2007)..................................................11, 12, 15

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998)...........................................................................6

*Pilot Life Ins. Co. v. Dedeaux* (1987) 481 U.S. 41, 107 S.Ct. 1549............................................13

*Rutledge v. Seyfarth, Shaw, Fairwinds,* 201 F.3d 1212 (9th Cir. 2000)..............................13, 14

*Scott v. Gulf Oil,* 754 F.2d 1499 (9th Cir. 1985)..........................................................................14

*SEC v. Cross Fin'l Services, Inc.,* 908 F.Supp. 718 (CD CA 1995) .............................................6

*Shaw v. Delta Airlines, Inc.* (1983) 483 US 85, 103 S.Ct. 2890 .................................................10

*Thurman v. Pfizer, Inc.,* 484 F.3d 855 (6th Cir. 2007)......................................................10, 14, 15

*Toumajian v. Frailey*, 135 F.3d 648 (9th Cir. 1998) ...................................................................10

**STATUTES**

29 USC § 1003(a)..........................................................................................................................10

   § 1132(a) ...................................................................................................................10

   § 1144(a) ...................................................................................................................10

Corporations Code § 1107(c) .........................................................................................................6

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................5, 6

**OTHER AUTHORITIES**

Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial,* § 9:187 (TRG 2008) .................................................................................................................. 6

§ 9:193 .................................................................................................................. 6

§ 9:211 .................................................................................................................. 6

§ 9:215 .................................................................................................................. 6

Witkin, *California Procedure, Pleadings,* § 476 (4th Edition) ........................................ 8

§ 486 .................................................................................................................... 8

§ 668 .................................................................................................................... 8

## I.     INTRODUCTION

Defendant Wells Fargo Bank's ("WFB") motion to dismiss must be denied on multiple grounds, but primarily because the state law claims of plaintiff Patrick Pierce ("Pierce") for breach of an oral agreement, promissory estoppel, and misrepresentation are simply not "ERISA claims in disguise and therefore preempted," as WFB alleges. Motion, 12:16-17. WFB's contrived ERISA-based argument dissolves when the *actually pleaded allegations of the complaint* are taken into consideration, rather than WFB's fanciful mischaracterizations of those allegations.

It will be apparent to a careful reader that none of the state law claims seek *to enforce payment of benefits under any ERISA plan*. Rather, what Pierce seeks is compensation *in contract damages* and *tort damages,* and *equitable compensation*, for WFB's *failure to fulfill its promises and representations* that Pierce would receive certain enumerated benefits when WFB acquired his employer, Greater Bay Bancorp ("GBB"). Thus, Pierce does not seek to enforce payment of benefits under any ERISA plan providing severance benefits, but rather to compel *substitute performance* given WFB's failure to fulfill its promises and representations that such benefits would be forthcoming *from whatever source*. That the value of the substitute performance may be measurable with reference to benefits that have been denied to Pierce under what may be an ERISA plan obviously does not cause his claims to be for the enforcement of benefits *under such a plan*, as WFB wrongly asserts.

Under the circumstances, Pierce's claims are properly pleaded as state law claims, and are not preempted by ERISA. Consequently, WFB's motion to dismiss must be denied, and this action should be remanded to state court

## II.     OBJECTIONS TO EVIDENCE

WFB impermissibly attempts to introduce extrinsic evidence in support of its motion, in the form of the declaration of its attorney Greg Richardson. Pierce objects to the admission of this declaration, and to the admission of all allegations in the motion that are purportedly supported by that declaration, and asks that they be stricken, for the reasons stated in the objection submitted herewith.

## III.  <u>FACTS</u>

A careful and fair reading of the complaint reveals there is a fundamental difference between what is alleged in the complaint and WFB's characterization of what is alleged in the complaint. Each of the causes of action pleaded seeks to enforce obligations *outside of* the change in control plan that is referred to merely as part of the background history in Pierce's complaint. If Pierce had intended to allege a breach of the change in control plan he would have done so in his First and Second Causes of Action. He did not do so. Instead he alleged a breach of an *oral* agreement based on promises made in June and September, 2007. Complaint, ¶¶ 7, 14,-18, and 20-23. Neither of those causes of action – nor any other cause of action – seeks to enforce obligations *under a change in control plan* that might arguably be an ERISA plan.

In his motion to remand this action to state court Pierce set out a detailed recitation of the background facts.[1] Since that motion is to be heard at the same time as WFB's motion to dismiss, Pierce will not burden the record by repeating that factual recitation. However, Pierce respectfully requests that the factual recitation in that motion should be deemed to be incorporated in this opposition by this reference. Accordingly, the factual summary which follows will repeat facts previously included in the motion to remand only as necessary for the purposes of this opposition.

**A.    Pierce Does Not By This Action Seek To Enforce A Change In Control Plan.**

Despite WFB's mischaracterizations to the contrary, Pierce clearly does not by this action seek to enforce benefits under any change in control plan. Pierce is aware of the obligation to exhaust his remedies as a precondition to suing to enforce the terms of any change in control plan – and he is in the process of separately doing just that.[2] Despite the fact that exhausting his remedies is an exercise in futility – given that WFB had already announced back in November, 2007 that it will cause the plan administrators to deny Pierce's claim[3] – Pierce is going through the motions nevertheless. So is WFB, which through its appointee as plan administrator formally caused the

---

[1].  Motion of Patrick Pierce to Remand To The Superior Court For The County of Santa Clara, filed April 8, 2008 (the "Motion to Remand"), at 2:7- 7:11.
[2].  Declaration of Patrick Pierce dated April 7, 2008, filed in support of the Motion to Remand ("Remand Pierce Dec."), ¶ 7, and Exhibit "B".
[3].  Pierce Remand Dec., ¶ 9 and Exhibit "D".

claim for benefits under the plan to be denied by letter dated April 24, 2008.[4]  In this ritual dance WFB is clearly not acting in good faith: given WFB's already communicated November, 2007 decision to deny benefits under the plan, and since WFB forced Pierce wait to almost the maximum 90 days before formally denying his claim, and is now forcing him to go through the procedure to review that denial, WFB is simply engaged in stonewalling to delay Pierce's right to sue to enforce the plan – as it is engaged in stonewalling in this litigation too.

Given WFB's conduct generally it is perhaps not surprising that WFB would misrepresent to the Court that *this action* – rather than the administrative process described in the preceding paragraph – represents Pierce's effort to enforce claims under the change in control plan.  Motion, 1:18-19 ("[E]ach and every claim Plaintiff presents is mispled and needs to be recharacterized as a federal ERISA claim.")  Indeed, WFB goes so far in advancing this misrepresentation that it even makes the argument that the purported claim "under the plan" has been asserted against the wrong party![5]  (The still-pending administrative claim under the plan has been asserted against the Plan Committee, as it is required to be.[6])

**B.     This Action Is Based On Express, Independent Promises And Representations That Severance Benefits Could Be Elected By Pierce.**

This action asserts eight causes of action, each of which is based on the oral promises and representations of GBB and WFB that that if Pierce continued to work for GBB through the implementation of the merger with WFB, then Pierce:

(a)     would not be forced to take a position with WFB after the merger that he did not want; and,

(b)     would be entitled to elect severance benefits under GBB's Change in Control Plan if he elected not to take a full time position with WFB.[7]

These eight causes of action are for: (1) breach by GBB of its oral agreement to pay

---

[4]. Declaration of Stuart Clark dated June 6, 2008, ¶ 2 ("Clark Dec.").  Note that WFB's Employee Relations Consultant signed the letter "On behalf of the Plan Administrator".
[5]. Motion, 1:10-11.
[6]. Clark Dec., ¶ 2.
[7]. Complaint, ¶ 7.

severance benefits under the Change in Control Program; (2) breach by WFB of its oral agreement to pay severance benefits under the Change in Control Program; (3) promissory estoppel, based on GBB's failure to pay promised severance benefits under the Change in Control Program; (4) promissory estoppel, based on WFB's failure to pay promised severance benefits under the Change in Control Program; (5) fraud, based on GBB's false representations that it would pay promised severance benefits under the Change in Control Program; (6) fraud, based on WFB's false representations that it would pay promised severance benefits under the Change in Control Program; (7) negligent misrepresentation, based on GBB's false representations that it would pay promised severance benefits under the Change in Control Program; and (8) negligent misrepresentation, based on WFB's false representations that it would pay promised severance benefits under the Change in Control Program. The claims based on GBB's misconduct are asserted against WFB as the surviving corporation following the merger.

### C. WFB Has Mischaracterized The Basis Of Pierce's Claims.

The false premises upon which WFB's motion to dismiss is based are clearly illustrated by its argument that "each and every claim is mispled and needs to be recharacterized as a federal ERISA claim. But even if mischaracterized, Plaintiff's claims are premature because he has not exhausted his administrative remedies under ERISA." Motion, 1:17-20. By making that argument WFB necessarily *admits that the claims asserted in the complaint are not pleaded in such a way as to assert an ERISA claim,* but *need to be amended to assert an ERISA claim.* Nevertheless, WFB still proceeds to argue in the very next paragraph of its motion that "Plaintiff has brought a slew of state law causes of action . . . seeking severance benefits *under an ERISA plan*." Motion, 1:24-27.

WFB also makes the utterly false representation to the Court that "Plaintiff alleges that he was a participant in a change in control plan *that made him eligible to receive severance benefits.* Motion, 3:7-8. Contrary to WFB's misrepresentation to the Court, the complaint actually alleges that WFB *refused to pay severance benefits* after orally promising to do so. See, e.g. First and Second Causes of Action – Complaint, ¶¶ 16, 22.

It is unclear whether WFB is simply confused or whether it is intent on causing confusion.[8] Either way, WFB has succeeded in confusing what in reality is straightforward and simple, namely that Pierce *does not seek to enforce payment of benefits under an ERISA plan,* but instead *seeks to recover benefits <u>that he was promised would be available to him under a plan but that did not materialize</u>* because the promise was not honored.

Once the obfuscation in WFB's arguments is eliminated, and the actual allegations of the complaint are taken into consideration, rather than WFB's mischaracterizations of those allegations, the fallacy of WFB's positions becomes apparent.

## IV.  ARGUMENT

WFB's motion must be denied because the complaint clearly pleads state law claims that do not seek to enforce an ERISA plan.  Thus, each cause of action states a claim upon which relief may be granted for purposes of Rule 12(b)(6).  Moreover, since the complaint does not seek any relief *under an ERISA plan*, Pierce's claims are not preempted by ERISA, nor are they subject to any obligation to exhaust administrative remedies.  Therefore, the motion to dismiss must be denied.

Given the foregoing, there is no legal nor factual basis for WFB's arguments that the complaint "suffers from two alleged defects," i.e. that Pierce "has no viable claims under either state law or ERISA," and that WFB "is not a proper defendant."  Motion, 6:9-11.  Also baseless are WFB's apparent afterthought arguments that Pierce seeks to assert an oral modification of an ERISA plan (*Id.*, 9:20-11:5), and that he has failed to allege exhaustion of his remedies under a plan.  The fallacy of each of those arguments will be addressed in turn, below.

### A.   Pierce's Claims Are Properly Pleaded And Not Preempted By ERISA.

Rule 12(b)(6) provides for the dismissal, on motion, of a claim on the grounds of "failure to state a claim upon which relief can be granted."  In adjudicating such a motion, the court must treat

---

[8]. This confusion is endemic, and perhaps calculated. In footnote 3, on page 2 of the motion, WFB argues that the claims are "mispled" because GBB is not named as a party, but that causes of action are asserted against GBB. The simple answer, of course, is that after the merger GBB ceased to exist, and a non-existent entity cannot be a party to a lawsuit. Rather, the successor in interest must be named as the party responsible for the obligations of the disappearing entity. That successor in interest is WFB.

the allegations of the complaint as true. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, § 9:215 (TRG 2008). No extrinsic evidence may be introduced, and any alleged defect in the challenged pleading must appear on its face. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 915 (9th Cir. 2001); Schwarzer, *supra*, § 9:211. Thus, the motion may only be used when plaintiff includes allegations in the complaint that, on their face, disclose some absolute defense or bar to recovery. Schwarzer, *supra,* § 9:193.

In adjudicating a Rule 12(b)(6) motion, the Court "must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy." Schwarzer, *Federal Civil Procedure Before Trial,* § 9:187 (TRG 2008). Unless the answer is unequivocally "no," the motion must be denied. *Id.* (citing *Conley v. Gibson* (1957) 355 US 41, 45-46, 78 S.Ct. 99, 102; *DeLaCruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978); *SEC v. Cross Fin'l Services, Inc.,* 908 F.Supp. 718, 726-727 (CD CA 1995)).

### 1. *Pierce's Claims Properly Plead State Law Causes Of Action.*

All of Pierce's causes of action state claims that would entitle him to some form of legal remedy. The key element of all of Pierce's claims is that at various times subsequent to the announcement of GBB's acquisition by WFB, but before implementation of the merger on October 1, 2007, GBB and WFB promised and represented that if Pierce continued to work for GBB through the merger date then he would not be forced to take a position with WFB after the merger that he did not want, and would be entitled to elect severance benefits under GBB's Change in Control Plan if he elected not to take a full time position with WFB. Complaint, § 7.

The promises and representations referred to in the preceding paragraphs were made separately by representatives of GBB and WFB respectively, giving rise to independent obligations by both GBB and WFB.[9] However, because GBB has ceased to exist as a separate legal entity following its merger with WFB, WFB as the surviving entity is named as the party liable in place of GBB on the claims on which GBB is alleged to be liable.[10] Corporations Code § 1107(c).

---

[9]. Complaint, ¶ 8.
[10]. Complaint, ¶¶ 18, 30.

Each of Pierce's claims allege that GBB and WFB made the representations described above with regard to his right to elect severance benefits if he chose not to take a full time position with WFB. The breach of contract causes of action are based on the allegations that:

> The promises and representations referred to in paragraph 7, above, constituted offers by GBB to pay Severance Benefits to Pierce and those similarly situated in the event that he or any of them elected not to remain in the full-time employment of WFB after the merger,

and the further allegation that:

> Pierce accepted the offers referred to in the preceding paragraph, both expressly and by his conduct in continuing to work at GBB through the effective date of the merger.[11]

Similarly, on the promissory estoppel causes of action, Pierce alleges that:

> The promises and representations referred to in paragraph 7, above, constituted promises by GBB to pay Severance Benefits to Pierce and those similarly situated in the event that he or any of them elected not to remain in the full-time employment of WFB after the merger,

and then proceeds to further allege that:

> Pierce relied on the promises and representations referred to in the preceding paragraph, both expressly and by his conduct, including but not limited to by continuing to work at GBB through the effective date of the merger, and in not seeking alternative employment.[12]

In the same vein, the misrepresentation causes of action are all based on the allegations that Pierce relied on GBB's and WFB's representations, that those representations were false because GBB and WFB never intended to honor them, and that Pierce relied on the representations and thereby sustained damages.[13]

Nowhere in its motion does WFB argue that Pierce's claims do not allege all of the elements of each of the causes of action asserted. Clearly those elements are properly pleaded: the contract claims allege an oral agreement arising from the acceptance of an oral promise that Pierce performed and that WFB breached, with consequent damages (Witkin, *California Procedure,*

---

[11]. Complaint, ¶¶ 14, 15, 20, and 21.
[12]. Complaint, ¶¶ 25, 26, 32, and 33.
[13]. Complaint, ¶¶ 38-43, 46-51, 54-56, and 59-61.

{00316204v1}    -7-

Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Pursuant to FRCP 12(B)(6)
(Case No. C08-01554 JF (HRL))

*Pleadings,* § 476 (4th Edition); the promissory estoppel claims allege a representation that Pierce relied on to his detriment (*Id.,* § 486); and the misrepresentation claims allege a misrepresentation on which Pierce reasonably relied and as a result sustained damages (*Id.*, § 668). Thus, none of Pierce's claims have been shown by WFB to "fail[-] to state a claim upon which relief my be granted," and the motion must be denied unless the claims are preempted by ERISA. Accordingly, we now proceed to demonstrate why none of Pierce's claims are preempted by ERISA.

          2.      *Pierce's Claims Are Not Preempted Because The Change In Control Plan Is Not An ERISA Plan.*

Pierce's state law claims are not preempted by ERISA because they are not based on an alleged plan that meets the administration and continuity and other requirements that are the distinguishing feature of such a plan. Whether a severance plan such as the change in control plan at issue here is covered by ERISA "must be appraised on its own facts." *Belanger v. Wyman-Gordon Co.,* 71 F.3d 451, 455 (1st Cir. 1995). The mere fact that a claim relates to employee *benefits* is not enough to make it an ERISA plan; to be a *plan* under ERISA, a program for the payment of employee benefits must "require[-] an ongoing administrative program to meet the employer's obligation." *Fort Halifax Packing Co. v. Coyne, supra,* 482 US 11. Thus, a program merely requiring payment of "a one-time, lump-sum payment triggered by a single event [which] requires no administrative scheme whatsoever to meet the employer's obligation" is not a "plan." *Id.*, at 12. Accordingly, in *Fort Halifax* the court found that the Maine statute requiring payment of one-time severance benefits was not an ERISA plan because the statute "generate[d] no program activity that would normally be subject to ERISA regulation." (At 17.) Similarly, the court in *Belanger* held that a severance plan was not an ERISA plan because, among other things, the plan "hinged on a purely mechanical determination of eligibility and, if accepted, required no complicated administrative apparatus either to calculate or to distribute the promised benefit." *Belanger v. Wyman-Gordon Co., supra,* 71 F.3d 455.

ERISA is intended to administer "plans", not benefits." *Fort Halifax Packing Co. v. Coyne, supra,* 482 US 8. Thus, a plan is subject to ERISA where an employer "makes a commitment systematically to pay certain benefits [and] undertakes a host of obligations, such as determining

{00316204v1}    -8-

Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Pursuant to FRCP 12(B)(6)
(Case No. C08-01554 JF (HRL))

eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records." *Id.,* 9, 10. And a benefit scheme is not an ERISA plan where:

> [t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet employer's obligation. The employer assumes no obligation to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination or control. Rather the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may never have to pay the severance benefits. To the extent that an obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. *Id.,* 12.

The severance scheme that must be evaluated to determine if it is an ERISA plan consists of the promise and representation that create a simple condition precedent to the payment of severance benefits, namely that if Pierce did not want to remain employed by WFB after the merger he could elect to receive a severance benefit under the change in control plan. Performance by WFB of the promise and representation involved no evaluation of his entitlement to benefits beyond the simple confirmation of the fact that Pierce had elected not to remain at WFB. And the benefits were equally simple to determine and pay out, i.e. "twelve months pay at the rate at which he was being compensated at the time of ceasing work, plus a bonus and other benefits." Complaint, ¶ 6.

Given the facts described in the preceding paragraph, the oral agreement alleged by Pierce manifestly did not constitute a "plan" under ERISA. Applying the criteria formulated by the Supreme Court in *Fort Halifax*, payment of the severance benefits promised by WFB involved nothing more than a potential "one-time, lump-sum payment triggered by a single event" that required no administrative scheme – just Pierce's election. And Pierce's possible election was a "contingency that may never materialize" – Pierce might have been so happy with his new job and prospects that that he would elect to stay. Further, any benefit would be payable by simply "writing a check." Thus, as in *Belanger v. Wyman-Gordon Co., supra,* 71 F.3d 455, the severance scheme which forms the basis each of Pierce's claims involved "precisely the kind of one-time, lump-sum payment[s] that the *Port* Halifax court clearly excluded from the pantheon of ERISA claims."

Accordingly, the severance scheme alleged by Piece was not an ERISA plan, and his claims are not preempted by ERISA.

Pierce's misrepresentation claims also do not implicate an ERISA plan for the further reason that ERISA does not preempt a misrepresentation claim to the extent that it seeks only reliance damages, as Pierce does here.[14] *Thurman v. Pfizer, Inc.,* 484 F.3d 855, 862-864 (6th Cir. 2007).

Under the circumstances, the promises and representations which form the basis of each of Pierce's claims do not constitute the type of benefit scheme that is capable of constituting an ERISA plan. Thus, absent the existence of any ERISA plan, Pierce's claims cannot be preempted.

        3.    *Pierce's Claims Are Not Preempted Because They Do Not Relate To An ERISA Plan*.

Pierce's claims are also not preempted for the further reason that even if one assumes for the sake of argument (but without admitting) that those claims must be evaluated in relation to the change in control plan, Pierce's claims still do not "relate to an[-] employee benefit plan described in § 1003(a) of this title and not exempt under § 1003(a) of this title." 29 USC § 1144(a); *Metropolitan Life Ins. Co. v. Taylor* (1987) 481 US 58, 64, 66, 107 S.Ct. 1542; *Toumajian v. Frailey*, 135 F.3d 648, 654 (9th Cir. 1998). Under the standards of *Metropolitan Life,* preemption arises if the state law claim both "relates to" an ERISA plan *and* falls within the scope of ERISA's civil enforcement provision, 29 USC § 1132(a). *Toumajian v. Frailey*, *supra,* 135 F.3d at 654. If *both* conditions are not met, however, the federal court does not have subject matter jurisdiction, and there cannot be any preemption. *Id.*

Pierce's claims *as pleaded* do not relate to the change in control plan, nor do they fall within the plan's enforcement provisions. A state court claim "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.* (1983) 483 US 85, 96-97, 103 S.Ct. 2890 (cited with approval in *Fort Halifax Packing Co. v. Coyne* (1987) 482 US 1, 8, 107 S.Ct. 2211). The mere fact that a claim relates to employee *benefits* is not enough, however

---

[14]. Complaint, ¶¶ 43, 51, 56, 61.

– the claim must relate to a *plan* under which employee benefits are paid.

As is apparent from the discussion in Part III(B), above, all of Pierce's claims are based on a simple, straightforward promise and representation that he would have the right to elect certain severance benefits on consummation of GBB's merger with WFB.  Whether or not the change in control plan actually provided those benefits is immaterial – the promise and representation necessarily implied that *if the promised benefits were not part of the plan then GBB and WFB would cause them to be made part of the plan*.  Thus, Pierce's claims are not dependent on whether or not the change in control plan actually provides the promised benefits; to the contrary his claims are predicated on the assumption that WFB is correct in taking the position that Pierce is not entitled to benefits under the change in control plan. Complaint, ¶ 11.  As a result, Pierce's claims, as pleaded, manifestly do not "relate to" the change in control plan.  The only relevance of the plan to Pierce's claims is the indirect one that the nature and extent of the benefits promised and represented have to be determined by reference to the plan.  That indirect relevance for the purposes of identifying benefits only does not mean that Pierce's claims themselves relate to the plan, however.  This is because merely referring to a plan to determine benefits payable on a state court claim does not render a claimant a participant or beneficiary of the plan.  *Miller v. Rite Aid Corp.,* 504 F.3d 1102, 1108 (9th Cir. 2007).  Thus, Pierce's claim do not relate to an ERISA plan.

Pierce's claim does not fall within the scope of ERISA's civil enforcement either.  Pierce does not assert his state law claims *as a participant or beneficiary under the change in control plan*; rather, he relies on obligations arising from promises and representations orally made in June and September 2007.  Moreover, even WFB does not contend that Pierce is a participant or beneficiary under the change in control plan.  Indeed WFB implicitly admits that Pierce does not sue in his capacity as a "participant or beneficiary" under any ERISA plan, by taking the position that "Plaintiff was not yet a 'Participant' of the CIC Plan." Motion, 9:13-16.  While this statement is apparently based on inadmissible evidence that Pierce has objected to and sought to be stricken, the fact of WFB's judicial admission that Pierce is not a beneficiary or participant of the change in control plan – irrespective of its factual basis – is fatal to WFB's argument that the plan terms trigger preemption, because that admission concedes that Pierce *has no federal claim*.  Thus, since

Pierce is not asserting any claim in the alleged capacity of a participant or beneficiary of an ERISA plan, and WFB does not contend that that Pierce has the status of a participant or beneficiary, it is undisputed that Pierce is not here asserting a claim as a participant or beneficiary of an ERISA plan.

The facts here are analogous to the facts in the *Rite-Aid* case, because they establish beyond contradiction that an employer may not lie to an employee about the extent of benefits available under an ERISA Plan, and then avoid liability for the consequences of that lie by asserting that any fraud or other state law claim based on the lie is barred by ERISA preemption – merely because the lie relates to an ERISA plan. Yet that is exactly the position that WFB is taking here, in an attempt to avoid responsibility for its unfilled promises and false representations.

In *Rite-Aid* employee Miller had been promised $150,000 in life insurance coverage as an employee benefit under an ERISA plan, but it turned out that she was not actually eligible under Rite-Aid's death benefit plan to receive the promised coverage. Thus, as in Pierce's case, a promise was made by an employer which was not fulfilled because the promised benefits were allegedly unavailable under the plan. After Miller's death, among other claims, her estate asserted a claim against Rite Aid for breach of contract for failing to ensure that the insurance benefit was paid by the plan. (At 1105.) Like WFB here, Rite Aid removed the case to federal court, arguing ERISA preemption. The court rejected Rite-Aid's contention that Miller's breach of contract claim was preempted, holding that "ERISA does not preempt the claims of parties who do not have the right to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA plan." (At 1106.) The court explained that in order to be a participant or beneficiary a plaintiff needed to have a "colorable claim that she will prevail in a suit for benefits," and plaintiff had no such claim. *Id.* This is because, as the court noted, "Unlike the Cheshire Cat, one cannot have the smile of preemption without the stripes of participation." *Id.* And here too, like Rite-Aid and the Cheshire Cat, WFB cannot take the position that Pierce is not entitled to benefits under the Change in Control Program because he is neither a participant nor a beneficiary, and at the same time successfully take the position that Pierce is precluded from asserting a state law breach of contract claim which does not seek to *enforce benefits under a plan*.

{00316204v1}

-12-

Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Pursuant to FRCP 12(B)(6)
(Case No. C08-01554 JF (HRL))

        4.        *None Of The Authorities Relied On My WFB Support Dismissal.*

        None of the authorities relied on by WFB do compels a result other than denial of WFB's motion to dismiss. In *Metropolitan Life Ins. Co. v. Taylor* (1987) 481 US 58, 107 S.Ct. 1542, plaintiff sought damages based on a breach of contract theory for failure to pay him supplemental benefits *under an employee benefit plan*, and after he had already received certain benefits as a participant under that plan. (At 62.) The court held that his claim was "a suit by a beneficiary to recover benefits from a covered plan," and was therefore preempted. (*Id.,* at 62-63.) Thus, the facts of *Metropolitan Life* are different from the facts in this case, because in that case plaintiff was suing *under an ERISA plan*. Similarly, *Pilot Life Ins. Co. v. Dedeaux* (1987) 481 U.S. 41, 107 S.Ct. 1549, was also a case in which plaintiffs asserted claims "each based on alleged improper processing of a claim for benefits under an employee benefit plan," and accordingly also involved claims *under a plan* – unlike Pierce's claims here.

        *Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030 (9th Cir. 2000) also provides no elucidation of any issue presented by WFB's motion, since the decision does not state what relief was sought by means of the counterclaims held to be preempted. (At 1032 and 1034.) Since the targets of those counterclaims included the plan administrator (Aetna) and the plan (Bene-Flex Plan), and since the issue was the named beneficiary's entitlement to benefits that the widower was claiming under community property law, however, it can be assumed that counterclaimant was asserting a claim for *benefits under the plan.* Thus, since Pierce is not here asserting a claim against a plan or plan administrator for *benefits under a plan*, the holding has no bearing on the facts of this case.

        Also invoked by WFB is *Rutledge v. Seyfarth, Shaw, Fairweather,* 201 F.3d 1212 (9th Cir. 2000). This is another case that does not support WFB's position. In *Rutledge* plaintiff – a participant in an ERISA Plan – sued the plan's attorneys for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and misrepresentation, alleging that the attorneys had overcharged the plan. (At 1214.) Noting that the complaint alleged "excessive compensation" and "more than reasonable" rates within the meaning of ERISA section 408(b), the court found that the claims "bear upon the ERISA-governed relationship between Seyfarth and the Plans," and were therefore preempted as "a transaction governed by ERISA." (At

1222, 1223.) Thus, the facts of *Seyfarth* have no relevance to the quite different facts of this case.

WFB also invokes *Scott v. Gulf Oil,* 754 F.2d 1499 (9th Cir. 1985) for the proposition that it somehow supports its argument that the relief that Pierce is seeking in this action are benefits "under an ERISA plan." (Motion, 7:16-21.) However, the facts of *Scott* are also quite different from those existing here. In *Scott* the court found that plaintiffs' contract claim "asserts no more nor less than that plaintiffs were denied benefits due to them *under the terms of an employee welfare benefit plan.* The claim is therefore preempted by ERISA." (At 1505 – emphasis added) *Farr v. U.S. W. Comms., Inc.*, 151 F.3d 908 (9th Cir. 1998) is another case relied on by WFB that has no relevance to the facts of this case. In *Farr* plaintiffs sued for fraud and misrepresentation (among other things) based on alleged false statements with regard to the tax consequences of the early receipt of benefits under a ERISA retirement plan. The court held that the information provided was "part of the overall mix of information relied on by plaintiffs in making their decisions to participate in the plan," and therefore, related to plan administration, thus rendering the claims preempted. (At 913.) The facts of *Farr,* therefore, are also not comparable to this case.

Also relied on by WFB is the case of *Thurman v. Pfizer, Inc.* 484 F.3d 855 (6th Cir. 2007). However, that case *supports* Pierce's position that his state law claims are not preempted, in that the court held that plaintiff Thurman's claim for reliance damages attributable to Pfizer's misrepresentations was not preempted. (At 859, 863-864.) As the court noted:

> What we have here is simply a case of a person who left his old employer based on promises made by his new employer. These promises could have concerned anything — for example, an increase in wages, more vacation days, or free parking. Here, these promises just so happened to concern retirement benefits. We see no reason to bind employers to some promises used to induce acceptance of an employment offer, but give them a 'get out of jail free card' when their promises concern the scope of a plan governed by ERISA.

By the same token, when – as in this case – Pierce as an employee is induced to *remain* in employment based on false promises made by the existing employer, the mere fact that those false promises concern an ERISA plan does not give the employer – here WFB – a get out of jail card either. Thus, neither *Thurman* nor any of the other cases cited by WFB support its contention that Pierce's state law claims are preempted. To the contrary, cases such as *Rite-Aid* and *Thurman*

{00316204v1}

-14-

Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Pursuant to FRCP 12(B)(6)
(Case No. C08-01554 JF (HRL))

clearly support Pierce's position that his state law claims are *not* preempted.

### B.  WFB's Exhaustion of Remedies, Oral Amendment, And Other Arguments Are Baseless.

WFB's additional makeweight arguments fail to provide any basis for granting its motion to dismiss either. Its exhaustion of remedies argument is baseless because Pierce is not suing under the change in control plan, so even if he were obligated to exhaust remedies *under that plan* (and no evidence to that effect is properly before the court), such exhaustion is not a prerequisite for asserting any of his pleaded state law claims. None of the cases cited by WFB support its position that Pierce's claims are barred by a failure to exhaust remedies, because in each of those case plaintiffs *sued the ERISA plan*, not an employer accused for breach of contract and fraud.

WFB's straw man oral modification argument also fails to even pass the red face test, since the first element of any claim for oral modification of an ERISA plan would have to be the allegation that the parties to the cause of action entered into an agreement which was an ERISA plan, and which was orally modified. No such allegation is made in the complaint here. Accordingly, focusing on the *allegations of the complaint*, as the Court must in a 12(b)(6) motion, there is simply no intelligible basis for WFB's position, and it must be rejected.

### V.  CONCLUSION

For the foregoing reasons, Pierce's claims are not based on an ERISA plan, do not relate to an ERISA plan, and do not seek to enforce an ERISA plan. Thus, none of Pierce's claims are preempted by ERISA, and WFB's motion to dismiss must be denied.

Dated:  June 6, 2008

CARR & FERRELL LLP

By: _____
STUART C. CLARK
CHRISTINE S. WATSON

Attorneys for Plaintiff
PATRICK PIERCE