PATRICIA K. GILLETTE (STATE BAR NO. 74461)
ANDREW R. LIVINGSTON (STATE BAR NO. 148646)
GREG J. RICHARDSON (STATE BAR NO. 203788)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:      +1-415-773-5700
Facsimile:      +1-415-773-5759
pgillette@orrick.com
alivingston@orrick.com
grichardson@orrick.com

JOSEPH C. LIBURT (STATE BAR NO. 155507)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:      +1-650-614-7400
Facsimile:      +1-650-614-7401
jliburt@orrick.com

Attorneys for DEFENDANT
WELLS FARGO BANK, N.A. (sued as "Wells Fargo Bank")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICK PIERCE,<br><br>                  Plaintiff,<br><br>          v.<br><br>WELLS FARGO BANK, and Does 1-10, inclusive,<br><br>                  Defendant. | Case No.  CV 08 1554 JF<br><br>**AMENDED ERRATA TO DEFENDANT WELLS FARGO BANK, N.A.'S OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**<br><br>Date:  June 27, 2008<br>Time:  9:00 a.m.<br>Courtroom: 3, Fifth Floor<br>The Honorable Jeremy Fogel |

1    On June 12, 2008, Defendant Wells Fargo Bank, N.A. ("Defendant") filed an Errata to

2   Defendant Wells Fargo Bank, N.A.'s Opposition to Plaintiff's Motion to Remand.  Exhibits 1 and

3   2 to the Declaration of Greg J. Richardson in Support of Defendant Wells Fargo Bank, N.A.'s

4   Opposition to Plaintiff's Motion to Remand were attached to the Errata.  Pursuant to the request

5   of counsel for Plaintiff Patrick Pierce ("Plaintiff") and the agreement of the parties, Defendant has

6   requested to have the link to the original Errata locked and is filing this Amended Errata with

7   Plaintiff's salary information redacted from Exhibit 2.

8    On June 6, 2008, Defendant filed the Declaration of Greg J. Richardson in Support of

9   Defendant Wells Fargo Bank, N.A.'s Opposition to Plaintiff's Motion to Remand.  Exhibits 1 and

10   2 to the declaration were inadvertently not e-filed as attachments to the declaration.

11    Attached hereto as Exhibit 1 to the Declaration of Greg J. Richardson in Support of

12   Defendant Wells Fargo Bank, N.A.'s Opposition to Plaintiff's Motion to Remand is a true and

13   correct copy of the Greater Bay Bancorp Change In Control Pay Plan I Amended and Restated

14   Effective September 28, 2007 ("CIC Plan").  The CIC Plan is referenced in the complaint filed by

15   Plaintiff Patrick Pierce ("Plaintiff") in this action but is not attached to it.  This document is on file with

16   the Court as Exhibit 1 to the Declaration of Greg J. Richardson in Support of Defendant Wells Fargo

17   Bank, N.A.'s Opposition to Plaintiff's Motion to Dismiss.

18    Attached hereto as Exhibit 2 to the Declaration of Greg J. Richardson in Support of

19   Defendant Wells Fargo Bank, N.A.'s Opposition to Plaintiff's Motion to Remand is a true and

20   correct copy of a letter dated April 24, 2008 to Patrick Pierce from Shelly L. Johnson on behalf of

21   the Plan Administrator.  This document is provided to the Court for reference purposes, not as evidence.

22   Dated: June 13, 2008                    PATRICIA K. GILLETTE
                                             ANDREW R. LIVINGSTON
23                                           JOSEPH C. LIBURT
                                             GREG J. RICHARDSON
24                                           Orrick, Herrington & Sutcliffe LLP

25

26                                           _____/S/_____
                                             GREG J. RICHARDSON
27                                           Attorneys for Defendant
                                             WELLS FARGO BANK, N.A.

28

# EXHIBIT 1

# GREATER BAY

## BANCORP

## CHANGE IN CONTROL PAY PLAN I

### (Amended and Restated Effective September 28, 2007)

## GREATER BAY BANCORP CHANGE IN CONTROL PAY PLAN I
### Amended and Restated Effective September 28, 2007

### ARTICLE I

### PURPOSE

GREATER BAY BANCORP (the "Company") established, effective as of January 1, 1998, the Change in Control Pay Plan I, as amended and restated effective as of August 21, 2001, and as of January 1, 2005, to provide severance benefits to eligible Employees whose employment terminates in connection with a Change in Control. The Company hereby further amends and restates such plan, effective as of September 28, 2007, in accordance with the terms set forth hereunder. The intent of the plan is to ensure all eligible Employees have reasonable protection related to any event as specified in this plan.

### ARTICLE II

### EFFECTIVE DATE

All of the policies and practices of each Member Company regarding severance, or similar payments upon employment termination on account of a Change in Control are hereby superseded by this plan which shall be known as the GREATER BAY BANCORP Change in Control Pay Plan I (the "Plan"), effective September 28, 2007.

### ARTICLE III

### DEFINITIONS

Section 3.1    Affiliated Company means:

    (a)    Any corporation (other than the Company) that is included in a controlled group of corporations, within the meaning of Code Section 414(b), that includes the Company, and

    (b)    Any trade or business (other than the Company) that is under common control with the Company within the meaning of Code Section 414(c), and

    (c)    Any member (other than the Company) of an affiliated service group, within the meaning of Code Section 414(m), that includes the Company, and

    (d)    Any other entity required to be aggregated with the Company pursuant to regulations under Code Section 414(o).

Section 3.2    Base Benefit means the severance benefit payable to a Participant in accordance with Articles IV and V of the Plan, the amount of which is based upon such Participant's Pay and his title or position in a Member Company as of the date he terminates employment with the Member Company on account of a Change in Control.

Section 3.3    <u>Board of Directors</u> means the board of directors of the Company.

Section 3.4    <u>Cause</u> means any of the following:

    (a)    The Employee's violation of any state or federal banking or securities law; or

    (b)    The Employee's violation of the Bylaws, rules, policies or resolutions of the Company; or

    (c)    The Employee's violation of the rules or regulations of the California Department of Financial Institutions, the Federal Deposit Insurance Corporation, the Federal Reserve Board of Governors, the Office of the Comptroller of the Currency or any other regulatory agency or governmental authority having jurisdiction over the Company or any Associated Company; or

    (d)    The Employee's conviction of any felony; or

    (e)    The Employee's commitment of an act involving moral turpitude, fraud, misappropriation, embezzlement or other dishonest conduct; or

    (f)    The Employee's failure to comply with any material terms or conditions of employment as established by the Company, or any applicable employment agreement or any written policies or directives of the Company; or

    (g)    The Employee's failure to properly perform his assigned work duties, which has not been appropriately corrected within 30 days or other established period following written notice from the Company of such failure.

Section 3.5    <u>Change in Control</u> means the first to occur of any of the following events:

    (a)    Any "person" (as that term is used in Section 13 and 14(d)(2) of the Securities Exchange Act of 1934 ("Exchange Act") becomes the beneficial owner (as that term is used in Section 13(d) of the Exchange Act), directly or indirectly, of more than fifty percent (50%) of the Company's capital stock entitled to vote in the election of directors, other than a group of two or more persons not (i) acting in concert for the purpose of acquiring, holding or disposing of such stock or (ii) otherwise required to file any form or report with any governmental agency or regulatory authority having jurisdiction over the Company which requires the reporting of any change in control. The acquisition of additional stock by any person who immediately prior to such acquisition already is the beneficial owner of more than fifty percent (50%) of the capital stock of the Company entitled to vote in the election of directors is not a Change in Control;

3

(b)     During any period of not more than twelve (12) consecutive months during which the Company continues in existence, not including any period prior to the adopting of this Plan, individuals who, at the beginning of such period constitute the Board of Directors of the Company, and any new director (other than a director designated by a person who has entered into an agreement with the Company to effect a transaction described in clause (a), (c) or (d) of this Section 3.5) whose appointment to the Board of Directors or nomination for election to the Board of Directors was approved by a vote of at least a majority of the directors then still in office, either were directors at the beginning of the period or whose appointment or nomination for election was previously so approved, cease for any reason to constitute at least a majority thereof;

(c)     The effective date of any consolidation or merger of the Company (after all requisite shareholder, applicable regulatory and other approvals and consents have been obtained), other than (i) a consolidation or merger of the Company in which the holders of the common stock of the Company immediately prior to the consolidation or merger hold more than fifty percent (50%) of the common stock of the surviving corporation immediately after the consolidation or merger or (ii) a consolidation or merger of the Company with one or more other persons that are related to the Company immediately prior to the consolidation or merger. For purposes of this provision, persons are "related" if one of them owns, directly or indirectly, at least fifty percent (50%) of the voting capital stock of the other or a third person owns, directly or indirectly, at least fifty percent (50%) of the voting capital stock of each of them;

(d)     The sale or transfer of substantially all of the Company's assets to one or more persons that are not related (as defined in clause (c) of this Section 3.5) to the Company immediately prior to the sale or transfer.

Section 3.6     Code means the Internal Revenue Code of 1986, as amended.

Section 3.7     Committee means the Benefits Administration Committee appointed by the Compensation Committee of the Company's Board of Directors or such other person or persons as the Board of Directors or the Compensation Committee of the Board of Directors may designate from time to time.

Section 3.8     Company means GREATER BAY BANCORP.

Section 3.9     Effective Date means September 28, 2007.

Section 3.10     Employee means (1) any full-time employee of a Member Company or (2) any regular part-time employee of a Member Company. For purposes of this Section 3.10, "full-time employee" shall mean an employee of a Member Company who is regularly scheduled to work at least forty (40) hours per week for twelve (12) months each year. Notwithstanding the foregoing, with respect to employees of a Member Company which requires fewer than forty (40) hours per week for classification as a full-time employee, "full-time employee" shall be

4

defined according to such Member Company's administrative policy and practice. "Regular part-time" employee shall mean any employee of a Member Company who is not a temporary or fixed term employee and is regularly scheduled to work at least twenty (20) hours per week for twelve (12) months each year, but fewer hours than necessary to classify him as a full-time employee.

Section 3.11    ERISA means the Employee Retirement Income Security Act of 1974, as amended.

Section 3.12    Member Company means the Company or an Affiliated Company, *provided* that the Compensation Committee of the Company's Board of Directors consents to the participation of any such Affiliated Company in the Plan with respect to eligible Employees of such Affiliated Company.

Section 3.13    Participant means an Employee who satisfies the requirements under Section 4.1 of the Plan.

Section 3.14    Pay means an Employee's current annual rate of regular base salary or wages on the date of termination of employment with a Member Company and the average of the annual cash incentive bonuses (other than any long-term cash incentives and warrant payment plans) received by (or would have been received if not deferred by) an Employee for the three-year period immediately preceding the calendar year in which the date of his termination of employment on account of a Change in Control occurs, excluding: (i) overtime or shift pay, (ii) commissions or draws from commission, (iii) incentive plans, programs or policies maintained by ABD Insurance and Financial Services and its Subsidiaries, (iv) signing bonuses or retention pay, (v) warrant income, (vi) premiums, supplements, imputed income, living, auto or other allowances or (vii) any other extra pay. The average of such annual cash incentive bonuses shall be the sum of such annual cash incentive bonuses received by the Employee for each calendar year in the three-year period with respect to which the Employee was eligible to receive an annual cash incentive bonus, divided by the number of calendar years (not exceeding three) that the Employee was eligible to receive such an annual cash incentive bonus. In calculating such average, any partial calendar year of employment commencing on or before September 30 of such year shall be treated as a full calendar year (i.e., both the year and any actual bonus amount for such year shall be included in the calculation of average bonus), and any partial calendar year of employment commencing after September 30 shall be ignored (i.e., both the year and any bonus amount for such year shall be excluded from the calculation of average bonus).

Section 3.15    Plan means the Greater Bay Bancorp Change in Control Pay Plan I.

Section 3.16    Plan Year means each twelve (12) consecutive month period from January 1 through December 31.

Section 3.17    Designated Employee means each of the employees who are specifically identified on Schedule A.

Section 3.18    Year of Service means a twelve (12)-continuous month period beginning on an Employee's most recent date of hire (or rehire), and each twelve (12)-continuous month period beginning on the anniversary of such hire (or rehire) date, during which the Employee remains continuously employed by a Member Company.

ARTICLE IV

ELIGIBILITY FOR BENEFITS

Section 4.1    Employees Eligible for Severance Benefits.  Except as provided in this Section 4.1 and in Sections 4.2 and 4.3 and subject to Section 5.6, an Employee whose employment is terminated by a Member Company or successor employer on or after the effective time of the Change in Control shall be eligible for a Base Benefit if:

(a)    Subject to Sections 4.2 and 4.3, the Employee's employment is terminated as a result of a Change in Control (or constructively terminated by not being provided a Comparable Position (as defined in Section 4.3)) within one (1) year following the effective time of the Change in Control (the "effective time" of the Change in Control will have the same meaning provided in Section 7.2); and

(b)    The Employee's employment is not terminated for Cause; and

(c)    The Employee executes a waiver and release agreement in such form as determined by the Committee (the "Waiver and Release Agreement") and returns the Waiver and Release Agreement to the Member Company within the time period (not to exceed 45 days or such longer period as may be required by applicable law) specified in the Waiver and Release Agreement.

For purposes of this Section 4.1, termination of employment includes termination of a Comparable Position that the Employee has accepted pursuant to an offer described in Section 4.2(b) below.

Section 4.2    Employees Not Eligible For Severance Benefits.  An Employee shall not be entitled to a Base Benefit set forth in Article V if:

(a)    The Employee has in force prior to the Effective Date an employment contract or severance agreement with a Member Company that includes provision for the payment of severance benefits upon the termination of employment with the Member Company upon a Change in Control, unless such severance benefits are less than the Base Benefit provided for in the Plan (in which case the Employee shall be entitled to the Base Benefit provided in the Plan in lieu of the severance benefits provided under such agreement); or

(b)    The Employee is provided a Comparable Position (as defined in Section 4.3 below) by the successor employer or by a Member Company, regardless of whether the Employee accepts the offer; or

(c)    The Employee's employment is involuntarily terminated for Cause; or

(d)    The Employee fails to perform his assigned job duties through the date specified by a Member Company as his termination date; or

6

(e)     The Employee accepts an offer of employment by a Member Company after the Company's public announcement of the event or events that subsequently constitute the Change in Control; or

(f)     The Employee fails to return a properly executed Waiver and Release Agreement on a timely basis.

Section 4.3     <u>Comparable Position</u>.  For purposes of Section 4.2, a "Comparable Position" shall mean a position that meets the following two requirements and such other requirements set forth below as are applicable to the Employee:

(a)     Provides a regular base salary or hourly wage rate that is not less than one hundred percent (100%) of the regular base salary or hourly wage rate of the position held by the Employee immediately prior to the effective time of the Change in Control;

(b)     Is based at a principal place of employment that would not require the Employee to increase his normal one-way commute from his home to the new primary work site by more than thirty-five (35) miles each way;

In addition, for an Employee who is a non-exempt staff member, a new position shall not be considered a Comparable Position if the position entails a material change (reduction or increase) in the number of scheduled work hours per pay period or in scheduled shift worked (but not in scheduled days of the week worked) from those worked by the Employee immediately prior to the effective time of the Change in Control.

An Employee's employment shall be considered terminated by a Member Company as a result of a Change in Control for purposes of Section 4.1 above, without a Comparable Position being provided for purposes of Section 4.2 above, if (i) the Employee's position is changed such that it would no longer be considered a Comparable Position under the criteria set forth above, or (ii) any successor in interest to the Member Company pursuant to the Change in Control fails to assume all obligations of the Member Company under this Plan, or (iii) the Member Company or its successor materially breaches any provision of this Plan pertaining to the Employee or materially breaches any material agreement between the Member Company or its successor and the Employee, in each case which condition continues after written notice from the Employee to the Member Company or its successor given within 90 days of the Change in Control and a reasonable opportunity by the Member Company or its successor to correct any such condition within 30 days following receipt of such notice.

<u>ARTICLE V</u>

<u>SEVERANCE BENEFITS</u>

Section 5.1     <u>Calculation of Severance Benefit</u>.  Subject to the provisions of Sections 4.1, 4.2, 4.3 and 5.6, a Participant whose employment is terminated (or constructively terminated by not being offered a Comparable Position as defined in Section 4.3) as a result of a Change in Control, shall be entitled to receive a Base Benefit under this Plan as follows:

7

(a)    <u>Designated Employees</u>.  A Participant who is a Designated Employee shall be entitled to receive a Base Benefit equal to the number of months of Pay set forth on <u>Schedule A</u>.

(b)    <u>Senior Vice Presidents and Executive Vice Presidents</u>.  A Participant who is a Senior Vice President, Executive Vice President or a Specialty Finance Business Unit President of a Member Company who is not a member of the Senior Management Council and is not a Designated Employee shall be entitled to receive a Base Benefit equal to twelve (12) months of Pay.

(c)    <u>Vice Presidents and Assistant Vice Presidents</u>.  A Participant who is a Vice President or Assistant Vice President of a Member Company shall be entitled to receive a Base Benefit equal to six (6) months of Pay.

(d)    <u>Exempt and Non-Exempt Staff</u>.  Employees of a Member Company who are either exempt or non-exempt staff shall be entitled to receive a Base Benefit equal to the greater of (i) three (3) months of Pay or (ii) two weeks of Pay for each full Year of Service.

A Participant shall not be entitled to a Base Benefit under more than one of the subsections (a) through (d) above.

Participants entitled to a Base Benefit shall also receive the following severance benefits:  (1) for a period equivalent to the number of months (weeks) of Pay on which the Base Benefit is determined, health care benefits (or COBRA coverage) under the Company's group health care plans then in effect on terms offered to current employees, to the extent such coverage is available and timely elected by the Participant under such Company plans, and, if under COBRA coverage, until such earlier time as the Participant has other group healthcare coverage or has declined COBRA coverage; (2) outplacement services deemed appropriate by the Committee; and (3) a pro-rated bonus for work performed during the year in which employment termination occurs under the bonus program applicable to the Participant for such year.  Proration of the bonus amount shall be based on the number of months the Participant was employed during the year of termination and the performance level of the Participant, subject to the Participant achieving at least a satisfactory performance evaluation for such year.

For purposes of calculating a Participant's severance benefits under Section 5.1(d), the Plan shall take into account only consecutive Years of Service beginning with the Participant's most recent date of hire or rehire and it shall not take into account partial Years of Service, nor shall a Participant receive severance benefits for years of Service for which he previously received severance benefits under the Plan.

Section 5.2    <u>Golden Parachute Restriction</u>.

(a)    <u>Reduction for "Parachute Payment."</u>  Notwithstanding anything above in this Article V, if a Participant is a "disqualified individual" (as defined in Section 280G(c) of the Code), and the severance benefit provided for in Section 5.1, together with any other payments which the Participant has the right to receive from a Member Company would constitute a

8

"parachute payment" (as defined in Section 280G(b)(2) of the Code), the severance benefit shall be reduced.  The reduction shall be in an amount so that the present value of the total amount received by the Participant from a Member Company will be One Dollar ($1.00) less than three (3) times the Participant's base amount (as defined in Section 280G of the Code) and so that no portion of the amounts received by the Participant shall be subject to the excise tax imposed by Section 4999 of the Code.

(b)     Deferred Compensation and Reimbursements Exception.  In no circumstances will a Member Company reduce the severance benefits payable to a Participant on account of the restrictions of this Section 5.2 by the amounts the Participant has the right to receive under an executive deferred compensation plan of the Member Company (Deferred Compensation Plan), amounts paid or payable to the Participant under such a Deferred Compensation Plan to reimburse him either fully or partially for excise tax and/or income tax on the reimbursement (gross up amounts), or amounts paid or payable to the Participant as indemnification for attorney's fees and legal expenses.

(c)     Determination of Reduction.  The determination as to whether any reduction in the severance benefit is necessary shall be made by a Participant's Member Company in good faith, and the determination shall be conclusive and binding on the Participant.

(d)     Repayment of Excess Amount.  If through error or otherwise the Participant should receive payments under this Plan, together with other payments the Participant has the right to receive from a Member Company, excluding Deferred Compensation Plan payments in excess of One Dollar ($1.00) less than three times his base amount, the Participant shall immediately repay the excess to the Member Company upon notification that an overpayment has been made.

Section 5.3     Payment of Benefits.  The Company shall pay severance benefits to a Participant whose employment is terminated on account of a Change in Control in the form of a lump sum.  The Company shall make such lump sum payment as soon as administratively practicable and in no event later than thirty (30) days following the receipt by the Company of a timely and properly executed Waiver and Release Agreement.  Notwithstanding the foregoing, if any payment hereunder is considered "nonqualified deferred compensation" that is to be made to a Participant who is a "specified employee," in each case as defined and determined for purposes of Code Section 409A, within six months following a Participant's termination of employment, then such payment shall be delayed and paid on the first day of the seventh calendar month following the Participant's termination of employment to the extent that such payment is not otherwise exempt from the application of the 20% excise tax under Code Section 409A.

Section 5.4     Payment Offset.  A Member Company reserves the right to offset the benefits payable under Section 5.1 by any advance, loan or other monies a Participant owes the Member Company.  All applicable federal, state and local taxes shall be withheld from all severance payments.

Section 5.5     <u>Unfunded Plan</u>.  The obligations of a Member Company under this Plan may be funded through contributions to a trust or otherwise, but the obligations of the Member Company are not required to be funded under this Plan unless required by law.  Nothing contained in this Plan shall give a Participant any right, title or interest in any property of the Member Company.

Section 5.6     <u>Prohibition Against Golden Parachute Payments</u>.  Notwithstanding any provision of the Plan to the contrary, no Participant who is an institution affiliated party as the term is defined in Section 359.1(h) of the Federal Deposit Insurance Corporation Rules and Regulations ("FDIC Rules and Regs") shall be entitled to the payment of any severance benefit under the Plan to the extent that such payment shall be deemed a "golden parachute payment" as the term is defined in FDIC Rules and Regs. Section 359.1(f)(i)(ii) or (iii).

ARTICLE VI

ADMINISTRATION

Section 6.1     <u>Plan Administration</u>.  The Company shall be the administrator of the Plan for purposes of Section 3(16) of ERISA and shall have responsibility for complying with any ERISA reporting and disclosure rules applicable to the Plan for any Plan Year.

Section 6.2     <u>Plan Committee</u>.  In all respects other than as provided in Section 6.1, the Plan shall be administered and operated by the Committee.  The Committee shall have all powers necessary to supervise the administration of the Plan and control its operations.  In addition to any powers and authority conferred to the Committee elsewhere in the Plan or by law, the Committee shall have, by way of illustration but not by way of limitation, the following discretionary powers and authority:

(a)     To allocate fiduciary responsibilities among the named fiduciaries and to designate one or more other persons to carry out fiduciary responsibilities.  However, no allocation or delegation under this Section 6.2(a) shall be effective until the person or persons to whom the responsibilities have been allocated or delegated agree to assume the responsibilities;

(b)     To designate agents to carry out responsibilities relating to the Plan, other than fiduciary responsibilities;

(c)     To employ such legal, accounting, clerical, and other assistance as it may deem appropriate in carrying out the provisions of this Plan, including one or more persons to render advice with regard to any responsibility any fiduciary may have under the Plan;

(d)     To establish rules and procedures from time to time for the conduct of the Committee's business and the administration and effectuation of this Plan;

(e)     To administer, interpret, construe and apply this Plan.  To decide all questions which may arise or which may be raised under this Plan by any Employee, Participant, former Participant or other person whatsoever, including but not limited to all questions relating to eligibility to

participate in the Plan, the amount of service of any Participant, and the amount of benefits to which any Participant may be entitled;

(f) To determine the manner in which the severance benefits of this Plan, or any part thereof, shall be administered; and

(g) To perform or cause to be performed such further acts as it may deem to be necessary, appropriate or convenient in the efficient administration of the Plan.

Any action taken in good faith by the Committee in the exercise of discretionary authority conferred upon it by this Plan shall be conclusive and binding upon the Participants. All discretionary powers conferred upon the Committee shall be absolute. However, all discretionary powers shall be exercised in a uniform and nondiscriminatory manner.

Section 6.3    Named Fiduciary. The members of the Committee shall be named fiduciaries with respect to this Plan for purposes of Section 402 of ERISA.

Section 6.4    Indemnification of Committee. The Company shall, to the extent permitted by law, by the purchase of insurance or otherwise, indemnify and hold harmless each member of the Committee and each other fiduciary with respect to this Plan for liabilities or expenses they and each of them incur in carrying out their respective duties under the Plan, other than for any liabilities or expenses arising out of such fiduciary's gross negligence or willful misconduct. A fiduciary shall not be responsible for any breach of responsibility of any other fiduciary except to the extent provided in Section 405 of ERISA.

Section 6.5    Claims Procedure.

(a) Applications for Benefits and Inquiries. Any application for benefits, inquiries about the Plan or inquiries about present or future rights under the Plan must be submitted to the Committee in writing by an applicant (or his authorized representative). The address for the Committee is:

Plan Committee
c/o Human Resources
Greater Bay Bancorp
1900 University Avenue, Suite 600
East Palo Alto, CA 94303

(b) Denial of Claims. In the event that any application for benefits is denied in whole or in part, the Committee must provide the applicant with written or electronic notice of the denial of the application, and of the applicant's right to review the denial. Any electronic notice will comply with the regulations of the U.S. Department of Labor. The notice of denial will be set forth in a manner designed to be understood by the applicant and will include the following:

(i) the specific reason or reasons for the denial;

11

(ii)    references to the specific Plan provisions upon which the denial is based;

(iii)   a description of any additional information or material that the Committee needs to complete the review and an explanation of why such information or material is necessary; and

(iv)   an explanation of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the applicant's right to bring a civil action under section 502(a) of ERISA following a denial on review of the claim, as described in Section 6.5(d) below.

This notice of denial will be given to the applicant within ninety (90) days after the Committee receives the application, unless special circumstances require an extension of time, in which case, the Committee has up to an additional ninety (90) days for processing the application. If an extension of time for processing is required, written notice of the extension will be furnished to the applicant before the end of the initial ninety (90) day period.

This notice of extension will describe the special circumstances necessitating the additional time and the date by which the Committee is to render its decision on the application.

(c)    <u>Request for a Review</u>. Any person (or that person's authorized representative) for whom an application for benefits is denied, in whole or in part, may appeal the denial by submitting a request for a review to the Committee within sixty (60) days after the application is denied. A request for a review shall be in writing and shall be addressed to:

Plan Committee
Greater Bay Bancorp
1900 University Avenue, Suite 600
East Palo Alto, CA 94303

A request for review must set forth all of the grounds on which it is based, all facts in support of the request and any other matters that the applicant feels are pertinent. The applicant (or his representative) shall have the opportunity to submit (or the Committee may require the applicant to submit) written comments, documents, records, and other information relating to his claim. The applicant (or his representative) shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to his claim. The review shall take into account all comments, documents, records and other information submitted by the applicant (or his representative) relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(d)    <u>Decision on Review</u>. The Committee will act on each request for review within sixty (60) days after receipt of the request, unless special circumstances require an extension of time (not to exceed an additional sixty (60) days), for processing the request for a review. If an extension

12

for review is required, written notice of the extension will be furnished to the applicant within the initial sixty (60) day period. This notice of extension will describe the special circumstances necessitating the additional time and the date by which the Committee is to render its decision on the review. The Committee will give prompt, written or electronic notice of its decision to the applicant. Any electronic notice will comply with the regulations of the U.S. Department of Labor. In the event that the Committee confirms the denial of the application for benefits in whole or in part, the notice will set forth, in a manner calculated to be understood by the applicant, the following:

    (i)    the specific reason or reasons for the denial;

    (ii)    references to the specific Plan provisions upon which the denial is based;

    (iii)    a statement that the applicant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to his claim (excluding those protected by legal privilege); and

    (iv)    a statement of the applicant's right to bring a civil action under section 502(a) of ERISA.

(e)    <u>Rules and Procedures</u>. The Committee will establish rules and procedures, consistent with the Plan and with ERISA, as necessary and appropriate in carrying out its responsibilities in reviewing benefit claims. The Committee may require an applicant who wishes to submit additional information in connection with an appeal from the denial of benefits to do so at the applicant's own expense.

(f)    <u>Exhaustion of Remedies</u>. No legal action for benefits under the Plan may be brought until the claimant (i) has submitted a written application for benefits in accordance with the procedures described by Section 6.5(a) above, (ii) has been notified by the Committee that the application is denied, (iii) has filed a written request for a review of the application in accordance with the appeal procedure described in Section 6.5(c) above, and (iv) has been notified that the Committee has denied the appeal. Notwithstanding the foregoing, if the Committee does not respond to a Participant's claim or appeal within the relevant time limits specified in this Section 6.5, the Participant may bring legal action for benefits under the Plan pursuant to Section 502(a) of ERISA.

ARTICLE VII

AMENDMENT AND TERMINATION

Section 7.1    Before Change in Control.  This Plan may be amended from time to time, or terminated at any time at the discretion of the Board of Directors by a written resolution adopted by a majority of the Board of Directors, *provided*, *however*, that no amendment or termination shall adversely affect the right of a Participant to receive a severance benefit that the Participant has accrued on account of his termination of employment as a result of a Change in Control.

Section 7.2    After Change in Control.  Notwithstanding the foregoing, the Plan may not be amended or participation discontinued after the effective time of a Change in Control.  For purposes of this Plan, the "effective time" of a Change in Control shall have the same meaning provided in the agreement governing the transactions which give rise to the Change in Control.

ARTICLE VIII

GENERAL

Section 8.1    Payment Out of General Assets.  The benefits and costs of this Plan shall be paid by the Company and each Member Company out of their general assets.

Section 8.2    Welfare Benefit Plan.  This Plan is intended to be an employee welfare benefit plan, as defined in Section 3(1), Subtitle A of Title 1 of ERISA.  The Plan will be interpreted to effectuate this intent.

Section 8.3    Gender.  The masculine pronoun shall include the feminine pronoun and the feminine pronoun shall include the masculine pronoun and the singular pronoun shall include the plural pronoun and the plural pronoun shall include the singular pronoun, unless the context clearly indicates otherwise.

Section 8.4    Limitation on Participant's Rights.  Nothing in this Plan shall be construed to guarantee terminated Employees any right to be recalled or rehired by a Member Company.

Section 8.5    Severability.  If any provision of this Plan shall be held illegal or invalid, the illegality or invalidity shall not affect the remaining parts, which shall be enforced as if the illegal or invalid provision had not been included in this Plan.

## **Schedule A**

### **Base Benefit of 18 months**

President, Employee Benefits
Jim Hall

President, Property & Casualty
OPEN POSITION

Division/Branch COO's

   1.  Joseph Wyatt, Nevada
   2.  Trond Bodal, Pacific Northwest

CFO
Michael McCloskey

Branch Presidents

   1.  Nicholas Rossi, Nevada
   2.  Richard Lane, Pacific Northwest

Executive Vice Presidents

   1.  Ronald Weinhold, Oregon
   2.  Wayne Shira, Petaluma
   3.  James McCabe, Redwood City
   4.  Roger Reynolds, Sacramento
   5.  Graham Gardner, Seattle
   6.  Steve Stafford, Seattle

### **Base Benefit of 12-months**

Senior Vice Presidents

Managing Directors

Branch Managers

### **Base Benefit of 6-months**

Vice Presidents

Assistant Vice Presidents

### **Base Benefit of 3 months or 2 weeks/ year of service**

All others not included above

15

# EXHIBIT 2

EMPLOYMENT
SAN FRANCISCO
48354  MAY 1 4 2008

April 24, 2008


Patrick Pierce
5182 Emiline Drive
San Jose, CA 95124

Re:  Claim for Benefits under the Greater Bay Bancorp Change in Control Pay Plan

Dear Mr. Pierce:

This letter is in response to your letter dated February 5, 2008, in which you claim
benefits under the Greater Bay Bancorp Change in Control Pay Plan.  More specifically,
you state that you are making a claim under the Greater Bay Bancorp Change in Control
Pay Plan II as it existed prior to June 19, 2007 or alternatively under the Greater Bay
Bancorp Change in Control Pay Plan II as it existed on that date (collectively referred to
as the "Prior Plans").  The Prior Plans were superseded by the Greater Bay Bancorp
Change in Control Pay Plan II Amended and Restated Effective September 28, 2007
("CIC Plan II).  However, you have never been a participant in any of these plans because
you were never an "Eligible Employee" under those plans.  The CIC Plan II defines
"Eligible Employee" as a key executive.  This is further defined as "members of the
Company's Managing Committee or members of the Company's Senior Management
Council and who are listed on Exhibit A hereto."  CIC Plan II, Section 3.11.  You are not
listed on Exhibit A, nor were you a member of the Managing Committee or the Senior
Management Council.

For the reasons described above, your claim for benefits under the Prior Plans and the
CIC Plan II is denied.

For your convenience, I have enclosed a copy of the CIC Plan II document.

My review revealed that you were potentially eligible to participate in a plan known as
the Greater Bay Bancorp Change in Control Pay Plan I, which was established in 1998,
amended and restated in 2001, again amended and restated effective January 1, 2005
("2005 Plan"), and finally amended and restated by the Greater Bay Bancorp Change in
Control Pay Plan I Amended and Restated Effective September 28, 2007 ("CIC Plan I").
The CIC Plan I superseded the 2005 Plan.  Please see Article II which states,

> *All of the policies and practices of each Member Company regarding severance
> or similar payments upon termination on account of a Change in Control are
> hereby superseded by this plan which shall be known as the GREATER BAY
> BANCORP Change in Control Pay Plan I (the "Plan"), effective September 28,
> 2007.*

I have attached a copy of the CIC Plan I document for your reference. Because you could potentially be eligible for benefits under CIC Plan I, I also reviewed your claim under the provisions of CIC Plan I. The remainder of this letter focuses on my review of the information contained in your letter in relation to the provisions of CIC Plan I and the outcome of discussions I've had with appropriate parties. For purposes of this response, please note that unless otherwise stated in this letter, capitalized terms are defined in the CIC Plan I document.

### Claim

In your letter you state that your are entitled to benefits because your position with Wells Fargo as a Loan Adjustment Manager 3 was temporary and that it was not "a position of comparable pay and status to your former position" as a Senior Vice President and Director of Specialty Assets at Greater Bay Bancorp.[1]

### Relevant Plan Provisions

Section 4.1 of CIC Plan I describes those Employees who are eligible for benefits if their employment is terminated by a Member Company or a successor on or after the effective time of the Change in Control. Section 4.1(a) states:

> (a)     Subject to Sections 4.2 and 4.3, the Employee's employment is terminated as a result of a Change in Control (or constructively terminated by not being provided a Comparable Position (as defined in Section 4.3 within the one (1) year following the effective time of the Change in Control (the "effective time" of the Change in Control will have the same meaning provided in Section 7.2; and...

---

[1] In your letter, you state that you are entitled to benefits under a prior version of the CIC Plan II, rather than the currently effective version. Since your letter is not directed at the CIC Plan I, you do not make a similar argument that you are entitled to benefits under a prior version of the CIC Plan I. Nevertheless, since you have generally raised the issue of which version of the plan applies, I find that the current version of the CIC Plan I is the operative version. Article VII of the 2005 Plan regarding amendment and termination of the plan states:

> Section 7.1. Before Change in Control. This Plan may be amended from time to time, or terminated at any time at the discretion of the Board of Directors, provided, however, that no amendment or termination shall adversely affect the right of a Participant to receive a Severance Benefit that the Participant has accrued on account of his termination of employment as a result of a Change in Control.

The 2005 Plan was amended and restated effective September 28, 2007. At the time the plan was amended and restated, you were not a "Participant" as defined in the 2005 Plan. Furthermore, you also are not a "Participant" as defined in the CIC Plan I, but since you are an "Employee" as defined in CIC Plan I and CIC Plan I was the operative plan on October 1, 2007 (the "effective time" of the Change in Control), this is the plan under which I evaluated your claim. I have attached a copy of the 2005 Plan for your convenience.

Section 4.2 of CIC Plan I describes those Employees who are not eligible for benefits. Section 4.2 states in part:

> *An Employee shall not be entitled to a Base Benefit set forth in Article V if:...(b) The Employee is provided a Comparable Position (as defined in Section 4.3 below) by the successor employer or by a Member Company, regardless of whether the Employee accepts the offer...*

Section 4.3 defines a "Comparable Position." Section 4.3 states in part:

> *...a "Comparable Position" shall mean a position that meets the following two requirements...(a) Provides a regular base salary or hourly wage that is not less than one hundred percent (100%) of the regular base salary or hourly wage rate of the position held by the Employee immediately prior to the effective time of the Change in Control; (b) Is based at a principal place of employment that would not require the Employee to increase his normal one-way commute from his home to the new primary work site by more than thirty-five (35) miles each way...*

Facts

You state that the Loan Adjustment Manager 3 position offered to you following the Change in Control was a "temporary" position which would be completed by February 28, 2008, and that it was not a "position of comparable pay and status." I do not understand you to be claiming that your employment was actually terminated, but rather that your employment was "constructively terminated" in that you were not offered a Comparable Position. *See* CIC Plan I, Sections 4.1, 4.3. You do not contend that your commute was increased after the Change in Control by more than 35 miles each way.

I spoke to Brigitte Stream, Human Resources Consultant for your Wells Fargo business unit and your Wells Fargo supervisor, Jeanette Mebane, Vice President, CMG California Manager to understand your transition to the Loan Adjustment Manager 3 position following the Change in Control. I also reviewed two letters dated November 1 and November 8, 2007 which confirmed the terms of your position at Wells Fargo.

My review revealed that on November 1, 2007, you were offered a full-time position with Wells Fargo Bank, N.A. as a Loan Adjustment Manager 3 reporting to Ms. Mebane. The annual base salary for the position was – and is                (less applicable taxes and withholdings) payable bi-weekly on Wells Fargo's regularly scheduled paydays beginning January 1, 2008. An additional             was added to your salary to compensate for an auto allowance benefit that was provided in your prior role, which resulted in an annualized salary of :               . Your salary immediately prior to the Change in Control was :               Accordingly, your salary after the Change in Control was "not less than one hundred percent (100%) of the regular base salary or hourly wage rate of the position held by the Employee immediately prior to the effective time of the Change in Control." *See* CIC Plan I, Section 4.3. Because you were neither actually terminated as a result of a Change in Control nor constructively terminated (*i.e.,*

REDACTED

you were offered a Comparable Position), you are not entitled to benefits under the CIC Plan I. *See* CIC Plan I, Sections 4.1, 4.2(b), 4.3.

Regarding your statement that the position offered to you was "temporary," I investigated and found the following. Prior to the November 1, 2007 letter, Ms. Mebane states that she, Robert Creed and Sidney Copeland met with you to discuss the transition. Ms. Mebane explained to you that you would be working the same book of business and have the same number of direct reports as those in your Greater Bay Bank position. At that time you stated that you had no desire to work at Wells Fargo and that you would assist with the transition of Greater Bay Bancorp but would be leaving by February 28, 2008. Ms. Mebane, Mr. Creed and Mr. Copeland accepted your decision to decline their offer of a full-time Loan Adjustment Manager 3 position after February 28th, and offered to put you on a non-working status for an additional 31 days to assist you in finding other opportunities within Wells Fargo through March 31, 2008. The November 1, 2007 letter was a confirmation of the terms previously discussed between you and Ms. Mebane, Mr. Creed and Mr. Copeland.

Both Ms. Mebane and Ms. Stream provided me with the second letter that was sent to you dated November 8, 2007. This letter came from Kathy Kroll, Human Resources Manager. The purpose of Ms Kroll's letter was to clarify that your position at Wells Fargo was not "temporary" and that if you chose to voluntarily terminate your employment, you could do so but you would not be eligible for severance benefits.

## Determination

Based on my review of your claim and the provisions of CIC Plan I, I must conclude that you are not eligible for severance benefits under Section 4.1 of CIC Plan I. The Loan Adjustment Manager 3 position described in the November 1st letter meets the criteria of a "Comparable Position" as defined in Section 4.3 of CIC Plan I. The Loan Adjustment Manager 3 position provided you a higher base salary as compared to your prior position at Greater Bay Bank and your principal place of employment did not change. Moreover, your decision to decline the offer of a Comparable Position, and to accept it only on a temporary basis, does not make you eligible for benefits. *See* CIC Plan I, Section 4.2(b).[2]

## Right to Request Review of this Decision

You have a right to request a review of this decision to by submitting a request for review to the Plan Administrator within 60 days of your receipt of this letter at the following address:

---

[2]  As illustrated in this paragraph, your employment at Wells Fargo was not constructively terminated because you were provided a Comparable Position. Further, Wells Fargo did not actually terminate your employment. Rather, I recently learned that you voluntarily terminated your employment at Wells Fargo effective April 4, 2008 further supporting the determination that you are not eligible for severance benefits under Section 4.1 of CIC Plan I.

Plan Administrator
Wells Fargo & Company Salary Continuation Pay Plan
Plan Administrator
C/O Wells Fargo's Corporate Employee Relations Department
MAC N9303-130
608 Second Avenue South, 13th Floor
Minneapolis, MN  55402-1916

Wells Fargo's Executive Vice President and Director of Human Resources is responsible for reviewing requests for review.  As stated in the CIC Plan I, Section 6.5(c),

A request for review must set forth all of the grounds on which it is based, all facts in support of the request and any other matters that the applicant feels are pertinent. The applicant (or his representative) shall have the opportunity to submit (or the [Executive Vice President and Director of Human Resources] may require the applicant to submit) written comments, documents, records, and other information relating to his claim. The applicant (or his representative) shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to his claim. The review shall take into account all comments, documents, records and other information submitted by the applicant (or his representative) relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

You will receive a decision on your request for review within 60 days following the Plan Administrator's receipt of your request for review unless special circumstances require an extension of time.  If an extension of time is required, you will be notified in writing during the initial 60 day period.  *See* CIC Plan I, Section 6.5(d).

If your request for review is denied, you will have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1976, as amended from time to time (ERISA).  *See* CIC Plan I, Section 6.5(f).

Sincerely,

Shelly L. Johnson
Shelly L. Johnson
Employee Relations Consultant
Corporate Employee Relations
On behalf of the Plan Administrator

cc:    Plan Administrator