1  PATRICIA K. GILLETTE (STATE BAR NO. 74461)
   ANDREW R. LIVINGSTON (STATE BAR NO. 148646)
2  GREG J. RICHARDSON (STATE BAR NO. 203788)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
3  The Orrick Building
   405 Howard Street
4  San Francisco, CA 94105-2669
   Telephone:   +1-415-773-5700
5  Facsimile:   +1-415-773-5759
   pgillette@orrick.com
6  alivingston@orrick.com
   grichardson@orrick.com
7
   JOSEPH C. LIBURT (STATE BAR NO. 155507)
8  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
9  Menlo Park, CA 94025-1015
   Telephone:   +1-650-614-7400
10 Facsimile:   +1-650-614-7401
   jliburt@orrick.com
11

12 Attorneys for DEFENDANT
   WELLS FARGO BANK, N.A. (sued as "Wells Fargo Bank")
13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                           SAN JOSE DIVISION

17

18 | PATRICK PIERCE,                      | Case No. CV 08 1554 JF
19 |          Plaintiff,                  | **DEFENDANT WELLS FARGO BANK, N.A.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6);**
20 |     v.                               |
21 | WELLS FARGO BANK, and Does 1-10, inclusive, |
22 |          Defendant.                  |
23 |                                      | Date: June 27, 2008
24 |                                      | Time: 9:30 a.m.
   |                                      | Courtroom: 3, Fifth Floor
25 |                                      | The Honorable Jeremy Fogel

26

27

28

## I. INTRODUCTION

Two briefings into the preemption issue,[1] Wells Fargo is still at a loss as to how Plaintiff contends his state law claims are not related to the ERISA Change In Control ("CIC") plan and thus not preempted. As he himself states in his Opposition, each of his state law claims is premised on an alleged promise that, even if he was offered a "Comparable Position" as defined by the CIC Plan, he nonetheless *"would be entitled to elect severance benefits under GBB's Change In Control Plan if he elected not to take a full time [comparable] position with WFB."* (Opp. Br. at 3 [emphasis added].) This is the same contention he repeats over and over in his Complaint. So, for Plaintiff to say that his state law causes of action, which admittedly seek to enforce alleged representations that he would be entitled to receive *ERISA* benefits, are wholly unrelated to an ERISA plan strains credulity.

The law of ERISA preemption is not so complicated: if Plaintiff is covered under an ERISA Plan, any benefits he seeks pursuant to or related to that Plan are preempted. The primary case Plaintiff cites to support his position, *Miller v. Rite Aid Corp.*, 504 F.3d 1102 (9th Cir. 2007), holds no more and no less. It is true that in *Miller*, the Ninth Circuit held that not all state law claims that refer to ERISA benefits as a measure of damages are preempted. But those instances are rare and occur when the plaintiff was not covered by an ERISA plan – and therefore would never be able to receive any ERISA benefits or pursue any ERISA claim. Here, however, Plaintiff's allegations establish he was covered by an ERISA Plan, the CIC Plan. He also admits the damages he seeks are the same benefits he believed he was "entitled to elect" under the CIC Plan. And while he insists that he does not care whether Wells Fargo or the Plan itself has to pay these benefits to him (Opp. Br. at 1), his lack of interest does not transform the ERISA benefits he seeks into anything other than what they are: ERISA benefits. To paraphrase a well-known proverb, if Plaintiff's state law claims quack like ERISA claims, that is because they are ERISA claims. Dismissal of these claims is warranted.

And that dismissal should be with prejudice, as Plaintiff's continued representations attest.

---

[1] After Wells Fargo brought its Motion to Dismiss, Plaintiff brought a Motion for Remand. The arguments he makes in his opening brief to that motion are nearly identical to the ones he makes in his Opposition to the instant motion. The two briefs are set to be heard at the same hearing.

1

1  The Plan expressly sets forth the conditions under which Plaintiff is eligible for benefits,
2  including if he is *not* offered a "Comparable Position" after a change in control. Plaintiff's state
3  law theories of recovery are all premised on the alleged oral promise that – *even if he was offered*
4  *a "Comparable Position"* – he would be entitled to elect benefits under the Plan. This allegation
5  amounts to an attempted modification of the eligibility for benefits requirements set forth in the
6  Plan. Because such oral modifications are impermissible under ERISA, as a matter of law,
7  Plaintiff's claims can never be viable and should therefore be dismissed with prejudice.

8  **II.    ARGUMENT**

9        In its opening brief, Wells Fargo proffered several bases for dismissing Plaintiff's claims,
10 specifically that: (1) they are preempted by ERISA, (2) Plaintiff has not exhausted these claims,
11 (3) Wells Fargo is not a proper defendant because it is not the ERISA plan, and (4) any ERISA
12 claim Plaintiff would bring would impermissibly be premised on a theory of oral modification. In
13 his Opposition, Plaintiff has focused primarily on whether his claims are preempted by ERISA.
14 Arguing they are not, he concludes that Wells Fargo's arguments that the claims need to be
15 exhausted, brought against the right defendant, and not based on an oral modification are
16 "baseless." In short, Plaintiff does not dispute that *if* his claims are preempted, they should be
17 dismissed on all the grounds set forth in the moving papers. Since Plaintiff concedes these points
18 (as he must), Wells Fargo will spend no time arguing them but instead focus on the arguments
19 actually raised by Plaintiff in Opposition – namely, that his claims are *not* preempted by ERISA.
20 Nothing he argues saves his claims from dismissal.

21        **A.    Plaintiff's "Objections" To Evidence**
22        As a threshold matter, Plaintiff objects that the CIC Plan attached as Exhibit 1 to the
23 Declaration of Greg J. Richardson should be disregarded because it lacks proper foundation and is
24 impermissible extrinsic evidence. Plaintiff's objections are invalid. Plaintiff's brief is notable in
25 that it attempts to distinguish every case cited by Wells Fargo except one, which he fails to cite at
26 all, *Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998), superseded by statute on other grounds as
27 recognized in *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006). In
28 that case, the Ninth Circuit recognized that while normally extrinsic evidence cannot be utilized

2
DEFENDANT WELLS FARGO BANK, N.A.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
(CASE NO. CV 08 1554 JF)

in a Rule 12(b)(6) motion, so that a federal court's subject matter jurisdiction cannot be frustrated by artful pleading, an ERISA plan that is referenced in the complaint (or upon which the complaint relies) may be attached to a motion to dismiss if the parties do not dispute the authenticity of the document. *Id.* at 706.

That is exactly what Wells Fargo did here: Plaintiff's Complaint references no less than 12 times the "Change in Control Pay Plan." (Compl., ¶¶ 1, 6, 7(b), 9, 11, 38(b), 42, 47(b), 50, 55, 60). It specifically describes the Plan:

> At the time that the merger of WFB and GBB was implemented there was in existence a Change in Control Pay Plan (the "CIC Plan") at GBB which provided severance benefits for eligible employees of GBB whose employment was terminated in connection with the merger . . . .

(Compl., ¶6). Wells Fargo attached the CIC Plan that was "in existence" "[a]t the time that merger of WFB and GBB was implemented" "which provided severance benefits for eligible employees," just as Plaintiff alleged. The document establishes Plaintiff's coverage and says it was in effect beginning in September 2007. Thus, it is the document referenced in the Complaint.

Just as required by *Parrino*, Plaintiff has also not challenged the authenticity of the CIC Plan in his objections or argued anywhere that the CIC Plan attached to the Motion is *not* the CIC Plan that was in effect at the time of the merger. Rather, he merely quibbles whether Wells Fargo's counsel laid the proper foundation. This is a specious objection under *Parrino*. Nonetheless, to allay any foundational objections, Wells Fargo is submitting herewith a declaration from Shelly Johnson authenticating that the CIC Plan is the CIC Plan.[2] But since Plaintiff has not challenged that the CIC Plan attached as Exhibit 1 is the operative CIC Plan, the Court may consider it on the Motion to Dismiss. *Parrino*, 443 F.3d at 706.

B. **Plaintiff's Claims Are Preempted By ERISA And Should Be Dismissed.**

Just as he does in his Motion for Remand, Plaintiff spends pages in his Opposition arguing that his state law claims are unrelated to the CIC Plan and are thus not preempted. He correctly

---

[2] Wells Fargo notes that the same Exhibit has been attached to the declaration of Greg J. Richardson in Opposition to Plaintiff's Motion for Remand. Because Wells Fargo now anticipates the same objections to foundation, it requests the Court take judicial notice and consider Johnson's declaration in support of that Opposition, too.

1  asserts that Wells Fargo has not contended (so far at least) that he has pled all the correct
2  elements of his claims, or that he has not expressly pleaded his claims as ERISA claims. (Opp.
3  Br. at 4, 7.) But that Plaintiff has pursued state law claims merely initiates the question of
4  preemption; it does not answer it. As set forth in great detail in Wells Fargo's Opposition to the
5  Motion for Remand, Plaintiff has misread the line of cases he cites for support, most particularly
6  *Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1105-06 (9th Cir. 2007). In that case, the Ninth Circuit
7  recently reiterated that ERISA preempts state law claims whenever a plaintiff seeks ERISA
8  benefits through a state law cause of action, so long as there is an ERISA plan to enforce and the
9  plaintiff is a "participant" or "beneficiary" of the ERISA plan. *Id.* ("ERISA does not preempt the
10  claims of parties who do not have the right to sue under ERISA because they are neither
11  participants in nor beneficiaries of an ERISA plan.") (citing *Curtis v. Nev. Bonding Corp.*, 53
12  F.3d 1023, 1027 (9th Cir. 1995)). Here, Plaintiff's allegations and the terms of the CIC Plan
13  establish all the required elements for preemption.

14          **1.      The CIC Plan Is An ERISA Plan.**

15  Regarding the first requirement for ERISA preemption, Plaintiff does not challenge that
16  GBB's CIC Plan is an ERISA Plan. To the contrary, in his Motion for Remand, he actually states
17  that he "assume[es] for sake of argument, without admitting, that the [CIC Plan] is such a plan."
18  (Pl.'s Mtn. for Remand at 10.) In his Opposition, however, Plaintiff does argue that "the oral
19  agreement alleged by Pierce manifestly did not constitute a 'plan' under ERISA." (Opp. Br. at 9.)
20  In doing so, he refers to cases that say that the mere offer of severance benefits, without more,
21  does not always constitute an ERISA plan. *See, e.g., Fort Halifax Packing Co., Inc. v. Coyne*,
22  482 U.S. 1, 11-12 (1987) (holding that a Maine statute that merely required a fixed sum to every
23  employee in the event of a plant closure did not implicate ERISA because the statute, as drafted,
24  only required companies to pay a "one-time, lump sum payment" with no exercise of discretion
25  to determine eligibility); *Berlanger v. Wyman-Gordon Co.*, 71 F.3d 451, 455 (1st Cir. 1995)
26  (holding that a company offering early retirement to all employees who are a certain age does not
27  require an ERISA plan because eligibility may be determined with no exercise of discretion).
28  Even assuming for the sake of argument that Plaintiff is correct that the alleged oral

representations, *standing alone*, would not constitute an ERISA Plan, this argument puts the cart before the horse. The alleged oral representations do not stand alone, but reference the CIC Plan.[3] So, the initial question to answer is whether the CIC Plan is itself and ERISA plan. As Plaintiff makes no argument in either of his briefs to challenge that the CIC Plan is an ERISA Plan, Wells Fargo assumes he concedes the point.

And concede it he must. As set forth in the opening brief, the terms of the Plan establishes it is an ERISA Plan. ERISA defines an "employee benefit plan" as including a plan established by an employer to provide severance benefits to participants. 29 U.S.C. § 1002(1); *see Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir. 1985) (holding that a plan that guaranteed severance payments was an ERISA plan). And, as Plaintiff alleges, that is exactly what the CIC Plan is: its sole purpose is to provide severance benefits to participants in the event of a change in control. (Compl., ¶ 6; Richardson Dec., Exh. 1 (*see* § 6.5(f), p. 13, referencing ERISA).[4] Thus, because Plaintiff does not challenge the CIC Plan is an ERISA Plan, the first requirement for preemption is met.

### 2. Plaintiff Is A "Participant" Of An ERISA Plan As Defined By ERISA.

The second requirement for ERISA preemption is also met here because Plaintiff is a "participant" in the CIC Plan with standing to sue. ERISA defines a "participant" as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). Here, Plaintiff concedes he was a GBB employee covered by the CIC Plan. (Compl, ¶ 6.) And the very terms of the Plan establish this, as the Plan expressly covers "any full-time employee" of GBB, including Plaintiff. (Richardson Dec., Exh. 1, §§ 3.10, 3.12, pp. 4-5.) He thus satisfies the *Miller* requirement of having a "colorable claim" under ERISA. 504 F.3d at 1106.

---

[3] That these oral representations are not enforceable under ERISA is discussed in Section II.C, *supra*.

[4] There is also an element of discretion by the Plan Administrator required to determine eligibility, unlike the benefit schemes set forth in *Fort Halifax* or *Berlanger*. For instance, under the CIC Plan, the Plan Administrator must determine whether an employee has been offered a "Comparable Position," which requires an analysis of salary and commuting differentials. (Richardson Dec., Exh. 1, § 4.3, p. 7.)

5
DEFENDANT WELLS FARGO BANK, N.A.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
(CASE NO. CV 08 1554 JF)

As set forth in greater detail in Wells Fargo's Opposition to Plaintiff's Motion for Remand, Plaintiff's entire reliance on *Miller* is misplaced – and Wells Fargo incorporates by reference herein that argument since the briefs will be heard at the same time. Without needlessly repeating itself, Wells Fargo notes that *Miller* presented an issue where the parties suing could not ever seek any benefits under ERISA because they were not ERISA beneficiaries. Specifically, the plaintiffs in *Miller* were the children and estate of a former Rite Aid employee who had died. They brought state law claims contending that Rite Aid had promised to have their mother covered at all times by a life insurance policy, but had failed to do so. There was no dispute about whether the employee was covered by an ERISA Plan at the time of her death – she was not – only whether Rite Aid had breached its promise to ensure her coverage. Under these limited set of facts, the Ninth Circuit held that Rite Aid could not contend on the one hand that the decedent was *not* a covered participant under an ERISA policy with no right *under any circumstances* to seek ERISA benefits, and then on the other hand argue that her claims were preempted by ERISA. *Id.* The preemption rule derived from *Miller* is simply that if there can never be any claim pursued under ERISA, ERISA cannot very well preempt a state law claim. *See also Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir. 1985) (ERISA did not preempt state law claim about alleged misrepresentation that plaintiffs would be covered by an ERISA plan by new employer when it was undisputed that plaintiff were never covered by a plan; since plaintiffs could never claim any benefits under ERISA, they were only left with state law claims).

The same result was found by the Sixth Circuit in *Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007), a case that Plaintiff also asserts "*supports* [his] position." (Opp. Br. at 14 [emphasis in original].) There, just as in *Miller* and *Scott*, the court found that promises about what ERISA benefits an employee would receive if he became an employee (and thus a covered participant of an ERISA plan) could be the subject of state law claims. But that holding was again premised on the fact that "at the time the alleged misrepresentation was made, [the plaintiff] was [only] a potential employee. He was not yet a participant or beneficiary under the plan. . . ." 484 F.3d at 860. Notably, the court held that had the plaintiff been a participant of the ERISA plan at the time the alleged misrepresentations were made – as Plaintiff was here – then ERISA

6

would have preempted his claims. *Id.* at 864.

Plaintiff here is not in the same situation as the plaintiffs in the aforementioned cases. He concedes that he was covered by the CIC Plan, and the terms of that Plan state he was. He thus could, under the right circumstances, receive ERISA benefits (for example, if he was not offered a "Comparable Position" after the merger). And Plaintiff is confused when he accuses Wells Fargo of being the "Cheshire Cat" and argues that it cannot take both the position that Plaintiff is not owed benefits and that his claims are preempted.[5] (Opp. Br. at 12.) Disputing whether benefits are *actually* owed is quite different from disputing coverage or whether benefits ever *could be* owed – as was the case in *Miller*.[6] (Indeed, the former is merely the requirement for *every* piece of ERISA litigation, since if there is a concession that benefits are owed, there is nothing left to fight about.) It is the latter dispute that is fatal to a preemption argument. Since neither party here is disputing that Plaintiff was a covered employee of the CIC Plan, the second element for preemption is met.

### 3. Plaintiff Admits He Is Seeking Benefits From An ERISA Plan.

Plaintiff also cannot argue that his state law claims do not seek benefits under the CIC Plan. As set forth in Wells Fargo's opening brief, both the U.S. Supreme Court and the Ninth Circuit (as well as numerous other federal and state courts) have held that state law causes of

---

[5] In reality, it is the Plan Administrator, not Wells Fargo, who makes this determination. On that note, and as anticipated in Wells Fargo's opening brief, Plaintiff suggests that Wells Fargo "is clearly not acting in good faith" because it already told him that he did not qualify for benefits. (Opp. Br. at 3.) Set aside that extrinsic evidence proffered by Plaintiff. As noted in the opening brief, litigation positions taken by parties do not establish that exhausting remedies through the Plan Administrator is futile. *See Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 134 (2nd Cir. 2001) ("Defendants' position in this lawsuit does not establish futility."), citing *Communications Workers of Am. v. AT&T*, 40 F.3d 426, 433 n.1 (D.C. Cir. 1994) ("[A]ctions taken to defend lack of entitlement to benefits cannot establish futility because otherwise the exhaustion doctrine would be 'entirely undermined[d]' as plaintiffs could bypass administrative remedies, file suit and then hope for subsequent events to justify futility claims.'").

[6] That Plaintiff fails to see this distinction is evidenced by his misunderstanding about what Wells Fargo meant in its opening brief when it noted that "Plaintiff was not yet a 'Participant' of the CIC Plan." (Opp. Br. at 11.) Wells Fargo was referring to the term "Participant" as defined by the CIC Plan, which means one who is actually eligible to receive benefits because he was not provided a "Comparable Position." When *Miller* and *Thurman* use the term "participant," they are using the *statutory* term that indicates coverage under an ERISA plan – not whether benefits are actually owed. 29 U.S.C. § 1002(7). The statutory term jibes with the CIC Plan's definition of "employee," which indicates who is covered. It is coverage, not the actual right to benefits, that is salient to the preemption analysis.

action that seek to recover ERISA benefits, including claims for breach of contract, fraud, and misrepresentation – as Plaintiff has pursued here – are all preempted by ERISA. *Pilot Life Ins. Co.*, 481 U.S. at 57 (finding plaintiff's state law breach of contract preempted by ERISA); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000); *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1222 (9th Cir. 2000), *cert. denied* 531 U.S. 992 (2000); *Farr v. U.S. W. Comms., Inc.*, 151 F.3d 908, 913 (9th Cir. 1998), *cert. denied* 528 U.S. 1116 (2000) (finding ERISA preempts state law misrepresentation claims).

Plaintiff attempts to distinguish each of these cases by insisting that in these cases, the plaintiff was actually seeking benefits under an ERISA plan, while he is merely trying to enforce promises "unrelated" to the CIC Plan – namely that agents of GBB and Wells Fargo orally promised him that he could recover under the CIC Plan if he chose not to accept a position at Wells Fargo (even if that position was a "Comparable Position"). Even after twice trying to brief his way around his own allegations in his Complaint, Plaintiff's argument does not pass muster. His theory of recovery is not that any agents of Wells Fargo ever told him, for instance, that they were making an agreement separate from the ERISA Plan or promising benefits unrelated to the Plan. Rather, it is, in his own words – which he himself doubly emphasizes – "*that he was promised [benefits] would be available to him under a plan but [those benefits] did not materialize*. . ." (Opp. Br. at 5 (emphases in original); *see also* Opp. Br. at 3 ("[Plaintiff was allegedly promised that] he would be entitled to elect severance benefits under GBB's Change in Control Plan if he elected not to take a full time position with WFB.").) In short, Plaintiff's own language establishes he believed he would be entitled to benefits under an ERISA plan, and he seeks to recover those benefits. So, he cannot possibly claim his state law theories of recovery are anything but *related* to the CIC Plan. And for this reason, each and every one of Plaintiff's state law claims is preempted and should be dismissed.[7]

---

[7] And, as noted above, Plaintiff does not argue he has yet exhausted any ERISA claim (but is now in the process of doing so), or that the proper defendant to any ERISA suit would be the Plan itself, not Wells Fargo. Thus, the motion to dismiss should be granted on these grounds, as well.

8

### C. Plaintiff's Claims Should Be Dismissed With Prejudice Because They Are Impermissibly Premised On An Oral Modification of An ERISA Plan.

That Plaintiff's state law claims are preempted by ERISA is enough to support dismissal of his claims. Such a dismissal should be with prejudice because, based on Plaintiff's avowed theory of wrong, he cannot amend his complaint to state a viable ERISA claim. As set forth in Wells Fargo's opening brief, ERISA forbids any oral modification of a written ERISA plan. 29 U.S.C. § 1102 (requiring that every employee benefit plan be established and maintained pursuant to a written instrument). For this reason, the Ninth Circuit (along with other courts) has held that oral agreements or modifications cannot be used to contradict or supersede the written terms of an ERISA plan. *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) (citing *Natchwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986) ("A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans. This goal would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements.") (citation omitted)). That is because "[h]avoc would ensue if plans meant different things for different participants, depending on what someone said to them years earlier. Memory is weak compared to the written word, and there is a substantial risk that participants will not correctly recall what was said, will exaggerate (in their favor) what they heard, or will simply prevaricate in order to improve their position. Employers could do little to protect themselves against such claims – which is why ERISA calls for writings. . . . What is more (and perhaps worse), binding the plan's sponsor to the oral advice of its benefits staff might lead the employer to discontinue giving advice, telling participants to read the documents and draw their own conclusions." *Frahm v. Equitable Life Assurance Society*, 137 F.3d 955, 960, 961 (7th Cir. 1998) ("Reliance is a second hurdle for the plaintiffs. In federal law, a person cannot rely on an oral statement, when he has in hand written materials disclosing the truth"). Claims that seek to orally supplement ERISA plans are thus never enforceable.

However, Plaintiff's entire theory of redress, whether under state law or federal law,

hinges upon such an attempt to orally modify the terms of the CIC Plan. In particular, Plaintiff attempts to use alleged oral representations to do away with the "Comparable Position" term of the CIC Plan: as set forth above, Plaintiff has alleged that agents of GBB and Wells Fargo *orally* promised him – in essence – that *even if* Plaintiff were offered a "Comparable Position" after the merger, he would still be "entitled to elect benefits" under the CIC Plan.[8] So while Plaintiff tries to recast these allegations as promises that "supplement" or are "in addition to" the CIC Plan, his actual allegations and statements he makes over and over in his various briefs (not to mention his declaration in support of his Motion for Remand) actually clarify that the alleged promises were to allow him to recover his ERISA benefits notwithstanding the terms of the ERISA Plan itself. That is an alleged oral modification, and one that is never allowed under ERISA. Therefore, each of Plaintiff's claims violates ERISA and should be dismissed with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (Leave to amend a complaint can be denied where the district court "determines that the pleading could not possibly be cured by the allegation of other facts.")

### III. CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Court grant its Motion to Dismiss with prejudice.

Dated: June 13, 2008

PATRICIA K. GILLETTE
JOSEPH C. LIBURT
GREG J. RICHARDSON
Orrick, Herrington & Sutcliffe LLP

_____
GREG J. RICHARDSON
Attorneys for Defendant
WELLS FARGO BANK, N.A.

---

[8] Indeed, Plaintiff again doubly emphasizes language in his brief that does not help him: actually establishing that the alleged promise was to modify the ERISA CIC Plan, Plaintiff insists that "*if the promised benefits were not part of the plan then GBB and WFB **would cause them to be made part of the plan**.*" (Opp. Br. at 11.)