**E-Filed 5/5/09**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

PATRICK PIERCE,

               Plaintiff,

    v.

WELLS FARGO BANK; and DOES 1-20,

               Defendants.

Case Number C 08-1554 JF (HRL)

**ORDER[1] DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**

Re: docket nos. 56 and 58

Plaintiff Patrick Pierce ("Pierce") originally filed the instant action in the Santa Clara Superior Court, seeking severance benefits that his former employers, Greater Bay Bancorp ("GBB") and Wells Fargo Bank ("WFB"), allegedly promised but failed to provide.[2]  WFB removed the case to this Court on March 20, 2008, arguing that Pierce's state-law claims are completely preempted by the Employee Retirement Income Security Act ("ERISA") and therefore displaced by federal law.  On March 27, 2008, WFB filed a motion to dismiss, arguing

---

[1] This disposition is not designated for publication in the official reports.

[2] GBB ceased to exist as a legal entity after its merger with WFB.  As the surviving entity, WFB is named as the party liable in place of GBB for the claims under which GBB allegedly is liable.

1  principally that since all of Pierce's claims are preempted, the complaint by definition contains

2  no viable claims apart from remedies available under ERISA itself.  Pierce filed a motion to

3  remand on April 4, 2008, arguing that removal was improper because ERISA does not

4  completely preempt his state law claims.  By order dated July 18, 2008, the Court explained that

5  Pierce's state-law claims would be preempted if the substance of this action "relates to" an

6  ERISA plan and if Pierce was a "participant" in an ERISA plan at the time he filed the action.

7  The Court determined that both conditions were present and accordingly denied the motion to

8  remand.  In addition, because "Pierce assert[ed] state law claims that [were] preempted by

9  ERISA and at the same time ha[d] not alleged a cognizable claim pursuant to ERISA," the Court

10  dismissed Pierce's complaint.  Order at 6:27-28.  Finding that there was "a reasonable probability

11  that Pierce may be able to state a cognizable claim" under ERISA, the Court granted leave to

12  amend.  *Id*. at 7:1-2.  Pierce subsequently filed two amended complaints, the second of which is

13  now before the Court.

14      As before, WFB has filed a motion to dismiss and Pierce has filed a motion to remand

15  and for attorneys' fees.  WFB argues–once again–that Pierce's claims are preempted by ERISA,

16  while Pierce argues–once again–that this action does not "relate to" an ERISA plan and that he

17  was not a "participant" in such a plan at the time he filed his complaint.  Because the Court in its

18  prior order not only rejected Pierce's legal contentions as to both issues but found that

19  affirmative allegations in the complaint satisfied the relevant criteria for ERISA preemption, the

20  parties' current arguments have a "distinct quality of *déjà vu*."  *City of Monterey v. Del Monte*

21  *Dunes at Monterey, Ltd.*, 526 U.S. 687, 724 (1999) (Scalia, J., concurring).  That quality

22  notwithstanding, the Court has considered carefully the parties' most recent set of arguments, and

23  acknowledges that the questions they present are difficult.  Despite significant fairness concerns,

24  the Court again concludes that Pierce's claims "relate to" an ERISA plan, and that Pierce was a

25  "participant" in that plan at all times relevant to this action.  Accordingly, Pierce's motion to

26  remand will be denied.  In addition, because Pierce still has not pled any claim pursuant to

27  ERISA despite having been given an opportunity to do so, the complaint will be dismissed

28  without leave to amend.

2

**I. BACKGROUND**

Pierce alleges that he was first hired by GBB in 1999, and that by early 2007, he held the position of Senior Vice President and Director of Special Assets.  On or about May 4, 2007, GBB and WFB announced a merger agreement in which WFB would acquire GBB.  Shortly thereafter, GBB replaced its existing "Change of Control Plan" with a modified program ("the CIC Plan" or "the plan") that would provide severance benefits to any employee who was terminated or denied a comparable position as a result of the merger.  The CIC Plan defined "comparable position" as one that provided the same base salary rate as the employee's prior position and did not require the employee to increase the length of his commute by more than thirty-five miles each way.  Pierce understood the CIC Plan to grant severance benefits after the merger regardless of whether or not an employee took a full-time position with WFB.

Pierce alleges that on June 22, 2007, September 10, 2007, and at other times before the merger went into effect, GBB and WFB promised and represented that if Pierce continued to work for WFB after the merger, he: (1) would not be forced to take a position that he did not desire; and (2) would be entitled to severance benefits under GBB's CIC Plan if he elected not to take a full-time position at WFB.  Pierce alleges that acting in reliance on these promises he did not pursue other employment opportunities and continued to work for GBB.  The merger took effect on October 1, 2007.  WFB claims that it met repeatedly with Pierce to discuss a position at WFB after the merger, but that at each meeting Pierce stated that he had no desire to work for WFB.  WFB also claims that it formally offered Pierce a comparable, full-time position on November 1, 2007, but that Pierce instead accepted a temporary position.

In a series of letters to WFB management during the fall of 2007, Pierce asserted that his post-merger position was not of comparable status and that he was entitled to severance benefits under the CIC Plan.  In a letter to Plan Committee members dated February 4, 2008, Pierce formally requested benefits under the CIC Plan.  On the same day, he filed the instant action in state court seeking relief against WFB and GBB for breach of contract, promissory estoppel, fraud, and negligent misrepresentation.  Pierce resigned from WFB on March 24, 2008.  His claim for benefits was denied by the Plan Administrator on April 24, 2008.  The Administrator

3

1    explained that Pierce had been neither actually nor constructively terminated by the merger and

2    thus was not eligible for benefits.  On August 15, 2008, the Administrator rejected Pierce's

3    request for reconsideration of the denial of benefits.

## II. LEGAL STANDARDS

4    **A.    Removal and Remand**

6        Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action if the plaintiff

7    initially could have filed the action in federal court.  *See Ethridge v. Harbor House Restaurant*,

8    861 F.2d 1389, 1393 (9th Cir. 1988).  A party may file an action in federal court if there is

9    diversity of citizenship among the parties or if the action raises a substantial federal question.

10   *Ethridge*, 861 F.2d at 1393.  The party invoking the removal statute bears the burden of

11   establishing federal jurisdiction.  *Id*.  The removal statute is strictly construed against removal.

12   *Id*.  An action therefore should be remanded if there is any doubt as to the existence of federal

13   jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).[3]

14       In the context of ERISA, when a complaint does not assert any federal claims, "the

15   original subject matter jurisdiction required to support removal exists only if ERISA completely

16   preempt[s] any of the state law claims."  *Abraham v. Norcal Waste Systems, Inc.*, 265 F.3d 811,

17   819 (9th Cir. 2001).  "Complete preemption can be invoked only when two conditions are

18   satisfied: (1) ERISA expressly preempts the state law cause of action under 29 U.S.C. § 1144(a)

19   (i.e. "conflict preemption") and (2) that cause of action is encompassed by the scope of the civil

20   enforcement provision of ERISA, 29 U.S.C. § 1132(a) ( i.e. "displacement")."  *Id*. (citing

21

22       [3] WFB incorrectly argues that Pierce's motion to remand is improper because the
     complaint, *as amended*, never was removed from a state court.  As Pierce observes, the removal
23   statute consistently refers to the removal and remand of *cases*, not complaints.  Moreover,
     Pierce's motion to remand is not barred by the thirty-day limit on the filing of motions to remand,
24   as that provision expressly exempts motions to remand for lack of subject matter jurisdiction.
     *See* 28 U.S.C. § 1447(c).  Here, Pierce argues that the Court lacks subject matter jurisdiction
25   because his claims are not completely preempted by ERISA.  *See Harris v. Provident Life and
     Accident Ins. Co.*, 26 F.3d 930, 934 (9th Cir. 1994) (ordering dismissal of potentially "pendent"
26   state-law claims that were not completely preempted by ERISA because "a district court has no
     discretion to retain state law claims when the sole federal claim is dismissed for lack of
27   jurisdiction").
28

Case No. C 08-1554 JF (HRL)
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITHOUT LEAVE TO
AMEND
(JFLC3)

1  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 60 (1987)); *see also Providence Health Plan v.*

2  *McDowell*, 385 F.3d 1168, 1172-73 (9th Cir. 2004).

3  **B.    Dismissal pursuant to Rule 12(b)(6)**

4          A complaint may be dismissed for failure to state a claim upon which relief may be

5  granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under

6  a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.

7  1984).  For purposes of a motion to dismiss, the plaintiff's allegations are taken as true and the

8  court construes the complaint in the light most favorable to the plaintiff.  *SmileCare Dental*

9  *Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  The court's review is

10 limited to the face of the complaint and matters judicially noticeable.  *See* Fed. R. Evid. 201;

11 *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d

12 500, 504 (9th Cir. 1986).  Leave to amend must be granted unless it is absolutely clear that the

13 complaint's deficiencies cannot be cured by amendment.  *See, e.g.*, *Dumas v. Kipp*, 90 F.3d 386,

14 393 (9th Cir. 1996).

15                                    **III. DISCUSSION**

16         ERISA preempts any state-law action or claim that "relates to" an ERISA plan–a

17 principle that the Ninth Circuit has framed in terms of conflict preemption.  However, claims

18 brought by a plaintiff who was not a "participant" in an ERISA plan when the lawsuit was filed

19 will not be preempted so "completely" as to permit removal jurisdiction consistent with the well-

20 pleaded complaint rule.  Thus, even if the plaintiff's claims are "conflict-preempted," the action

21 must be remanded if none of the claims also is "completely preempted."  The rule is no different

22 in this case, notwithstanding this Court's earlier determination that removal was proper.  While a

23 properly removed action ordinarily may be retained pursuant to the supplemental jurisdiction

24 statute even after all federal claims have been dismissed, *see* 28 U.S.C. § 1367; *Harrell v. 20th*

25 *Century Insurance Co.*, 934 F.2d 203, 205 (9th Cir. 1991); *see also Schneider v. TRW, Inc.*, 938

26 F.2d 986, 994-95 (9th Cir. 1991), "pendent jurisdiction is unavailable because a district court has

27 no discretion to retain state law claims when the sole federal claim is dismissed for lack of

28 jurisdiction."  *Harris v. Provident Life and Acc. Ins. Co.*, 26 F.3d 930, 934 (9th Cir. 1994).  In

                                              5

1  sum, for Pierce to prevail, the Court must be satisfied either that his claims do not "relate to" the

2  CIC Plan, or that he was not a "participant" in that plan.  As set forth below, the Court concludes

3  that both conditions still are present.

4        **A.**      **Conflict preemption**

5        ERISA's preemption clause states that the provisions of ERISA "shall supersede any and

6  all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29

7  U.S.C. § 1144(a).  Initially, the Supreme Court "glossed over the 'related to' text of § 1144(a) by

8  portraying the phrase as deliberately expansive." *Trustees of AFTRA Health Fund v. Biondi*, 303

9  F.3d 765, 773 (7th Cir. 2002).  The Court "repeatedly stated that a law 'relate[s] to' a covered

10 employee benefit plan for purposes of § 514(a) [29 U.S.C. § 1144(a)] 'if it has a connection with

11 or reference to such a plan.'" *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125,

12 129-30 (1992) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)).  Nonetheless,

13 ERISA preemption continued to "bedevil" the Court, *Rutledge v. Seyfarth, Shaw, Fairweather &*

14 *Geraldson*, 201 F.3d 1212, 1216 (9th Cir. 2000) (citing *California Div. of Labor Standards v.*

15 *Dillingham*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring)), eventually leading it to recognize

16 that the *Shaw* standard "created as many problems as it solved." *Dishman v. UNUM Life Ins. Co.*

17 *of America*, 269 F.3d 974, 980-81 (9th Cir. 2001).

18       In *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*,

19 the Court changed course, indicating that "[f]or the same reasons that infinite relations cannot be

20 the measure of pre-emption, neither can infinite connections." 514 U.S. 645, 656 (1995).  The

21 Court recognized that "the term 'relate to' cannot be taken 'to extend to the furthest stretch of its

22 indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'"

23 *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (quoting *Travelers*, 514 U.S. at 655).  It instructed

24 that the term must be read in the context of the presumption "that the historic police powers of

25 the States were not to be superseded by [a] Federal Act unless that was the clear and manifest

26 purpose of Congress." *Travelers*, 514 U.S. at 655 (internal quotation marks and citation

27 omitted).  Thus, although ERISA's preemption clause still is considered "deliberately

28 expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), the Court has cautioned

6

1  against "[u]ncritical literalism" in applying the *Shaw* standard, *Travelers*, 514 U.S. at 656, and

2  has emphasized that "[p]re-emption does not occur . . . if the state law has only a tenuous,

3  remote, or peripheral connection with covered plans, as is the case with many laws of general

4  applicability," *id*. at 661 (quoting *District of Columbia v. Greater Washington Bd. of Trade*, 506

5  U.S. 125, 130 n.1 (1992)).  Nonetheless, it remains true that "[a] state law may relate to a benefit

6  plan even if the law 'is not specifically designed to affect such plans, or the effect is only

7  indirect.'"  *Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003, 1007 (9th Cir. 1998) (quoting

8  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138  (1990)).   As a corollary, ERISA still

9  unquestionably preempts any state law claim that is used as an "alternative enforcement

10  mechanism" to obtain what essentially are ERISA benefits.  *Dishman*, 269 F.3d at 982-83.

11        Taking its cue from the Supreme Court, the Ninth Circuit has devised "myriad 'different,

12  though compatible, tests' . . . in [its] elusive quest" to define the scope of ERISA preemption.

13  *Abraham*, 265 F.3d at 820 n.6 (quoting *Rutledge*, 201 F.3d at 1217).  Despite their number and

14  variety, these tests do provide guidance with respect to the proper post-*Travelers* application of

15  *Shaw*.  "In evaluating whether a common law claim has 'reference to' a plan governed by

16  ERISA, the focus is on whether the claim is premised on the existence of an ERISA plan, and

17  whether the existence of the plan is essential to the claim's survival."  *Providence*, 385 F.3d at

18  1172-73 (citing *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.,*

19  *Inc.*, 519 U.S. 316, 324-25 (1997)).  In the pre-*Travelers* era, the Ninth Circuit held that even

20  where a "contract cause of action [arguably] does not 'make specific reference to,'[and is not]

21  'premised on,' the existence of a benefits plan, . . . . [s]o long as [the] underlying theory of the

22  case revolves around the denial of benefits, [the] claim falls under ERISA's far-reaching

23  preemption clause."  *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1131 n.2 (9th Cir.

24  1992) (quoting *Ingersoll-Rand*, 498 U.S. at 140).  Whether or not ERISA preemption continues

25  to sweep so broadly, claims requiring interpretation of ERISA plans still frequently are

26  preempted.  *See, e.g.*, *Bui v. AT&T*, 310 F.3d 1143, 1152 (9th Cir. 2002); *see also infra* Section

27  III.A.1.

28        "In determining whether a claim has a "connection with" an employee benefit plan, courts

7

1   . . . use a relationship test.  Specifically, the emphasis is on the genuine impact that the action has

2   on a relationship governed by ERISA, such as the relationship between the plan and a

3   participant." *Providence*, 385 F.3d at 1172 (citing *Abraham*, 265 F.3d at 820-21 and *Blue Cross*

4   *of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1052-53 (9th Cir. 1999)).

5   "A state law claim is preempted if it 'encroaches on the relationships regulated by ERISA.'"

6   *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1358 (9th Cir. 1997)

7   (quoting *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1522 (9th Cir. 1993)).  As a

8   limited exception to ERISA's expansive preemptive effect, the Ninth Circuit has held that the

9   statute does not preempt regulation of those relationships "where a plan operates like any other

10  commercial entity–for instance, the relationship between the plan *and its own employees*, or the

11  plan and its insurers or creditors, or the plan and the landlords from whom it leases its office

12  space.'" *Abraham*, 265 F.3d at 822 (emphasis added) (quoting *Castonguay*, 984 F.2d at

13  1521-22).  However, core "ERISA-governed relationships," *Geweke*, 130 F.3d at 1358, such as

14  the relationship between a plan participant and the plan's sponsor, are subject to preemption.

15          As he did in the previous round of motions, Pierce contends that he "*does not by this*

16  *action seek to enforce the payment of benefits under any Change in Control Plan.*"  Opp. to

17  MTD, at 4:11-12 (emphasis in original).  He argues therefore that his claims do not "relate" to

18  the CIC Plan.  In its prior order, the Court observed that Pierce's factual allegations directly

19  contradicted these arguments.  The Court took note in particular of Pierce's claim that WFB had

20  refused to pay benefits "under the Change in Control Pay Plan," and of his request for equitable

21  relief in the form of enforcing the provisions of the Plan.  Order at 5:28-6:9 (citing Complaint ¶¶

22  1, 7, 29 & 36).  Pierce has excised these allegations from the Second Amended Complaint

23  ("SAC"), clarifying that he seeks only damages based on WFB's and GBB's oral promises.  Yet,

24  as explained below, regardless of whether Pierce is seeking actual benefits under the Plan or

25  "benefits of the type and amount" set forth in the Plan, his claims continue impermissibly to

26  relate to the plan.

27          **1. Forbidden reference**

28          Pierce claims that GBB and WFB "promise[d] and represent[ed] to [him] that if he

8

1   continued to work for GBB through the acquisition, after the effective date of the acquisition

2   WFB would not force him to accept a position at WFB, but would permit him to instead elect to

3   receive severance benefits of the type and amount specified in the Change in Control Pay Plan

4   that had been established by GBB."  SAC ¶ 1.  Without "reference to" the Plan, Pierce's claim

5   for relief is incomplete.  Indeed, Pierce consistently has alleged an entitlement to "severance

6   benefits . . . *includ[ing] but . . . not limited to* an amount equivalent to twelve months pay at the

7   rate at which he was being compensated at the time of ceasing work, *plus a bonus and other*

8   *benefits*."  SAC § 9 (emphasis added); *see also* First Amended Complaint ¶ 9; Complaint ¶ 6.

9   Thus, beyond requiring a "reference to" the Plan, it is impossible even to ascertain the benefits to

10  which Pierce allegedly is entitled without impermissibly *interpreting* the Plan.  *See, e.g.*, *Bui*, 310

11  F.3d at 1152 ("ERISA preempts . . . contract claims . . . . [that] do not merely reference [an]

12  ERISA plan . . . [but] require its construction."); *Biondi*, 303 F.3d at 780 ("ERISA preempts a

13  state law claim if the claim requires the court to interpret or apply the terms of an employee

14  benefit plan." (quotation marks and citation omitted)); *cf. Providence*, 385 F.3d at 1172

15  (declining to find preemption because "[a]djudication of [plaintiff's] claim does not require

16  interpreting the plan or dictate any sort of distribution of benefits."); *Blue Cross of Cal.*, 187 F.3d

17  at 1053-54 (holding action for reimbursement between insurers and medical providers not

18  preempted, in part because the claims did not require construction of the subject plan's terms).

19       Pierce's claims are similar to those which the First Circuit held preempted in *Carlo v.*

20  *Reed Rolled Thread Die Co.*, 49 F.3d 790 (1st Cir. 1995).  There, the plaintiffs alleged under

21  state law that their employer had misrepresented the availability of certain ERISA retirement

22  benefits.  *Id.* at 793.  They

> argue[d] that their claims for misrepresentation [were] so remotely related to the
> ERP that, for the purposes of ERISA preemption, they d[id] not relate to it. They
> allege[d] that they [were] not seeking coverage under the ERP, but rather damages
> sustained as a result of [employer] Reed's alleged misrepresentation concerning
> the extent of [plaintiff] Carlos' retirement benefits under the ERP. They
> maintain[ed], therefore, that the court's inquiry w[ould] not necessarily be
> directed to the ERP.

27  *Id*.  The First Circuit held that the claims "relate[d] to" the subject plan because they referred to

28  it, and that the reference was not merely "fortuit[ous]," *id*. at 793:

9

1

2

[I]f the Carlos were successful in their suit, the damages would consist in part of
the extra pension benefits which Reed allegedly promised him.  To compute these
damages would require the court to refer to the ERP as well as the
misrepresentations allegedly made by Reed.  Thus, part of the damages to which
the Carlos claim entitlement ultimately depends on an analysis of the ERP. To
disregard this as a measurement of their damages would force the court to
speculate on the amount of damages.

3

4

5   *Id*. at 794; *see also Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 51-54 (1st Cir. 2000) (holding

6   state-law contract claim preempted by ERISA on the ground, inter alia, that "Hampers calculates

7   the amount of his alleged damages by reference to the [ERISA plan]"); *Degnan v. Publicker*

8   *Indus., Inc.*, 83 F.3d 27 (1st Cir. 1996) (affirming preemption-based dismissal of state-law

9   misrepresentation claims against former employer who allegedly breached promises it made

10  regarding plaintiff's retirement benefits).

11          Attempting to distinguish his claims from those at issue in the foregoing cases, Pierce

12  notes that merely "referencing the existence of a benefit plan in a state law claim–without

13  more–does not" result in ERISA preemption.  *Roach v. Mail Handlers Ben. Plan*, 298 F.3d 847,

14  851 (9th Cir. 2002).  Pierce is correct that under limited circumstances, where "[t]he very thrust

15  of [the plaintiff's] claim is that he did not participate in the plan because he was misled," a

16  plaintiff may be able to "receive specific damages equal to a benefit share under a plan."

17  *Freeman v. Jacques Orthopaedic and Joint Implant Surgery Med. Group, Inc.*, 721 F.2d 654,

18  655-56 (9th Cir. 1983); *see also Martori Bros. Distributors v. James-Massengale*, 781 F.2d

19  1349, 1353 (9th Cir. 1986) (permitting reference to ERISA plan to calculate damages where the

20  employees never became participants due to defendants' unfair labor practices)[4]; *Scott v. Gulf Oil*

21  *Co.*, 754 F.2d 1499 (9th Cir. 1985); *cf. Olson v. General Dynamics Corp.*  960 F.2d 1418, 1422

22  (9th Cir. 1991).  Similarly, the Sixth Circuit has held that "where the requested remedy refers to

23  the plan only for the purpose of defining 'specific, ascertainable damages,' . . . claims are not

24  preempted."  *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 862 (6th Cir. 2007) (citing *Marks v.*

25  *Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003)).

26

27          [4] This aspect of the *Martori* holding unambiguously survives subsequent Ninth Circuit
criticism of the opinion's "narrow view of preemption."  *See Olson v. General Dynamics Corp.*,
960 F.2d 1418, 1422 & n.2 (9th Cir. 1991).

28

10

1    The foregoing cases, however, do not provide courts with a license freely to examine or

2    construe ERISA plans as a convenient measure of damages in "run-of-the-mill" tort or contract

3    claims.  Rather, they merely reinforce the principle that state-law claims "lie outside the bounds

4    of the ERISA 'relates to' standard [when the plaintiff] ha[s] [no] existing ties to the ERISA

5    plan." *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1009 (9th Cir. 1995).  The critical

6    distinction is whether the Plaintiff was a participant in the subject ERISA plan at the time the

7    alleged misrepresentation was made.[5]  In *Thurman*, for example, the Sixth Circuit permitted

8    "reference to" an ERISA plan "for the purpose of defining specific, ascertainable damages" *only*

9    after determining that the claims would not serve as an "alternative enforcement mechanism."

10   484 F.3d at 861-62.  In assessing whether Thurman's claims constituted an alternative

11   enforcement mechanism, the Sixth Circuit explained that "Congress did not intend . . . for

12   ERISA to preempt traditional state-based laws of general applicability that do not implicate the

13   relations among the traditional ERISA plan entities," and that because "*Thurman was not a*

14   *participant in the plan when the misrepresentation was made*[,] . . . Pfizer's recruiting manager

15   was not subject to any ERISA duties with respect to Thurman when the promise was made." *Id.*

16   at 861 (emphasis added).  Only after concluding that Thurman's claims escaped the "wide net"

17   cast by the category of alternative enforcement mechanisms–specifically because Thurman

18   lacked an ERISA-governed relationship with his employer at the time of the alleged

19   misrepresentations–did the court proceed to consider whether Thurman might be allowed to

20   assert claims that "referenced" the subject plan for the purpose of specifying damages.  *Id.* at

21   861-62.

22       In the instant case, even assuming that Pierce's own employment-related actions already

23   had destroyed his "participant" status as of the filing of this lawsuit by eliminating any "colorable

24   claim" he might have had to plan benefits, the allegedly fraudulent promises by WFB and GBB

25   predated Pierce's purported loss of participant status.  Thus, at the time the representations were

26

27      [5] This inquiry is distinct from the issue of whether Pierce's claims fall within ERISA's
     civil enforcement provision.  The latter issue turns on Pierce's participant status at the time he
28   filed this action.  *See infra* Section III.B.

Case No. C 08-1554 JF (HRL)
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITHOUT LEAVE TO
AMEND
(JFLC3)

made, Pierce was an employee who would have become eligible for benefits had he been

terminated either actually or constructively through the merger.[6]  As explained in greater detail

below, Pierce need only have had a "colorable claim that . . . eligibility requirements w[ould] be

fulfilled in the future."  *Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 117-18 (1989).

Because Pierce had such a claim at the time the alleged misrepresentations were made and

therefore was a participant, he cannot rely on the circumscribed rule reflected in *Thurman* and

*Freeman* that permits reference to an ERISA plan as a measure of damages.

### 2. Forbidden connection

The converse of the principles underlying *Thurman* and similar Ninth Circuit cases such

as *Freeman* and *Scott* is that a promise or representation made by an ERISA employer to a then-

current participant in an ERISA plan impermissibly encroaches on the relationships between

those "traditional ERISA entities," giving rise to a forbidden "connection with" an ERISA plan.

*See The Meadows*, 47 F.3d at 1009 (noting that the "traditional ERISA entities" include "the

employer, the plan and its fiduciaries, and the participants and beneficiaries"); *see also Geweke*,

130 F.3d at 1358 ("[T]he key issue is whether the parties' relationships are ERISA-governed

relationships."); *Hampers*, 202 F.3d at 54 (holding state-law contract claim preempted by ERISA

on the ground, inter alia, that "[employer] Grace's decision to deny [plaintiff] Hampers

---

[6] Pierce states that the alleged misrepresentations occurred "[a]t various times subsequent to the annoucement of GBB's acquisition by WFB, but before the implementation of the merger on October 1, 2007."  Pierce Decl., ¶ 5.  As defined *infra* in Section III.B, Pierce was a participant in GBB's plan, which had been established in 1998, amended and restated in 2001, again amended and restated effective January 1, 2005, and finally amended and restated effective September 28, 2007.  Whether or not Pierce ever could have become eligible for benefits under the plan after its amendment on September 28, 2007–when its applicability with respect to severance benefits was limited to certain employees, not including Pierce, who appeared in an appendix to the plan–Pierce was an employee covered by the plan, in that he was eligible to receive severance benefits if he was terminated actually or constructively in connection with the merger.  Indeed, when Pierce submitted a request for benefits under the two versions of the plan that preceded the September 2007 amendment, the CIC Plan Administrator explicitly acknowledged that Pierce might well have been eligible for benefits, but that he had been offered a "comparable position" at Wells Fargo and therefore was not eligible.  *See* Pierce Decl., Exs. E-G (attaching correspondence between Pierce and CIC Plan officers).

1  participation rights in the ERISA-regulated plan–the conduct at issue in the state-law

2  claim–resulted from a decision made by Grace in its capacity as an ERISA employer").  Far from

3  implicating only a relationship "where a plan operates . . . like any other commercial entity,"

4  *Castonguay*, 984 F.2d at 1521-22, the relationship between Pierce (an ERISA-covered employee,

5  *see supra*) and the sponsor of the Plan is a quintessentially "ERISA-governed" relationship.  *Cf.*

6  *Geweke*, 130 F.3d at 1358; *Abraham*, 265 F.3d at 822.  Because Pierce was a participant in the

7  CIC Plan at the time the alleged misrepresentation was made, his claims independently have a

8  "connection with" that plan.

9        Recalling his argument that a "mere reference" to a plan does not trigger ERISA

10  preemption, Pierce also observes that "[p]re-emption does not occur . . . if the state law has only

11  a tenuous, remote, or peripheral connection with covered plans."  *Dishman*, 269 F.3d at 984

12  (quoting *Travelers*, 514 U.S. at 661).  While Pierce accurately states the law on this point, courts

13  repeatedly have found that claims such as Pierce's bear more than a "remote or tenuous"

14  relationship with a plan.  *See Carlo*, 49 F.3d at 793 (rejecting argument that misrepresentation

15  and fraud claims are not preempted because "the mere fortuity that the misrepresentation

16  involved pension benefits is insufficient to cause the 'axe of preemption to fall.'" (quoting

17  *Greenblatt v. Budd Co.*, 666 F. Supp. 735, 742 (E.D. Pa. 1987)); *see also Pohl v. Nat'l Benefits*

18  *Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir. 1992) (preempting negligent misrepresentation

19  claim based on defendant's assurances that it would cover plaintiff's medical expenses); *Cefalu*

20  *v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989) (preempting misrepresentation claim

21  based on employer's assurance that plaintiff's retirement benefits would be equivalent under two

22  alternative employment options); *Straub v. W. Union Tel. Co.*, 851 F.2d 1262 (10th Cir. 1988)

23  (preempting misrepresentation claim based on assurances that employee's pension benefits

24  would be increased if he accepted transfer to subsidiary company owned by employer); *Anderson*

25  *v. John Morrell & Co.*, 830 F.2d 872 (8th Cir. 1987) (preempting contract claim based on

26  employer's promise that employee's fringe benefits as a member of management would be

27  equivalent to those he would have received had he remained a union member).

28

Case No. C 08-1554 JF (HRL)
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND
(JFLC3)

1

2      **3. Alternative enforcement mechanism**[7]

3           Pierce's claims also relate to the CIC Plan because they amount to an "alternative

4      enforcement mechanism."  In the context of claims *under* ERISA, courts long have held that

5      "oral agreements or modifications cannot be used to contradict or supersede the written terms of

6      an ERISA plan."  *Richardson v. Pension Plan of Bethlehem Steel Corp*., 112 F.3d 982, 986 n.2

7      (9th Cir. 1997); *see also Depenbrock v. Cigna Corp*., 389 F.3d 78, 83 (3d Cir. 2004); *Pizlo v.*

8      *Bethlehem Steel Corp*., 884 F.2d 116, 120 (4th Cir. 1989); *Degan v. Ford Motor Co.*, 869 F.2d

9      889, 895 (5th Cir. 1989); *Musto v. Am. Gen. Corp*., 861 F.2d 897, 910 (6th Cir. 1988); *Moore v.*

10     *Metro. Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988); *Nachwalter v. Christie*, 805 F.2d 956,

11     960 (11th Cir. 1986).  For example, in addressing whether claims based on oral promises could

12     be brought within ERISA's civil enforcement provision, the court in *Williams v. Caterpillar,*

13     *Inc.*, 720 F. Supp. 148 (N.D. Cal. 1989), *aff'd*, 944 F.2d 658 (9th Cir. 1991), explained:

> Plaintiffs are clearly claiming for relief which they are not due under the
> contractual terms of their plan, relief which ERISA will therefore not supply.
> They ask for what was promised orally, not that which was bargained for
> collectively. Plaintiffs themselves refer to these promises as "misrepresentations"
> of what the plan provided.

14     *Id*. at 151.  The Court rejected the plaintiffs' arguments, quoting the following passage from the

15     Eleventh Circuit's decision in *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir. 1986):

> A central policy goal of ERISA is to protect the interests of employees and their
> beneficiaries in employee benefit plans. This goal would be undermined if we
> permitted oral modifications of ERISA plans because employees would be unable
> to rely on these plans if their expected retirement benefits could be radically

---

[7] It is not clear whether the prohibition on "alternative enforcement mechanisms" pertains exclusively to one or the other of the *Shaw* categories.  *Compare Biondi*, 303 F.3d at 775 ("[A] state law can be said to have a 'connection with' or 'reference to' employee benefit plans . . . when it . . . provides an alternative enforcement mechanism to ERISA." (citing *Travelers*, 514 U.S. at 658)), *with Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Varco*, 338 F.3d 680, 689 (7th Cir. 2003) ("The requisite connection exists under 514(a) if a law mandates employee benefit structures or their administration or provides alternative enforcement mechanisms to ERISA." (citing *Travelers*, 514 U.S. at 658))*, and Plumbing Industry Bd., Plumbing Local Union No. 1 v. Howell Co., Inc*., 126 F.3d 61, 67 (2d Cir. 1997) ("[A] state law is preempted even though it does not refer to ERISA or ERISA plans if it has a clear 'connection with' a plan in the sense that it . . . 'provid[es] alternative enforcement mechanisms.'" (citing *Travelers*, 514 U.S. at 658)).  The distinction does not seem particularly important.

14

1   affected by funds dispersed to other employees pursuant to oral agreements. This
2   problem would be exacerbated by the fact that these oral agreements often would
    be made many years before any attempt to enforce them.

3   *Id*. at 151-52 (quoting *Christie*, 805 F.2d at 960).  Similarly, in *Singer v. Black & Decker Corp.*,

4   964 F.2d 1449 (4th Cir. 1992), a concurring judge stressed that

5       if employer obligations could be casually created outside the written plan, a
6       substantial disincentive to offering such plans would arise since employers would
        be potentially exposed to massive future liabilities for which they could not
        confidently plan.  This would undercut the public interest in encouraging
7       employers to offer these plans.  Finally, allowing informal modifications would
        invite costly, litigious evidentiary disputes over what "promises" or
8       "representations" were or were not made.

9   *Id*. at 1454 (Wilkinson, J., concurring).

10      Pierce is attempting to accomplish what ERISA forbids.  He claims to be seeking

11  "benefits of the type and amount specified in the Change in Control Pay Plan," SAC ¶ 1, but his

12  attempted distinction between such "damages" and actual benefits payable under the employer's

13  comprehensive ERISA plan does not hold.  Courts must "look beyond the face of the complaint

14  and determine the real nature of the claim regardless of plaintiff's characterization." *Hampers*,

15  202 F.3d at 51 (internal quotation marks, citations, and ellipses omitted).  As in *Pohl*, *supra*,

16  although Pierce is "not seeking to enlarge [his ERISA plan] coverage as such[,] . . . any money

17  [he] obtained from this suit would be functionally a benefit to which the written terms of the[]

18  plan do not entitle [him].  This type of end run is regularly rebuffed."  956 F.2d at 128.[8]

19  **B.   Displacement preemption**

20      "Pursuant to the terms of [§§ 1132(a)(2) & (a)(3)of ERISA], '[p]articipants . . . are

21  authorized to bring actions for appropriate relief for breach of fiduciary duty or for injunctions or

22  to obtain other appropriate equitable relief to redress an ERISA violation or to enforce the terms

23

24      [8] It is also worth noting that Pierce bases his state-law claims on the same alleged conduct
25  that supported his requests for ERISA benefits.  Specifically, on the same day that Pierce filed
    this action, he submitted a claim for benefits under the CIC Plan based in part on GBB's and
26  WFB's allegedly false promises.  In *Hampers*, the First Circuit held that such factual
    commonality between an ERISA claim and a state-law claim for misrepresentation "suggests that
27  the state law claim is an alternative enforcement mechanism for obtaining ERISA benefits."  202
28  F.3d at 52.

15

1   of the plan or the provisions of ERISA.'" *Abraham*, 265 F.3d at 824 (quoting *Toumajian v.*

2   *Frailey*, 135 F.3d 648, 656 (9th Cir. 1998)).  State-law claims falling within those provisions are

3   preempted completely by ERISA.  *Id.*  Here, Pierce argues that he was not a "participant" in the

4   CIC Plan.  ERISA defines a "participant" in an ERISA plan as

5           any employee or former employee of an employer, or any member or former
            member of an employee organization, who is or may become eligible to receive a
6           benefit of any type from an employee benefit plan which covers employees of
            such employer or members of such organization, or whose beneficiaries may be
7           eligible to receive any such benefit.

8   29 U.S.C. § 1002(7).  The Supreme Court has interpreted this language to include an employee

9   currently in a covered position or one who has a "colorable claim that (1) he or she will prevail in

10  a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone*

11  *Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 117-18 (1989) (internal citations omitted).  The term

12  "participant" therefore refers to potential coverage under an ERISA plan and not an actual right

13  to benefits.  The determination of whether an employee is a "participant" in an ERISA plan is

14  made "as of the time he filed his complaint." *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026,

15  1038-39 (9th Cir. 2006) (citing *McBride v. PLM Int'l, Inc.*, 179 F.3d 737, 749-50 (9th

16  Cir.1999)).[9]

17         Pierce argues that he was not a participant at the time he filed this action because his

18  refusal to accept a comparable, full-time position with WFB eliminated any "colorable claim" he

19  might have had to benefits under the CIC Plan.  It is undisputed that Pierce was an employee who

20  would have become eligible for benefits had he been terminated either actually or constructively

21  through the merger.  This Court previously held that Pierce must have had a colorable claim to

22  benefits since, in addition to filing this lawsuit, Pierce submitted a claim for benefits under the

23  CIC Plan.  Order at 4:23-25 ("[I]f Pierce did not believe at some point that he was covered by the

24  _____

25         [9] Pierce argues that his "participant" status should be reevaluated based on the filing of
    his second amended complaint, but Ninth Circuit case law makes clear that his status must be
26  evaluated as of the time the lawsuit was filed, and that it may not thereafter change.  *See, e.g.*,
    *Schultz v. PLM Intern., Inc.*, 127 F.3d 1139, 1140 (9th Cir. 1997); *Crotty v. Cook*, 121 F.3d 541,
27  545 (9th Cir. 1997) (holding that a plaintiff "who had standing at the time an ERISA lawsuit was
    filed [does not lose it] by accepting payment of vested benefits during the litigation").
28

                                                  16

1   CIC Program, he would not have filed a claim for benefits under the Plan or disputed the Plan

2   Administrator's findings."). The Court also observed that "disputing whether benefits are

3   *actually* owed is quite different from disputing coverage or whether benefits ever *could be*

4   *owed*." *Id*. at 4:21-22. Finally, in a related discussion, the Court rejected Pierce's reliance on

5   *Miller v. RiteAid* for the proposition that his purported lack of a colorable claim at the time he

6   filed his lawsuit eliminated his "participant" status. *Id*. at 5:1-10.

7            While the Court was correct in its earlier conclusion that Pierce was a "participant" in the

8   CIC Plan when this action was filed, its discussion appeared to endorse WFB's unsupported

9   contention that mere "coverage" under a plan will satisfy the "colorable claim" requirement.

10  Under *Firestone*, a former employee is a "participant" entitled to plan information *only* if the

11  claimant has a "reasonable expectation of returning to covered employment" or "a colorable

12  claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will

13  be fulfilled in the future." *Firestone*, 489 U.S. at 117-18 (quotation omitted). At least as of the

14  time Pierce filed this lawsuit, the only potentially applicable *Firestone* category was that which

15  applies to former employees who have a colorable claim that they will prevail in a suit for

16  benefits. While the requirement is a generous one, it appears on its face to refer to something

17  more than mere "coverage" under a plan: the putative claims must have some semblance of

18  plausibility under the particular circumstances at hand.

19           *Miller v. RiteAid* does not answer the question of whether the colorable claim requirement

20  is coextensive with coverage under a plan. In *Miller*, the Ninth Circuit held that state-law claims

21  brought by the children of a deceased RiteAid employee were not preempted by ERISA because

22  the employee had no "colorable claim" to benefits under any ERISA plan. 504 F.3d at 1105-06.

23  The plaintiffs in *Miller* claimed that RiteAid had breached a promised to place their mother

24  under coverage of the subject plan. The *Miller* Court refused to hold the plaintiffs' claims

25  preempted because the decedent was *not covered* by the ERISA plan. *Id*. at 1107-08. The plan

26  categorically excluded employees who, like the decedent, could not satisfy an "active at work"

27  requirement. Because the decedent thus was not part of any plan, ERISA did not prevent the

28  recovery of damages measured by the benefits she would have received under the plan had she

                                                      17

1    been made a member.  *Id.*

2          In holding that "ERISA does not preempt the claims of parties who do not have the right

3    to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA plan,"

4    *id.* at 1105, *Miller* appears merely to recognize the long-established "negative" principle that

5    claims by a plaintiff with *no* coverage under a plan do *not* fall within ERISA's civil enforcement

6    provisions.  *See id.* at 1108 ("If Miller was never eligible for coverage under the Standard plan

7    she could not have a colorable claim to benefits under that plan."); *The Meadows*, 47 F.3d at

8    1009 (holding that state-law claims "l[ay] outside the bounds of the ERISA 'relates to' standard

9    *because neither [claimant] had any existing ties to the ERISA plan*" at the relevant time); *Harris*,

10   26 F.3d at 933-34 (holding that employee's claim of fraudulent inducement not to purchase

11   ERISA benefits was not preempted because, "for whatever . . . reason, *he did not participate*").

12   It is far from apparent that *Miller* requires automatic preemption of the claims of any employee

13   who *is* facially "covered" by the terms of a plan.

14         Without deciding whether the "colorable claim" requirement is coextensive with plan

15   "coverage," here Pierce plainly had a colorable claim as defined in the case law.  The Fourth

16   Circuit has noted that the "requirement that a claim be colorable 'is not a stringent one' and is

17   satisfied if the claim is 'arguable and nonfrivolous.'"  *Sedlack v. Braswell Services Group, Inc*.,

18   134 F.3d 219, 226 (4th Cir. 1998) (citation omitted).  Unlike the plaintiffs in *Miller*, Pierce was

19   at least "covered" by the terms of one or more versions of the CIC Plan.  Although the final set of

20   amendments to the plan appears to have eliminated his coverage, Pierce, who was not aware of

21   the amendment, made a number of factual arguments for benefits under the terms of the earlier

22   plans.  For example, Pierce disputed whether the new position offered to him was "comparable"

23   to his former position.  Importantly, he also disputed the ability of the Plan Administrator to

24   diminish employee coverage under the plan by amending it unilaterally.  While rejecting Pierce's

25   claims, the Plan Administrator provided a thorough initial discussion of the applicable facts and

26   their relevance under the terms of the plan.  When Pierce sought reconsideration of the denial of

27   benefits, the Administrator provided an even more detailed explanation of why Pierce did not in

28   fact satisfy the requirements of the plan.  Pierce's theories of an entitlement to benefits were at

18

1   least "arguable and non-frivolous," and therefore were "colorable."  Accordingly, Pierce was a

2   "participant" in an ERISA-governed plan at the time he filed this action, and federal question

3   jurisdiction over his claims exists.

4                               **III. CONCLUSION**

5        Pierce's claims "relate[] to" the CIC Plan, and Pierce was a participant in the plan with a

6   colorable claim to benefits thereunder.  Accordingly, ERISA preempts Pierce's state-law claims

7   so completely as to "displace" them.  That conclusion once again requires denial of Pierce's

8   motion to remand.  Moreover, because Pierce continues to assert only state law claims that are

9   preempted by ERISA, and at the same time has not alleged a cognizable claim pursuant to

10   ERISA, the complaint will be dismissed.

11        In assessing whether Pierce once again should be given leave to amend, the Court must

12   consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to

13   cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility

14   of the proposed amendment." *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052

15   (9th Cir. 2001) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.

16   1989)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (providing factors constraining

17   district court's discretion to deny leave to amend).  In his last complaint and associated motions,

18   Pierce alleged only state-law claims and argued that those claims were not preempted by ERISA.

19   The Court rejected Pierce's arguments and dismissed the claims.  In the SAC, and in the instant

20   motion to remand, Pierce makes largely the same arguments and still alleges no claims pursuant

21   to ERISA.  Pierce thus has "repeated[ly] fail[ed] to cure deficiencies" identified by the Court.

22   *SmithKline Beecham*, 245 F.3d at 1052.  That failure, while sufficient in itself to justify the

23   denial of leave to amend under the circumstances, also suggests that amendment would be futile.

24   *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (explaining that the *Foman* factors are

25   "not given equal weight . . . , [and that] futility of amendment can, by itself, justify the denial of .

26

27

28

Case No. C 08-1554 JF (HRL)
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITHOUT LEAVE TO
AMEND
(JFLC3)

1  . . leave to amend").  Accordingly, dismissal will be without leave to amend.[10]

2          The Court is disturbed by the result it feels legally compelled to reach in this case.

3  Without expressing any opinion as to the merits of Pierce's underlying state-law claims, it seems

4  unfair that ERISA should immunize Pierce's employer for false promises it allegedly made with

5  respect to the employment and benefit options that Pierce would enjoy upon consummation of

6  the merger of GBB and WFB.  This unfairness recalls Judge Reinhardt's concurrence in *Olson v.*

7  *General Dynamics Corporation*, 960 F.2d 1418 (9th Cir. 1991), in which the Ninth Circuit held

8  that the plaintiff employee's state-law claims of fraud and misrepresentation were preempted by

9  ERISA.  Judge Reinhardt observed that

10          [e]ven if the defendants defrauded Olson and induced him to accept employment
           by falsely representing that he would receive pension benefits equal to those he
11          previously enjoyed, Olson may not assert the state cause of action he would have
           been entitled to plead prior to the enactment of ERISA.  Because of the passage of
12          ERISA, Olson is left without a remedy.  Unfortunately, his fate is not unique. . . .
           As the court's decision in this case illustrates, . . . a statute designed to safeguard
13          employee retirement benefits has, all too frequently, been used to deprive
           employees of rights they previously enjoyed under state law while failing to
14          provide any comparable federal remedy.

15  *Id*. at 1423 (Reinhardt, J., concurring).

16          It may be argued in response that "employees . . . receive the many protections of ERISA

17  in exchange for certain rights to sue under previous federal and state law[,] [and that] Congress

18  has decided that they are better off for the bargain."  *Caterpillar*, 720 F. Supp. at 152.  Thus,

19  "[w]hatever injustices this scheme may tolerate in isolated instances are more than compensated

20  by the general security provided to pension rights under ERISA."  *Id*.  In *Caterpiller*, for

21  example, any fairness concerns the court may have had were allayed by the fact that the

22  "plaintiffs themselves [already were] enjoying the fruits of rights which Caterpillar could not . . .

23  divest."  *Id*.  In the instant case, however, the Plan Administrator appears to have had the

24  "unilateral authority to amend or terminate" the CIC Plan.  *See* Letter from CIC Plan

25  Administrator to Pierce, dated August 15, 2008, Pierce Decl., Ex. G, at 2.  Indeed, WFB

26

27          _____

28          [10] Because Pierce has not prevailed on any motion, he is not entitled to an award of
    attorneys' fees.

                                                    20

1   exercised that authority on multiple occasions, including only days before the merger when it

2   again restricted the Plan's coverage.  *See id*. at 1.

3        Despite the lack of benefit security that the Plan appears to have provided employees like

4   Pierce, its existence triggers the still-potent preemptive force of ERISA.  At least under these

5   circumstances, this Court largely agrees that the widespread use of "a statute whose clear purpose

6   was to benefit employees . . . as shield to protect employers from any deceptive and wrongful

7   acts they may have committed against their employees is an irony [that is] unacceptable as a

8   governing principle of law."  *Pace v. Signal Tech. Corp*., 417 Mass. 154, 160, 628 N.E.2d 20, 24

9   (1994).  While it is not inconceivable that Pierce's claims could be held to survive ERISA

10  preemption in light of the revisionist guidance of *Travelers*, numerous appellate

11  decisions–including several which were decided before *Travelers* but which are not so clearly

12  "poisoned" by earlier preemptive expansionism as to be questioned as sound authority[11]–appear

13  to preclude such a result.

14

15  **IT IS SO ORDERED**

16

17  DATED: 5/5/09

18                                          _____

19                                          JEREMY FOGEL
                                            United States District Judge

20

21

22

23

24

25

26        [11] *Cf. Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 719 (2d Cir. 1993) (rejecting reliance on
    analysis in previous panel opinion that was "poisoned" by views since discredited by the
27  Supreme Court), *rev'd sub nom. N.Y. State Conference of Blue Cross & Blue Shield Plans v.
    Travelers Ins. Co.*, 514 U.S. 645 (1995).

28

                                            21

1    This Order has been served upon the following persons:

2
     Christine S. Watson
3    cwatson@carrferrell.com

4    Stuart C. Clark
     sclark@carrferrell.com
5
     Andrew Ralston Livingston
6    alivingston@orrick.com

7    Greg James Richardson
     grichardson@orrick.com
8
     Joseph Charles Liburt
9    jliburt@orrick.com

10   Patricia K. Gillette
     pgillette@orrick.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 08-1554 JF (HRL)
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITHOUT LEAVE TO
AMEND
(JFLC3)